**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

**Howard Griffith,**
*Plaintiff [ ]*

vs.

**New York State Attorney General,**
*Defendant [ ]*

---

**Case No.:** 5:23-cv-1266(GLS/ML)

**Complaint for Declaratory Relief and Injunctive Relief**

**No Jury Trial Requested**



U.S. DISTRICT COURT - N.D. OF N.Y.
**FILED**
OCT 10 2023
AT____ O'CLOCK____
John M. Domurad, Clerk - Syracuse

**COMPLAINT FOR A CIVIL CASE**

Plaintiff, Howard Griffith, pro se, for his complaint, states as follows:

**PARTIES, JURISDICTION, VENUE**

**(1)** Plaintiff, Howard Griffith, was confined: at the Onondaga County Justice Center, at the address of 555 South State Street, Syracuse, NY 13202, between the dates of June 8, 2021 to July 7, 2021; at Central New York Psychiatric Center at the address of 9005 Old River Road, Marcy, NY, 13403, between the dates of July 7, 2021 to October 12, 2021; and at the Onondaga County Justice Center [ ] between the dates of October 12, 2021 to October 18, 2021, before he was released on bail. Plaintiff was confined at the Onondaga County Justice Center [ ] between the dates of March 7, 2022, to March 8, 2022, and at 3-6 Behavioral Health at St. Joseph's Hospital at the address of 301 Prospect Avenue, Syracuse, NY 13203, between the dates of March 8, 2022 to March 30, 2022. Plaintiff is not currently in custody.

**(2)** Plaintiff is and was, at all times mentioned herein, a citizen of the United States and is currently a resident of New York State at 2903 James Street, # 1R, Syracuse, NY 13206.

1

**(3)** The Defendant, the New York Attorney General, was, at all relevant times mentioned herein, the state official serving New York State at 300 S. State St., Ste. 300, Syracuse, NY 13202.

**(4)** The action arises under and is brought, pursuant to 42 USC § 1983, to remedy the deprivation, under color of state law, of the rights guaranteed under the Fifth and Fourteenth Amendments of the United States Constitution. This Court has jurisdiction over this action pursuant to 28 USC §§ 1331 and 1343.

**(5)** The cause of action arose in the area of where the jurisdiction of the United States District Court of the Northern District of New York is located. Therefore, the venue is proper pursuant to 28 USC § 1391(b).

### PREVIOUS LAWSUITS FILED BY PLAINTIFF

**(6)** Plaintiff has filed other lawsuits dealing with the same facts involved in this action or otherwise relating to his imprisonment.

**(7)** Plaintiff pursued a temporary restraining order in essence of an arbitration in which he described that being placed in *"conditions"* which were *"dangerous, hazardous, or detrimental"* to his *"life, health, or safety"*, pursuant to NY Real Property Law § 235-b, established precedent in which he claimed that it could be determined that mail-in, voting ballots need to be eliminated from elections. This was in pursuance of considerations being made in which it could be considered that the defendants could not be *"immune from liabilities"* for failing to release relevant *"information"*, with regard to being subject to these *"conditions [ ]"*, because it would be able to be considered that the defendants acted in *"bad faith"*. (NY Correction Law § 168-r[2]) The intent was to obtain declaratory relief and injunctive relief. The Plaintiffs, Howard Griffith and Rebecca Sklaney, and the Defendants, the New York Attorney General and Jan Nastri, were

2

parties in the previous action; the matter was taken in the United States District Court of the Northern District of New York and the matter was docketed: "5:20-cv-01312 (GLS/ML)".

## STATEMENT OF CLAIM

It is essential for it to be reconsidered how Plaintiff had been placed in *"conditions"* which were *"dangerous, hazardous, or detrimental"* to his *"life, health, or safety"* in pursuance of reconsidering how he claimed that it would need to be considered that mail-in, voting ballots need to be eliminated from elections. In doing so, it needs to be considered that, in the defendant's official capacity, the party failed to release relevant *"information"* in *"bad faith"* in opposition to Plaintiff pursuing to obtain declaratory and injunctive relief. This can be considered, once again, because a settlement has been broken, with a new law having been passed which authorizes early voting, in New York State, by mail-in ballots. In doing so, it will be able to be [d]etermined that Plaintiff was denied his right to the law library at the Onondaga County Justice Center. The [d]etermination being made will be in pursuance of Plaintiff being able to pursue a special proceeding in the Supreme Court of the State of New York, Appellate Division/Fourth Department, in which it will be able to be determined that Plaintiff was denied his relief ordered by the Appellate Division [ ] with regard to the memorandum/order for "People v Griffith, 166 A.D.3d 1518 (2018)". The [d]etermination will have to be made in order for it to be granted that Plaintiff should still be entitled to his relief. These remedies need to be considered in order for the precedent to be established for it to be able to be considered that the statute of limitations to consider the special proceeding in the Appellate Division/Fourth Department would not be established until this Court makes a final [d]etermination. With Plaintiff being entitled to his relief [ ], he may be able to overturn his conviction for failure to fulfill his *"duty to register"* as a sex offender pursuant to NY Correction Law § 168-f(3).

3

## STATEMENT OF FACTS

On October 1, 2019, Plaintiff, Howard Griffith, was convicted of *"disorderly conduct"*, pursuant to NY Penal Law § 240.20, in the Syracuse City Court ("People v Griffith, CR-10842-19"), for damaging somebody's property on the property he resided on which he claimed that put him in *"conditions"* which were *"dangerous, hazardous, or detrimental"* to his *"life, health, or safety"*. (*see* NY Real Property Law § 235-b, "Warranty for Habitability") Plaintiff complained, in his defense, that he had to take the law into his own hands because he had already made complaints about people loitering on the property which he resided on to both the police and his landlord, Jan Nastri. (*see* Exhibit 1[c][iii][A] [1]) It was determined that Plaintiff did not have to take the law into his own hands when he was convicted of *"disorderly conduct"*. (*see* pages 4-5 of Exhibit 1 and pages 2-4 of Exhibit 1[c])

In January of 2020, Plaintiff contacted the Syracuse City Police after he had a fight with a man who was on the property he resided on, whom he opposed, before the man threatened him with a knife. ("DR 20-16385") Before the police responded, the man had left the premises. The police rejected Plaintiff because they objected him taking the law into his own hands. The man with the knife placed him in a *"condition"* which was *"dangerous, hazardous, or detrimental"* to his *"life, health, or safety."*

In April of 2020, Plaintiff contacted the Syracuse City Police to complain about a person who was in his car, next to his doorsteps, who was smoking marijuana and counting money. (This was when marijuana was still illegal in New York State.) ("DR 20-222496") He gave the police the person's license plate number. The police department rejected Plaintiff because they determined that the report he was making was only hearsay. After the person left, Plaintiff contacted

---

[1] This Exhibit contains Plaintiff's policy with Jan Nastri and Rebecca Sklaney. Refer to the attachment titled "Address Lease".

4

Syracuse [C]ity Hall, via email, because Mayor Walsh authorized people to contact his office to complain about people who weren't social distancing. Plaintiff gave the [C]ity the person's license plate number, and he complained that the person was smoking marijuana within six feet from where he was sitting. He complained because he determined that it was a *"condition"* which was *"dangerous, hazardous, or detrimental"* to his *"life, health, or safety"* with regard to COVID-19. He was contacted by the Syracuse Police, via email, in rejection, because it was determined that he should have taken on the appropriate procedures to make a complaint about this. (*see* Exhibit 1[a])

In July, 2020, Plaintiff was concerned about suspicious activity on the property he resided on which involved young men who were sniffing the plants behind the dumpster which was located on the property where he disposed of his trash. They looked back at Plaintiff when he noticed them, and they appeared to be concerned about his presence as if they were trying to cover up some activity which they were conducting which was illegal. (*see* pages 9-11 Exhibit 1, pages 8-10 of Exhibit 1[c] and pages 5-7 of Exhibit 1 [c][iii]) He contacted the Onondaga County Sheriff's at a Burger King location on Thompson Road in East Syracuse, NY, outside of the city he resided in. ("DR 20-368307") (*see* page 10 of Exhibit 1[c] and page 7 of Exhibit 1[c][iii]) He concluded that the suspicious activity was drug related. The Sheriff deputy rejected him because she claimed that he should have contacted the police in Syracuse and the leaves he presented that he saw the men sniffing were not drugs. After he returned to his residence, he sniffed the evidence that was growing on the wall, and it caused him to have a seizure.

A few days after Plaintiff addressed his concerns [ ], he prepared a draft for a NY [C]ivil [P]ractice [L]aws and [R]ules Article 78 Petition. (*see* Exhibit 1[c][iii]) However, he was not yet ready to take the draft [ ] to court, to compel law enforcement, because he still had to address his

concerns to his landlord, Jan Nastri. He gave Jan Nastri a draft for the [C]ivil [P]ractice [L]aws and [R]ules Article 78 Petition, which he titled "Howard Griffith v Onondaga County [ ]", and he agreed not to take the action to court unless new remedies were established which he could claim would have put him in *"conditions"* which were *"dangerous, hazardous, or detrimental"* to his *"life, health, or safety"*. (*see* Exhibit [1][c][iv] and Exhibit [1][c][v]) He referred to the allegations he made as an *"information [ ]"* as he described the suspicious activity he witnessed, and he alleged it to have been drugs. (*see* pages 5-7 of Exhibit 1[c][iii]) He had an Order to Show Cause prepared to be considered with it. As a preliminary matter, one of the most fundamental reasons he identified to take the action was that the sheriff deputy he addressed his concerns to accused him of having psychiatric issues when he demonstrated the evidence. ("DR 20-368307") In the "Nature of the Proceeding", he referred to the reason to commence the action was because the settlement for *"disorderly conduct"*, with regard to "People v Griffith, CR-10842-19", was not respected, with regard to not having been required to take the law into his own hands. He referred to how the settlement had impossibilities as he rejected that he wasn't provided with law enforcement when he attempted to make previous complaints. ("DR 20-16385" and "DR 20-222496") He referred to how "People v Griffith, CR-10824-19" included the remedy that he should have been entitled to take the law into his own hands based on the remedy that the *"conditions"* of the premises he resided on were *"dangerous, hazardous, or detrimental,"* to his *"life, health, or safety"* as he demonstrated how he had referred to the complaints to his landlord and the police as the fundamental reasons to support the merits for his defense. It was essential that he had to provide the draft [ ] to Jan Nastri because it was important for Jan Nastri to consider whether these fundamentals would provide a good enough reason to commence the action, before it could be taken. This is because Jan Nastri still needed to be entitled to the

remedy to be able to provide that the *"conditions"* of the premises weren't *"dangerous, hazardous, or detrimental"* to Plaintiff's *"life, health, or safety."* Plaintiff identified the *"information [ ]"*, as part of the "Nature of the Proceeding". He identified his causes to consider the action were because he didn't have access to the law library to consider a new bill that was signed by New York State which Plaintiff alleged to have affected his ability to describe everything to the sheriff deputy [ ], and because, when he sniffed the evidence that was growing behind the dumpster, it caused him to have a seizure. (*see* pages 7 and 8 of Exhibit 1[c][iii]) The intentions were to obtain an injunction to compel law enforcement. Plaintiff attached the motions, with the draft [ ], that he had made to the Syracuse City Court with "People v Griffith, CR-10824-19", which supported the reasons that he should have been authorized to take the law into his own hands.

Nevertheless, when Plaintiff found a census for a fake address, at his mailbox, he attempted to demonstrate it to the Syracuse City Police Department with his sex offender registry on September 14, 2020. However, the Syracuse City Police Department refused to post "2903 James Street, Apt. 5, Syracuse, NY 13206" with his sex offender registry, and instead, they did not post an apartment number with his address. (*see* Exhibit 1[c][i] and Exhibit 1[c][ii]) His initial address was "2903 James Street, Apt. 1R, Syracuse, NY 13206". After this, Plaintiff decided to amend the draft [ ] he had prepared for his landlord and brought it to the Onondaga County Supreme Court on September 16, 2020. It was taken with an order to show cause. Again he demonstrated for the Onondaga County Supreme Court everything he had demonstrated to Jan Nastri with regard to the "Nature of the Proceeding". However, he amended the "Nature of the Proceeding" by adding three points. (Points 7, 8 & 9) In Point 7, he demonstrated everything he demonstrated to Jan Nastri in the "Nature of the Cause", for the draft [ ], to provide the merits

7

that a demonstration was made that the fundamental points of the "Nature of the Proceeding" were settled with Jan Nastri. In Point 8, he explained the settlement that he had made with Jan Nastri to not commence the action unless new remedies were established which he could claim would have put him in *"conditions"* which were *"dangerous, hazardous, or detrimental"* to his *"life, health, or safety."* In Point 9, he demonstrated that the police would not post the fake address with his sex offender registry. (*see* page 7 of Exhibit 1[c]) He claimed it would place him in *"conditions"* which were *"dangerous, hazardous, or detrimental"* to his *"life, health, or safety"*, and he filed the census ticket with his petition. He demonstrated that he would have the fake address posted with his sex offender registry. (*see* pages 7 of Exhibit 1[c]) The matter was titled "Howard Griffith v Onondaga County, SU-2020-005851". Plaintiff attached a copy of the draft [ ], with attachments, that he provided for his landlord with "Howard Griffith v Onondaga County, SU-2020-005851". He also added a new point to the "Nature of the Cause". He referred to how, because Jan Nastri was provided with a requirement to provide corrections for the addresses in the building at 2903 James Street, [ ] by the Syracuse City Department of Neighborhood and Business Development, <u>Division of Code Enforcement</u>, Jan Nastri had put him in a *"condition"* which had been *"dangerous, hazardous, or detrimental"* to his *"life, health, or safety"*, and he demonstrated the *"liabilities"* [2] of Onondaga County for having jurisdiction over the City of Syracuse. He demonstrated this with regard to a letter that he provided with the petition that was addressed to Jan Nastri, dated June 17, 2020, which he found at his mail-box,

---

[2] *see* NY Correction Law § 168-r(2), *"Immunity from Liabilities: 'Nothing in this section shall be deemed to impose any civil or criminal liability upon or to give rise to a cause of action against any official, employee or agency, whether public or private, for failing to release **information** as authorized in this section unless it is shown that such official, employee or agency acted with **gross negligence** or in **bad faith**. [emphasis added]' "* * NY Correction Law Article 168: [S]ex [O]ffender [R]egistration [A]ct

from the Division of Code Enforcement, which referenced a Complaint to Jan Nastri. (*see* Exhibit 1[c][ii])

On the evening Plaintiff took his matter to the Onondaga County Supreme Court, he found [m]ail in his mailbox with directions on how to obtain mail-in, voting ballots for the false address. He also found instructions on how to obtain mail-in ballots for an incomplete address and instructions on how to obtain an absentee ballot for his actual address. He also found a flier for a person whom he did not know, who was able to obtain services from his actual address. The following day, on September 17, 2020, he took copies of the [m]ail to the Onondaga County Supreme Court to be filed with "Howard Griffith v Onondaga County, SU-2020-005851" just before "Howard Griffith v Onondaga County, SU-2020-005851" was transferred up to the Jefferson County Supreme Court to be reviewed by Judge James McClusky. (*see* Exhibit 1[d]) He also served a copy of his petition, with copies of the [m]ail, to the Onondaga County District Attorney, on September 17, 2020, (an administrator who works for the State of New York and the County of Onondaga). (*see* page 1 of Exhibit 1[c]) James McClusky rejected Plaintiff's petition on October 30, 2020, determining that Plaintiff should be denied poor person's status. James McClusky ordered that the matter be dismissed unless the full price of the index number was paid within 120 days, claiming that the petition lacked merit. (*see* Exhibit 2)

Before James McClusky rejected Plaintiff's petition, Plaintiff took a motion for a temporary restraining order with an order to show cause, to be considered with an action that was to be taken pursuant to 42 USC § 1983, on October 22, 2020, to initiate "Howard Griffith et al. v New York et al., 5:20-cv-01312 (GLS/ML)". With the "Preliminary Statement", Plaintiff quoted everything that was stated with the petition for "Howard Griffith v Onondaga County, SU-2020-005851". Plaintiff complained, in the "Nature of the Proceeding", that NY Real

Property Law § 235-b, with regard to "Warranty for Habitability", had not been satisfied regarding being subject to *"conditions"* which were *"dangerous, hazardous, or detrimental"* to his *"life, health, or safety"*. Plaintiff demonstrated that this was with regard to the settlements that were precedented with "People v Griffith, CR-10824-19" and the draft [ ] provided for Jan Nastri having not been satisfied. He also demonstrated in the "Nature of the Proceeding" that one of the causes demonstrated with "Howard Griffith v Onondaga County, SU-2020-005851" with regard to not having access to the law library, was an essential remedy to consider if the bills that had been previously signed in New York State would thwart him from making his complaint, ("DR 20-368307"), and he demonstrated how this provided that, because he was authorized to contact authorities, by Syracuse City Hall, in essence of how a police complaint ("DR 20-222496") was also essential to a complaint for a perpetrator having failed to have social distanced, this provided more reason to consider if this bill would have thwarted his complaint. ("DR 20-368307") This was because Syracuse City Hall had authorized him to make a police complaint, and he demonstrated how a person failing to have social distanced may have been deemed to have been a *"condition"* which was *"dangerous, hazardous, or detrimental"* to his *"life, health, or safety,"* because of COVID-19. Plaintiff also demonstrated in the "Nature of the Proceeding" how he had been unable to demonstrate a complete address with his sex offender registry. He demonstrated that a reason for the commencement was because he believed it would make him subject to *"Penalties"*, pursuant to NY Correction Law § 168-t, which would be *"dangerous, hazardous, or detrimental"* to his *"life, health, or safety."* He also demonstrated how the facts were provided with "Howard Griffith v Onondaga County, SU-2020-005851" that mail-in, voting ballots were able to be provided for the fake and incomplete addresses, and he demonstrated how the facts were provided that the remedies existed for a person who did not live

at his address was able to obtain an absentee ballot from his actual address. He demonstrated that the reason this needed to be considered was because Plaintiff had to demonstrate a new cause for taking the motion for temporary restraining order to maintain the status quo of "Howard Griffith v Onondaga County, SU-2020-005851". He identified in the "Nature of the Cause" that, pursuant to 52 USC §§§§ 10303(a)(2), 10303(c), 10303(d), 10303(f)(2), a declaration needed to be provided that mail-in ballots would need to be eliminated from elections before injunctive relief could be provided. Plaintiff referred to the *"information [ ]"* in the "Nature of the Cause", and he demonstrated that the Defendants: the New York Attorney General and Jan Nastri, would have to be held *"liable"*. [3] This was with regard to the merits that would support that the census without the citizenship question may be deemed as a *"test or device"* for determining the eligibility to illegally obtain absentee, mail-in ballots to vote as an abridgement of the right to vote on account of race or color. (*see* 52 USC § 10303) (*see* pages 21-24 of Exhibit 1) Plaintiff identified his roommate, Rebecca Sklaney, as his co-plaintiff because he was required to have a new remedy for his action, as he had previously agreed with his landlord, in order to be able to take the matter to court. Plaintiff filed a copy of "Howard Griffith v Onondaga County, SU-2020-005851", with attachments, with "Howard Griffith et al. v New York et al., 5:20-cv-01312 (GLS/ML)" when the motion for temporary restraining order was taken, with a stamp on it which confirmed that a copy was served to the Onondaga County District Attorney. (*see* page 1 of Exhibit 1[c]) The Senior Judge closed the action on October 27, 2020, because Plaintiff Griffith and his co-plaintiff, Rebecca Sklaney, failed to comply with Fed. R. Civ. P. 3. His order authorized the plaintiffs to correct the matter. (*see* Exhibit B of the Appendix of Exhibit 9: "Howard Griffith et al. v New York et al., 5:20-cv-01312 [GLS/ML]: 'Order and Report and Recommendation [December 28, 2020]: page 2' ")

---

[3] *see* NY Correction Law § 168-r(2)

11

On the night of November 3, 2020, Plaintiff contacted his [C]ongressman, John Katko, in the 24th Congressional District, via [h]is website, and told him how he had acted to have a false address demonstrated with his sex offender registry which provided the remedy to obtain mail-in ballots. He referred to "Howard Griffith et al. v New York et al., 5:20-cv-01312 (GLS/ML)". (*see* Exhibit 18) The following day, John Katko took an action with Senator Rachel May (a representative who works for New York State) to sue the Onondaga County Board of Elections (an administrative agency that represents Onondaga County) as merit supports that this was in response to Plaintiff's complaint to his [C]ongressman. The census without the citizenship question would have been deemed to have been used as a *"test or device"* to determine the eligibility to illegally obtain absentee, mail-in ballots to vote, with an abridgement of the right to vote on account of race or color. (52 USC § 10303[c][4]) Plaintiff's case alone only demonstrated one incident, deemed to be less than few in number, and with U.S. Rep. John Katko and State Senator Rachel May suing the Onondaga County Board of Elections in November, 2020, it may be deemed that the incident had been promptly and effectively corrected by state or local action. (52 USC § 10303[d][1]) Nevertheless, judicial proceedings in the 22nd Congressional District, taken by Claudia Tenney, to decide the 2020 general election for that district, concluded the matter by not having been able to identify 2,418 votes. (52 USC § 10303[d][2])

Before November 14, 2020, Plaintiff obtained a small grocery bag which was hanging from the edge of the dumpster where he disposed of his garbage. He recognized the smell in the grocery bag was the same smell that he witnessed on the plants, behind the dumpster, back in July of 2020. He recognized large pebbles in the grocery bag which appeared as crystals along with what appeared to be fingernails and disposed hygiene items. He demonstrated it to the Syracuse City Police about 2:00 am on November 14, 2020, and the Syracuse City Police

rejected it, without a police report, as they were uncertain what the material was. At a later date, Plaintiff determined that the material was the material used to make explosives as he determined that the smell [ ] was fertilizer.

It was on November 12, 2020 when Plaintiff Griffith and his co-plaintiff, Rebecca Sklaney, took their action back to the District Court with a complaint. It was the day after Plaintiff Griffith and his co-plaintiff, Rebecca Sklaney, took their action back to the District Court when Plaintiff received a telephone call from the office of John Katko and was told that he couldn't help Plaintiff with "Howard Griffith et al. v New York et al., 5:20-cv-01312 (GLS/ML)". Plaintiff[s] referred to the "Nature of the Suit" in the "Civil Cover Sheet" being with regard to an impingement of their voting rights. (*see* Exhibit B of the Appendix of Exhibit 9: "Howard Griffith et al. v New York et al., 5:20-cv-01312 [GLS/ML]: 'Order and Report and Recommendation [December 28, 2020]: page 2' ")

It was on January 10, 2002, when Plaintiff was convicted of Rape in the First Degree, NY Penal Law § 130.35(1). Plaintiff preserved his remedy to oppose the conviction, on the day he was convicted, to later demonstrate that his conviction was unconstitutional. The matter in which Plaintiff was convicted was titled "People v Griffith, 2001-0883-1". On January 29, 2002, Plaintiff was sentenced to serve five years imprisonment and five years post-release supervision, and he was certified as a sex offender pursuant to NY Correction Law § 168-d(1). In 2006, Plaintiff was assigned his registry as a Level III Sex Offender, pursuant to NY Correction Law Article 168. Between the years of 2006 and 2017, Plaintiff pursued Motion[s] to Vacate Judgment, pursuant to Article 440 of the New York [C]riminal [P]rocedure [L]aw, with "People v Griffith, 2001-0883-1".

13

On January 27, 2017, Plaintiff pursued a petition for modification of his sex offender registry pursuant to NY Correction Law § 168-o(2). In that matter, he addressed evidence on the record of his judgment for Rape in the First Degree [ ], with regard to the penalization of his sex offender registry, regarding the consideration that he had not admitted to his offense [ ]. This was with regard to the facts supporting that he was deceived and duressed into admitting to the instant offense. He also addressed the penalization of his sex offender registry, with regard to failure to complete a sex offender treatment program, regarding his recent completion of a sex offender treatment program. His Petition was denied by the Onondaga County Court on July 21, 2017.

On July 26, 2017, Plaintiff pursued a Notice of Appeal from the decision of the Onondaga County Court to deny his Petition for Modification of Sex Offender Registry [ ], which he had taken *"pursuant to CPL 450.10(1) 'as it applies' to Correction Law § 168-n."* The matter was docketed: "People v Griffith, KA 17-01664". In Plaintiff's Pro Se Briefs, for his appeal, he demonstrated how the procedures that had been taken to perfect the appeal had been mistakenly interpreted to consider that the procedures were in pursuance of a criminal appeal. He also demonstrated how the form and content of the appendix satisfied the form and content to be included for an appendix prepared in pursuance of a criminal appeal. He made his objection, with regards to these mistaken interpretations and the form and content of the appendix, that the appeal needed to be considered as a criminal appeal. He also demonstrated that he was denied effective assistance of counsel during his judgment of conviction as he claimed that these could be considered with [r]egard to the penalization of his sex offender registry, [r]egarding admissions to the instant offense. [T]his was with regard to being deceived and duressed into admitting to the instant offense as he demonstrated was part of the record. Plaintiff supported

14

that this could be used in coherence with a [S]ex [O]ffender [R]egistration [A]ct proceeding to attack his underlying conviction. (*see* Exhibit 17) The Appellate Court determined *"the appeal to have been taken pursuant to the proper statute... (see CPLR 2001)... pursuant to CPL 450.10(1) 'as it applies' to Correction Law § 168-n."* (People v Griffith, 166 A.D.3d 1518, 1519 [4th Dept. 2018]) However, the Court would not authorize him to take his petition back to the Onondaga County Court to challenge his underlying conviction. (People v Griffith, id. at 1520) Nevertheless, on November 9, 2018, the Court reversed the order, reinstated the petition, and remitted the matter to County Court for a new hearing on the petition, on the grounds that he was *"denied effective assistance of counsel."* (People v Griffith, id. at 1519)

After the appellate court denied Plaintiff's intentions to use "People v Griffith, KA 17-01664" to attack his underlying conviction, he pursued his argument to the higher courts. (People v Griffith, 32 NY3d 1196 [2019]: [dismissing leave to appeal]; People v Griffith, 33 NY3d 1047 [2019]: *reconsideration denied;* Griffith v New York, 140 S Ct 407 [2019]: October 15, 2019, *certiorari denied*)

After Plaintiff pursued the higher courts, he returned to the Onondaga County [C]ourt to have the [C]ourt reconsider the SORA Modification Petition which was considered to be remitted via the Supreme Court of the State of New York, Appellate Division/Fourth Department. (People v Griffith, 166 A.D.3d 1518, 1519 [2018]) The Onondaga County [C]ourt determined he had abandoned his Petition on September 13, 2019, via a letter/decision/order dated October 25, 2019. The Onondaga County [C]ourt had determined he had abandoned his Petition when further questions with regard to the relief that should have been granted, with regard to "People v Griffith, 166 A.D.3d 1518", had been under the jurisdiction of the United States Supreme Court. (People v Griffith, 32 NY3d 1196 [2019]: [dismissing leave to appeal]; People v Griffith, 33

15

NY3d 1047 [2019]: *reconsideration denied;* Griffith v New York, 140 S Ct 407 [2019]: **October 15, 2019, *certiorari denied [emphasis added])* (*see* Exhibit C of the Appendix of Exhibit 9: "People v Griffith, 2001-0883-1": [l]etter/[d]ecision/[o]rder: October 25, 2019)

Plaintiff further pursued the higher courts to reconsider what he considered was the relief that he should have been granted, with regard to "People v Griffith, 166 A.D.3d 1518", and to consider how the Onondaga County Court had not considered the relief that the appellate court had granted. ("People v Griffith, 2001-0883-1: May 27, 2020: 'Order to Show Cause for Motion for Reconsideration to Waive Certification of the Record was denied by the Supreme Court of the State of New York, Appellate Division/Fourth Department' "; "People v Griffith, 35 NY3d 1109 [2020] ['People v Griffith, 2020-552']: October 22, 2020: [NYS Court of Appeals dismissing leave to appeal]")

After pursuing "People v Griffith, 2020-552", Plaintiff pursued "Howard Griffith v New York, 20-6395" to the United States Supreme Court. Plaintiff also pursued "Howard Griffith, et al. v New York et al., 5:20-cv-01312 (GLS/ML)", via the United States District Court of the Northern District of New York, which involved his sex offender registry. "Howard Griffith et al. v New York et al., [ ]" was taken to the district court on the same day precedent had been established to pursue "Howard Griffith v New York, 20-6395" to the United States Supreme Court.

Plaintiff pursued habeas corpus, pursuant to 28 USC § 2254, with "Howard Griffith et al. v New York et al., [ ]" because he was concerned that the errors regarding his attempts to demonstrate the false address with his sex offender registry would result in him being punished. The merits supported that habeas corpus was considered in pursuance of further considerations regarding "People v Griffith, 2020-552" to consider that "People v Griffith, 166 A.D.3d 1518"

should have been able to have been used to attack his underlying conviction of Rape in the First Degree [ ]. Habeas corpus was ex parte.

The United States District Court of the Northern District of New York pursued sua sponte with "Howard Griffith et al. v New York et al., 5:20-cv-01312 (GLS/ML)", and the Magistrate Judge recommended that habeas corpus be dismissed without prejudice, in the Order and Report and Recommendation dated December 28, 2020, in pursuance of "People v Griffith, 2020-552", to consider that "People v Griffith, 166 A.D.3d 1518" should have been used to consider that his conviction for Rape in the First Degree [ ] be overturned. (*see* Exhibit B of the Appendix of Exhibit 9: "Howard Griffith et al. v New York et al., 5:20-cv-01312 [GLS/ML]: 'Order and Report and Recommendation [December 28, 2020]: pages 12 and 15' ")

On November 30, 2020, Plaintiff pursued a Supplemental Brief for his Petition for Writ of Certiorari with regard to "Howard Griffith v New York, 20-6395". Plaintiff demonstrated to the Onondaga County District Attorney that he was pursuing "Howard Griffith et al. v New York et al., 5:20-cv-01312 (GLS/ML)" to the United States District Court of the Northern District of New York. Plaintiff attached the Order of the Senior Judge of the District Court which administratively closed "Howard Griffith et al. v New York et al., [ ]" dated October 27, 2020. Plaintiff also attached the Decision/Order of the Onondaga County Supreme Court dated October 30, 2020, which denied the Order to Show Cause for "Howard Griffith v Onondaga County, SU-2020-005851". Plaintiff identified the Onondaga County District Attorney as a *"Confidential Secretary"* pursuant to NY County Law § 700(5). Plaintiff identified this as the remedy because he claimed that criminal matters with regard to the [S]ex [O]ffender [R]egistration [A]ct are *"Confidential"* pursuant to NY Civil Rights Law § 50-b. (*see* pages 3 and 9 of Exhibit 4[c])

17

On January 9, 2021, Plaintiff pursued a Supplemental Brief for his Petition for Writ of Certiorari with regard to "Howard Griffith v New York, 20-6395", and he attached the Order and Report Recommendation of the District Court dated December 28, 2020, along with [the] objection he had prepared for the R & R, pursuant to 28 USC § 636(b)(1), which he had taken to the District Court on January 4, 2021. Plaintiff demonstrated that he had served a copy of "Howard Griffith v Onondaga County, SU-2020-005851" to the Onondaga County District Attorney on September 17, 2020, in [the] objection of the R § R [ ]. (*see* page 2 of [the] attachment of Exhibit 4[d]) Plaintiff also provided a copy of the Supplemental Brief [ ] dated January 9, 2021, to the New York Attorney General. On January 19, 2021, certiorari was denied for "Howard Griffith v New York, 20-6395". ("Griffith v New York, 141 S Ct 1245 [2021]")

On March 9, 2021, Plaintiff pursued a Petition for Rehearing for Petition for Writ of Certiorari for "Howard Griffith v New York, 20-6395". He demonstrated to the Onondaga County District Attorney how the United States District Court of the Northern District of New York had recommended habeas corpus to be dismissed without prejudice, via "Howard Griffith et al. v New York et al., 5:20-cv-01312", in pursuance of further considerations with regard to "People v Griffith, 2020-552". (*see* pages 6-7 of Exhibit 4) He raised the question: "Habeas Corpus Dismissed Without Prejudice?" (*see* page iii of Exhibit 4) He provided a copy of an amended complaint dated March 8, 2021, that he was prepared to serve in pursuance of the R § R dated December 28, 2020, to the Onondaga County District Attorney, attached to his Petition for Rehearing [ ]. Plaintiff objected that New York could not be *"immune from liabilities"*, pursuant to NY Correction Law § 168-r(2), for acting in *"bad faith"* in failure to release relevant *"information"* regarding his sex offender registry. (*see* pages 1-4 of Exhibit 4, pages 2-3 of Exhibit 4[a] and pages 2-3 of Exhibit 4[b]) The merits support that the amended complaint dated

18

March 8, 2021, would have been deemed to have been in pursuance of further considerations regarding the Motion for Temporary Restraining Order that was taken on October 22, 2020. Plaintiff demonstrated that he intended to compel law enforcement, code enforcement. Plaintiff claimed that he was subject to *"penalties"* pursuant to NY Correction Law § 168-t. In doing this, Plaintiff identified the Onondaga County District Attorney as a *"Confidential Secretary"* pursuant to NY County Law § 700(5). (*see* page 2 of Exhibit 4) He also provided a new Motion for Temporary Restraining Order, with an Order to Show Cause, in which he referred to how John Katko sued the Onondaga County Board of Elections, along with Rachel May, in essence of the Motion for Temporary Restraining Order he had taken for the commencement of "Howard Griffith et al. v New York et al., [ ]", and he referred to how Claudia Tenney had the 2020 general election decided for the 22nd Congressional District in essence of not having been able to identify 2,418 votes. (*see* pages 3-5 of Exhibit 4[b]) Again, he pleaded habeas corpus with the new Motion for Temporary Restraining Order, and he, again, pleaded having been denied the remedy of being authorized to use the law library. (*see* pages 5-8 of Exhibit 4[b] and pages 6-7 of Exhibit 4) He, also, provided these documents to the New York State Attorney General. He requested that the Petition for Rehearing [ ], with regard to "Howard Griffith v New York, 20-6395", be "denied without prejudice". (*see* pages i and 12 of Exhibit 4)

On March 9, 2021, Plaintiff responded to a reward from the Federal Bureau of Investigation with regard to *"information"* on who was producing pipe bombs, with regard to explosives that were ignited on January 6, 2021, in Washington, DC. Plaintiff identified the evidence that he had discovered at the dumpster where he disposed of his trash, and he referred them to the Onondaga

19

County District Attorney. (*see* Exhibit D of the Appendix of Exhibit 9: "Letter dated May 13, 2021, [Received by the United States Supreme Court on January 25, 2022]") [4]

Before May 4, 2021, Plaintiff pursued what he referred to as a Petition for Extraordinary Writ to the United States Supreme Court. Plaintiff attached his Petition for Rehearing for Petition for Writ of Certiorari, with regard to "Howard Griffith v New York, 20-6395", with attachments, to his Petition for Extraordinary Writ. He also attached the Supplemental Brief[s] [ ] dated November 30, 2020, and January 9, 2021. He provided these documents to the Onondaga County District Attorney and the New York State Attorney General. It was returned from the United States Supreme Court before May 4, 2021, with 60 days to correct it pursuant to Rule 14.5 of the United States Supreme Court. The District Court dismissed habeas corpus without prejudice in a Summary Order dated May 4, 2021. The District Court also dismissed the complaint that was taken on November 12, 2020 [ ], with the Summary Order, without prejudice, to provide that he be authorized to submit an amended complaint for the matter within 30 days. Nevertheless, *in forma pauperis* was granted. (*see* Exhibit B of the Appendix of Exhibit 9: "Howard Griffith et al. v New York et al., 5:20-cv-01312 [GLS/ML]: 'Summary Order [May 4, 2021]' ") The Supreme Court of the United States denied his Petition for Rehearing for Petition for Writ of Certiorari [ ] on May 17, 2021. ("Griffith v New York, 141 S. Ct. 2663 [2021]")

On May 23, 2021, Plaintiff pursued a corrected Petition for Extraordinary Writ. Plaintiff objected in his Petition for Extraordinary Writ that "People v Griffith, 166 A.D.3d 1518, 1520" cited at "People v. Lashway, 25 N.Y.3d 478, 483 (2015): *'(see Doe v Pataki, 3 F. Supp. 2d 456 [SD NY 1998] "Only the United States Supreme Court is granted appellate jurisdiction to review*

---

[4] *see* New York Correction Law § 168-r[2], " *'Immunity from Liabilities' : 'Nothing in this section shall be deemed to impose any civil or criminal liability upon or to give rise to a cause of action against any official, employee or agency, whether public or private, for failing to release* **information** *as authorized in this section unless it is shown that such official, employee or agency acted with* **gross negligence** *or in* **bad faith.** *[emphasis added]' ")*

*final judgments of the highest courts of respective states. See 28 USC 1257[a]," id. at 477-478)'."* (*see* pages 7-10 of Exhibit 3) This was with regard to habeas corpus having been considered, in pursuance of "People v Griffith, 2020-552", to consider that "People v Griffith, 166 A.D.3d 1518" should have been used to overturn his conviction for Rape in the First Degree [ ]. Plaintiff attached his Petition for Rehearing for Petition for Writ of Certiorari, with regard to "Howard Griffith v New York, 20-6395", to his Petition for Extraordinary Writ. He also attached the Supplemental Brief[s] [ ] dated November 30, 2020 and January 9, 2021. Plaintiff requested that his Petition for Extraordinary Writ be "denied without prejudice". (*see* page 14 of Exhibit 3)

Plaintiff pursued amended documents for "Howard Griffith et al. v New York et al., 5:20-cv-01312 (GLS/ML)" on May 26, 2021, with the complaint that he had attached to "Howard Griffith v New York, 20-6395", along with the Petition for Extraordinary Writ dated May 23, 2021, with attachments, attached. Plaintiff served a Supplemental Brief for Petition for Extraordinary Writ dated June 6, 2021, to the United States Supreme Court, the United States District Court of the Northern District of New York, the Onondaga County District Attorney, and the New York State Attorney General on June 7, 2021, and it was received by the United States District Court of the Northern District of New York on June 9, 2021. This provided for the District Court that the Onondaga County District Attorney and the New York State Attorney General would be able to consider that the Petition for Extraordinary Writ along with the Petition for Rehearing [ ], with regard to "Howard Griffith v New York, 20-6395", were to be considered by the District Court. (*see* Exhibit 5) This also provided for the Onondaga County District Attorney and the New York State Attorney General to consider that the District Court would be considering this [ ]. The Petition for Extraordinary Writ was returned from the United States

21

Supreme Court with a time limit of up until August 2, 2021 to correct it pursuant to Rule 14.5 of the United States Supreme Court.

On June 8, 2021, Plaintiff was incarcerated for failure to fulfill his *"duty to register"* as a sex offender, pursuant to NY Correction Law § 168-f(3). Plaintiff was incarcerated [ ] because the police needed a reason to place him in jail for a psychiatric evaluation, pursuant to CPL § 730, after he had recovered from a grand-mal seizure. (*see* pages 3-4 of Exhibit 6 and pages 2 and 11 of Exhibit 1[c]) Plaintiff objected that he was in custody, pursuant to 28 USC § 2241(c)(2) [5], during his arraignment. (*see* pages 1-2 of Exhibit 6) Plaintiff contests that he could not have registered as a sex offender because the Syracuse City Police Department refused to post "2903 James Street, Apt. 5, Syracuse, NY 13206" when he attempted to register as a sex offender, before he took "Howard Griffith v Onondaga County, SU-2020-005851" on September 16, 2020. Plaintiff was required to register every 90 days because he was a "Level III Sex Offender". The documents provided for "Howard Griffith et al. v New York et al., [ ]", while Plaintiff was in custody, on June 9, 2021, provided the merits that habeas corpus should have been reconsidered in pursuance of the conditions that he should not have been incarcerated for failure to fulfill his *"duty to register"* as a sex offender. This was with regard to the remedy that he was [d]enied his right to the law library while in segregation housing at the Onondaga County Justice Center from June 12, 2021 to July 6, 2021. Because of [t]his, Plaintiff was able to demonstrate that [t]his prevented him from pursuing a Motion for Reconsideration of "People v Griffith, 2020-552", pursuant to 22 NYCRR 500.24, to reconsider that he was denied his relief for "People v Griffith, 166 A.D.3d 1518". This would have been after the United States Supreme Court refused to

---

[5] 28 USC § 2241(c)(2): " *'The Power to Grant Writ' [ ] The writ of habeas corpus shall not extend to a prisoner unless — [ ] He is in custody for **an act done or omitted in pursuance of an Act of Congress,** or an order, process, judgment or decree of a court or judge of the United States. [emphasis added]"*

22

consider this on May 17, 2021, with "Howard Griffith v New York, 20-6395". Plaintiff had

demonstrated to the Onondaga County District Attorney and the New York State Attorney

General that he intended to pursue the New York State Court of Appeals again, via his [P]etition

for Rehearing for Petition for Writ of Certiorari [ ], (*see* pages 10-11 of Exhibit 4) as he had

requested that the [P]etition be "denied without prejudice". (*see* pages i and 12 of Exhibit 4) The

relief that Plaintiff should have been granted, with regard to SORA modification, regarding

"People v Griffith, 166 A.D.3d 1518", was essential to his failure to fulfill his *"duty to register"*

as a sex offender. This was because, if Plaintiff had his sex offender registry modified to "Level

II", he would only have been required to register once a year, and June 8, 2021 had been less

than one year since he last registered. The [d]enial of his right to the law library was

demonstrated, via due process disciplinary hearing, at the Onondaga County Justice Center,

pursuant to 9 NYCRR 7006, on July 6, 2021. (DR # 21-339708) Plaintiff demonstrated, at the

hearing, that he was denied access to an inmate handbook while in segregation housing which

was an essential tool for understanding how to use the law library at the Onondaga County

Justice Center. (*see* page 4 of Exhibit 7 [6] and Exhibit G of the Appendix of Exhibit 15) Also,

Plaintiff demonstrated at the hearing that he had been placed in segregation housing for striking a

deputy for not authorizing him to use the law library. He was unable to exhaust his

administrative remedies for the disciplinary hearing because he was transferred to Central New

York Psychiatric Center on July 7, 2021, in pursuance of CPL § 730. He was supposed to have

had until July 8, 2021 to appeal the due process disciplinary hearing. (*see* page 5 of Exhibit 7)

The Report and Recommendation dated July 14, 2021, judging the complaint dated March 8,

2021, recommended that the Petition for Extraordinary Writ and the Petition for Rehearing for

---

[6] The deputy confirmed, at the hearing, that Plaintiff was never able to review the disciplinary charges because he had never had access to an inmate handbook.

Petition for Writ of Certiorari, with regard to "Howard Griffith v New York, 20-6395", be

"denied without prejudice" if they were intended to be construed as an appeal from the Summary

Order dated May 4, 2021. (*see* Exhibit B of the Appendix of Exhibit 9: "Howard Griffith et al. v

New York et al., 5:20-cv-01312 [GLS/ML]: 'Order and Report and Recommendation [July 14,

2021]: page 8' ") This was just as Plaintiff had requested, and this provided the merits that habeas

corpus had been reconsidered because this reconsidered the Summary Order dated May 4, 2021,

which had initially considered that habeas corpus be dismissed without prejudice. Plaintiff had

not obtained the Report and Recommendation dated July 14, 2021, right after it was judged,

because he was unable to access a pen while he was in custody, before July 14, 2021 to notify the

Court of his change in address while he was in custody. Nevertheless, he was able to obtain a pen

to contact the Court of his change in address after the Report and Recommendation was made,

but before the Summary Order was made on August 3, 2021. This provided merit that there was

clear error from the Report and Recommendation dated July 14, 2021. This was because

demonstrating that Plaintiff was in custody demonstrated the remedy that was necessary to

reconsider habeas corpus. However, the Court failed to consider this. (*see* Exhibit B of the

Appendix of Exhibit 9: "Howard Griffith et al. v New York et al., 5:20-cv-01312 [GLS/ML]:

'Summary Order [August 3, 2021]: page 1' ") The merits would have supported that habeas

corpus was reconsidered with regard to the merits that he should not have been incarcerated for

failure to fulfill his *"duty to register"* as a sex offender rather than to have been in pursuance of

"People v Griffith, 166 A.D.3d 1518" being used to overturn his conviction for Rape in the First

Degree [ ]. However, the Summary Order dated August 3, 2021, regarding "Howard Griffith et

al. v New York et al., [ ]", provided the merits that considerations for habeas corpus were not

reconsidered. This was because the Petition for Extraordinary Writ and Petition for Rehearing for

24

Petition for Writ of Certiorari, with regard to "Howard Griffith v New York, 20-6395", were stricken, and the amended complaint [ ] was dismissed. This demonstrated that habeas corpus dismissed without prejudice was still considered in pursuance of further considerations with regard to "People v Griffith, 166 A.D.3d 1518" being used to overturn his conviction for Rape in the First Degree [ ]. With Rebecca Sklaney being Plaintiff Griffith's co-plaintiff, the policy with Jan Nastri had been maintained while Plaintiff was in custody.

Plaintiff pursued an appeal from the Summary Order dated August 3, 2021, for "Howard Griffith et al. v New York et al., 5:20-cv-01312", to the United States Circuit Court of Appeals for the Second Circuit. ("Howard Griffith v New York State Attorney General, 21-2133") After "Howard Griffith v New York State Attorney General, 21-2133" had been commenced, the New York State Attorney General requested in a letter to the Circuit Court dated September 17, 2021, that their Office be removed as counsel for the matter and that the Circuit Court designate the state defendant-appellee as the only defendant. This was because the Attorney General claimed that their office had never received a copy of the amended complaint dated March 8, 2021. With this, the Attorney General pleaded with regard to an advisory of their office to the Circuit Court. The Attorney General pled that if the Circuit Court were to doubt the propriety of affirmance of their claim that their office had never received a copy of the amended complaint [ ], an order should be provided to vacate sua sponte, dismissing and remanding *without prejudice to any dispositive motion that defendants may file after receiving a copy of the amended complaint."* ("Dotson v Fischer, 613 F. App'x 35, 39 & n. 3 [2d Cir. 2015]") (*see* Appendix of Exhibit 14: "Letter from NYAG": September 17, 2021) The United States Circuit Court of Appeals for the Second Circuit terminated the Attorney General as a party on September 21, 2021. (*see* Exhibit A of the Appendix of Exhibit 15)

25

Plaintiff also pursued a Petition for Writ of Mandamus and/or Prohibition to the United States Supreme Court from the Summary Order dated August 3, 2021, on October 5, 2021. ("In Re Howard Griffith, 21-6127") Plaintiff demonstrated that "In Re Howard Griffith, 21-6127" was taken in pursuance of considerations with regard to 52 USC § 10303(a)(5): "Appeals shall lie to the Supreme Court," in pursuance of further considerations with regard to how the Petition for Extraordinary Writ [ ] and Petition for Rehearing for Petition for Writ of Certiorari [ ], had been recommended to be "denied without prejudice" in the Report and Recommendation dated July 14, 2021. Plaintiff supported that habeas corpus dismissed without prejudice would have to be considered in the Supreme Court instead. He listed the Onondaga County District Attorney and the New York State Attorney General as parties. Plaintiff contested that the United States Supreme Court should doubt the propriety of affirmance with regard to the Attorney General's claims that their party had never received the amended complaint [ ] because Plaintiff was able to demonstrate that the amended complaint was served to Attorney General, attached to the [P]etition for Rehearing for Petition for Writ of Certiorari, with regard to "Howard Griffith v New York, 20-6395", when the [P]etition was taken. In making this determination, a decision would be made by the Supreme Court that an order should be provided to vacate sua sponte, with regard to Howard Griffith et al. v New York et al., 5:20-cv-01312 (GLS/ML)", to be dismissed and remanded *"without prejudice to any dispositive motion that defendants may file after receiving a copy of the amended complaint."* ("Dotson v Fischer, 613 F. App'x 35, 39 & n. 3 [2d Cir. 2015]") With regard to the remedy that the propriety of affirmance should be doubted with regard to the Attorney General's claim, to vacate sua sponte of the United States District Court of the Northern District of New York, Plaintiff also requested that, with sua sponte being vacated, it be dismissed and remanded without prejudice to an additional amended complaint appending any

26

relevant documents that Plaintiff had procured. ("Dotson v Fischer, id. at 39 & n. 3 [2d Cir. 2015]")

Plaintiff was released from custody for failure to fulfill his *"duty to register"* as a sex offender, on bail, on October 18, 2021. ("People v Griffith, CR-06189-21, HGJ-72455-21/001") After Plaintiff was released from custody, he obtained a medicare voucher at his mailbox for the person identified on the flier that he filed with "Howard Griffith v Onondaga County, [ ]". The medicare voucher was addressed to the fake address he attempted to demonstrate with his sex offender registry. (*see* Exhibit 16) Plaintiff demonstrated this to the United States Supreme Court, via "In Re Howard Griffith, 21-6127", in a Supplemental Brief [ ] dated November 18, 2021. Plaintiff demonstrated how New York citizens had just voted against proposals that would ease restrictions on voting laws with regards to redistricting, mail-in ballots and same day voter registration. "In Re Howard Griffith, 21-6127" was denied on December 6, 2021. ("In Re Griffith, 142 S.Ct. 625 [2021]")

Plaintiff pursued a Petition for Rehearing for Petition for Writ of Mandamus and/or Prohibition, "In Re Howard Griffith, 21-6127", dated December 31, 2021. He served a copy to the United States Supreme Court, the Onondaga County District Attorney, the New York State Attorney General, and the United States District Court of the Northern District of New York on December 31, 2021. The Petition [ ] was filed in the United States District Court of the Northern District of New York with "Howard Griffith et al., v New York et al., 5:20-cv-01312 (GLS/ML)". After he served these parties, he served a copy [ ] to the New York Secretary of State on January 13, 2022 in pursuit of [s]igning "A DECLARATION OF PUBLIC SUPPORT TO: OFFICE OF SECRETARY OF STATE FOR THE INVESTIGATIONS AND LAWSUITS BY JUDICIAL WATCH INTO...

27

"JUDICIAL WATCH SPONSORED PETITION **(for Rehearing for Petition for Writ of Mandamus and Prohibition 'In Re Howard Griffith, 21-6127')** TO NEW YORK SECRETARY OF STATE FROM **(emphasis added)...**

"Mr. Howard Griffith
2903 James St. Apt. 1
Syracuse, NY 13206-2127

"Signed... on... this date: December 31, 2021" on January 14, 2022 along with making a $35.00 donation. (*see* Pages 17-19 of Exhibit 9). [7] After he served the New York Secretary of State, the Petition [ ] was returned by the United States Supreme Court with 15 days to correct it, pursuant to Rule 44.6 of the United States Supreme Court, because it was too long.

On December 10, 2021, Plaintiff pursued a [F]reedom [O]f [I]nformation [L]aw Request to the Onondaga County Sheriff, pursuant to New York State Public Officers Law §§ 84-90, to obtain the document for the due process disciplinary hearing that was held at the Onondaga County Justice Center on July 6, 2021, with regard to DR # 21-339708. Plaintiff intended to obtain this to provide this as an exhibit for the [P]etition for Rehearing for Petition for Writ of Mandamus and/or Prohibition that was to be taken to the United States Supreme Court on December 31, 2021, with regard to "In Re Howard Griffith, 21-6127', to demonstrate how he was denied his right to the law library. On December 20, 2021, the Onondaga County Sheriff responded by informing Plaintiff that he would have to wait 40 days to be provided with the document because of the current conditions with regard to COVID-19. On December 30, 2021, Plaintiff pursued an action to the Onondaga County Supreme Court, pursuant to CPLR Article

---

[7] Plaintiff served a letter to the New York Secretary of State, with the Petition [ ], referencing what was quoted in the paragraph at the top of the page and referencing the Petition [ ]. Then, via affidavit, he confirmed the date of his [s]ignature while quoting what was quoted in the paragraph at the top of the page. Then he served his donation to "Judicial Watch" on February 9, 2022. This was in pursuit of "Judicial Watch" taking action to challenge voter fraud. (*see* Exhibit G of Exhibit 9)

28

78, with an Order to Show Cause, against the Onondaga County Sheriff, with his intent for an injunction to be provided that the document would be produced within less than 40 days. The matter was titled "Howard Griffith v Onondaga County Sheriff, SU-2021-010609". When he served his [P]etition for Rehearing for Petition for Writ of Mandamus and/or Prohibition [ ], he served, with the [P]etition, a copy of "Howard Griffith v Onondaga County Sheriff, [ ]", attached to a "Motion for Extension of Time to File a Document", pursuant to Rule 30.4 of the United States Supreme Court. (*see* Exhibit 21) On January 4, 2022, Plaintiff received a response to his FOIL request [ ], from Sheriff Eugene Conway of the Onondaga County Sheriff, informing him that the Sheriff would not produce the document because it was determined that it would interfere with judicial proceedings. The Sheriff suggested that he could have his attorney get into touch with the Onondaga County District Attorney to obtain the document. (*see* Exhibit 22) The Onondaga County Supreme Court granted the Order to Show Cause for "Howard Griffith v Onondaga County Sheriff [ ]" on February 2, 2022. However, the Onondaga County Supreme Court denied the CPLR Article 78 petition on April 20, 2022. (*see* Exhibit 20)

On February 3, 2022, Plaintiff pursued a Motion to Vacate Judgment, pursuant to CPL § 440.10, with regard to "People v Griffith, 2001-0883-1", to the Onondaga County Court. Plaintiff referred to the fact that he was still being prosecuted for failure to fulfill his *"duty to register"* as a sex offender ("People v Griffith, CR-06189-21, HGJ-72455-21/001") and he demonstrated how the results of the conviction for Rape in the First Degree [ ] had persisted though the sentence had been served. Plaintiff referred to the ineffective assistance of counsel claims he was authorized to demonstrate with "People v Griffith, KA 17-01664". (People v Griffith, 166 A.D.3d 1518) He referred to how considerations in essence of "People v Griffith, 166 A.D.3d 1518" had still not yet been finally considered as he referred to a Petition for Rehearing for

29

Petition for Writ of Mandamus and/or Prohibition he had taken for "In Re Howard Griffith, 21-6127" on January 25, 2022.

After February 3, 2022, Plaintiff received the Petition for Rehearing for Petition for Writ of Mandamus and/or Prohibition dated January 25, 2022, regarding "In Re Howard Griffith, 21-6127", that was returned by the United States Supreme Court with 15 days to correct it pursuant to Rule 44.6 of the United States Supreme Court. On February 16, 2022, Plaintiff rewrote his Petition for Rehearing for Petition for Writ of Mandamus and/or Prohibition. He referred to the Motion to Vacate Judgment he had taken to the Onondaga County Court on February 3, 2022, with regard to "People v Griffith, 2001-0883-1", and he served copies to the Onondaga County District Attorney, the New York State Attorney General and the Supreme Court on that date. Plaintiff referred to how New York State had just, recently, in January of 2022, had a [b]ill signed that would authorize mail-in ballots to be used in the 2022 general election. (The Voting Rights Act of New York [S.1046-E/A.6678-E]) [8] Plaintiff filed the Petition for Rehearing for Petition for Writ of Mandamus and/or Prohibition [ ], dated December 31, 2021, that was returned by the United States Supreme Court with his Petition for Rehearing for Petition for Writ of Mandamus and/or Prohibition [ ], dated February 16, 2022.

On February 18, 2022, Plaintiff was convicted for failure to fulfill his *"duty to register"* as a sex offender, pursuant to NY Correction Law § 168-f(3). ("People v Griffith, CR-06189-21, HGJ-72455-21/001") (A conviction for the failure of a defendant to fulfill his *"duty to register"*

---

[8]  52 USC § 10303(d): *" 'Required frequency, continuation and probable recurrence of incidents of denial or abridgement to constitute forbidden use of tests or devices' : For purposes of this section no State or political subdivision shall be determined to have engaged in the use of tests or devices for the purpose or with the effect of denying or abridging the right to vote on account of race or color, or in contravention of the guarantees set forth in subsection [f][2] if [1] incidents of such use have been few in number and have been promptly and effectively corrected by State or local action, [2] the continuing effect of such incidents has been eliminated, and [3] **there is no reasonable probability of their recurrence in the future. [emphasis added]."**

as a sex offender [ ] is a *"penalty"* pursuant to NY Correction Law § 168-t.) Petition for

Rehearing for Petition for Writ of Mandamus and/or Prohibition, "In Re Howard Griffith,

21-6127", was denied by the Supreme Court on March 21, 2022. ("In Re Griffith, 142 S. Ct.

1403 [2022]") Before the Petition for Rehearing [ ] was denied, Plaintiff was arrested for

"Harassment in the Second Degree", pursuant to NY Penal Law § 240.26, and placed in custody

at the Onondaga County Justice Center for striking his roommate, Rebecca Sklaney. This

happened on March 7, 2022. He was assigned an order of protection for his roommate before he

was released from custody on March 8, 2022. (People v Griffith, CR-01767-22) Right after

Plaintiff was released from custody, on March 8, 2022, he was arrested for *"resisting arrest"*

pursuant to NY Penal Law § 205.30 (People v Griffith, CR-01816-22) and was placed at "3-6

Behavioral Health" at St. Joseph's Hospital. While at St. Joseph's Hospital, Plaintiff prepared a

Supplemental [B]rief for his Petition for Rehearing for Petition for Writ of Mandamus and/or

Prohibition, with regard to "In Re Howard Griffith, 21-6127", dated March 20, 2022. He referred

to how the Order of Protection required Plaintiff to stay away from "[B] the home of Rebecca

Sklaney" and how this had opposed the federal civil matter. (*see* attachments for Exhibit 11) He

claimed that this was essential to a temporary restraining order and developed a remedy in which

his co-plaintiff could oppose the Onondaga County District Attorney based on the most

fundamental ground, regarding "People v Griffith, CR-10842-19". (*see* Exhibit 11) He

demonstrated how this was with regard to the demands not being met, regarding Plaintiff not

having to take the law into his own hands, with regard to the conviction for *"disorderly conduct"*.

He also claimed how being in custody made him subject to habeas corpus, and he claimed that

being in custody prevented him from obtaining "Temporary Assistance" from the Onondaga

County Department of Social Services. He referred to how his action with regard to "Temporary

Assistance" provided the remedy for Onondaga County to establish *"liabilities"* for his policy with his landlord as it would have been agreed to that "Temporary Assistance" would not have been able to have been transferred to another policy, within less than 30-days, unless he was subject to *"conditions"* which were *"dangerous"* to his *"health or safety"*. (*see* "Warranty for Habitability" pursuant to NY Real Property Law § 235-b) (*see* Exhibit E of the Appendix of Exhibit 9: "Acknowledgement of Restriction of Rent") He demonstrated how these conditions for his application for "Temporary Assistance" were agreed to on February 17, 2022, which was the same date he was provided a [l]etter from Jan Nastri, settling that rent prices would be raised with regard to raises for services for water, garbage, and sewage; nevertheless: *"all other terms and **conditions** will remain in full force [emphasis added]."* (*see* Exhibit E of the Appendix of Exhibit 9: "Letter from Jan Nastri [February 17, 2022]") Plaintiff had filed the [l]etter with the documents for his "Temporary Assistance" application. Plaintiff attached the order of protection (People v Griffith, CR-01767-22) to the Supplemental [B]rief along with a ticket for pre-arraignment bail regarding the arrest for *"resisting arrest"*. (People v Griffith, CR-01816-22) The Supplemental [B]rief was not taken to the Supreme Court before March 21, 2022. Plaintiff added signatures to his Supplemental [B]rief for "In Re Howard Griffith, 21-6127" on March 23, 2022, and it was served to the Onondaga County District Attorney by his social worker at St. Joseph's Hospital before March 30, 2022. Plaintiff was released from St. Joseph's Hospital on March 30, 2022, and he returned home, to his roommate, Rebecca Sklaney. Rebecca Sklaney provided a letter to the Onondaga County District Attorney dated June 6, 2022, objecting that she opposed "People v Griffith, CR-01767-22".

The Onondaga County Court denied Plaintiff's Motion to Vacate Judgment dated February 3, 2022, on March 28, 2022. The Onondaga County Court objected the Motion to Vacate Judgment

32

because it considered that the judgment, at the time that the Motion was taken, was pending on appeal. (CPL § 440.10[2][b]) This was with regard to final determinations, regarding "People v Griffith, 166 A.D.3d 1518", not having been finally concluded.

Plaintiff demonstrated to the United States Circuit Court of Appeals for the Second Circuit what he had demonstrated to the Onondaga County District Attorney and the NYS Attorney General, via the United States Supreme Court, with regard to "In Re Howard Griffith, 21-6127". This was demonstrated to the Circuit Court, with regard to "Howard Griffith v New York State Attorney General, 21-2133", via [M]otion to Reinstate [the Appeal and Recall] the Mandate dated June 7, 2022. Plaintiff also demonstrated in the [M]otion what was demonstrated in the Supplemental Brief for Petition for Writ of Mandamus and/or Prohibition dated March 20, 2022, with regard to "In Re Howard Griffith, 21-6127", which had not been filed in the United States Supreme Court.

Plaintiff modified his address, for the annual verification for his sex offender registry, for the New York State [D]ivision of [C]riminal [J]ustice [S]ervices on July 26, 2022. With the annual verification, he posted "2903 James Street, Apt. 5, Syracuse, NY 13206" as his secondary address. (*see* Exhibit H of the Appendix of Exhibit 9) Plaintiff had been unable to pursue his annual verification for his sex offender registry to the DCJS, in July of 2021, because he had been incarcerated for failure to fulfill his *"duty to register"* as a sex offender at the time.

The Motion to Reinstate [the Appeal and Recall] the Mandate was dismissed by the United States Circuit Court of Appeals for the Second Circuit in an Order dated August 25, 2022. (*see* Exhibit B of the Appendix of Exhibit 9: "Griffith v New York State Attorney General, 21-2133: 'Order [August 25, 2022]' ")

33

On September 23, 2022, Plaintiff pursued a [M]otion for Extension of Time to Take an Appeal, pursuant to CPL § 460.30, regarding the Decision/Order dated March 28, 2022, denying his Motion to Vacate Judgment. ("People v Griffith, KA 22-01525") Plaintiff attached the Order dated August 25, 2022, that was decided for "Howard Griffith v New York State Attorney General, 21-2133". The Appellate Division/Fourth Department dismissed the [M]otion on October 25, 2022. They agreed with the Onondaga County District Attorney that the [M]otion was "unnecessary" at that juncture because the Onondaga County District Attorney had not served the Notice of Entry for the Decision/Order dated March 28, 2022, until September 29, 2022. (*see* Exhibit A of the Appendix of Exhibit 9: "People v Griffith, KA 22-01525 'Memorandum/Order [October 25, 2022]' ")

On November 17, 2022, Plaintiff took an Application to Request Leave to Appeal, pursuant to 22 NYCRR 500.20, to the New York State Court of Appeals to request that an appeal be considered, pursuant to CPL §§ 460.20 and 460.30(6), to reconsider his Motion for Extension of Time to Take an Appeal. It was "dismissed" by the New York State Court of Appeals on January 19, 2023. ("People v Griffith, 39 NY3d 1072 [2023]")

On March 30, 2023, Plaintiff took a [P]etition for Writ of Mandamus to the United States Supreme Court to consolidate the decision of the New York State Court of Appeals dated January 19, 2023, with regard to "People v Griffith, 2001-0883-1", with the Order of the United States Circuit Court of Appeals for the Second Circuit dated August 25, 2022, with regard to "Howard Griffith v New York State Attorney General, 21-2133". ("In Re Howard Griffith, 22-7299") Plaintiff's intention was to conclude considerations with regard to the civil actions taken for "Howard Griffith et al. v New York et al., 5:20-cv-01312" while staying all matters for criminal matters regarding "People v Griffith, 2001-0883-1". His intention was to consolidate

considerations that were considered [in] essence of "People v Griffith, 166 A.D.3d 1518", ([with] "Howard Griffith et al. v New York et al., 5:20-cv-01312"), to be considered to be remanded to the Supreme Court of the State of New York, Appellate Division/Fourth Department, to be reconsidered with his Motion for Extension of Time to Take an Appeal [ ]. Plaintiff listed the Onondaga County District Attorney, the New York State Attorney General and the Syracuse City Court as parties. Plaintiff listed the Syracuse City Court as a party because he demonstrated that it was essential for the United States Supreme Court to consider that considerations with regard to how the order of protection would oppose the federal civil matter would be left up to the Syracuse City Court. "People v Griffith, CR-01767-22" and "People v Griffith, CR-01816-22", were being prosecuted together. Final considerations, with regard to "People v Griffith, 2001-0883-1", were intended to be considered once "Howard Griffith et al. v New York et al., [ ]" was concluded. Plaintiff included Rosario Material with his [P]etition. (*see* page i of Exhibit 9) The merits provided that, with "In Re Howard Griffith, 22-7299", it was reconsidered, with regard to the Attorney General's propriety of affirmance of their office dated September 17, 2021, with regard to the Attorney General's claim that their party had never received a copy of the amended complaint dated March 8, 2021 [ ], that an order should be provided to vacate sua sponte, dismissing and remanding *"without prejudice to any dispositive motion that defendants may file after receiving a copy of the amended complaint."* ("Dotson v Fischer, 613 F. App'x 35, 39 & n. 3 [2d Cir. 2015]") The merits also support that it was also reconsidered that, with regard to the Attorney General's claim that their party had never received the amended complaint [ ], sua sponte should be vacated, to be dismissed and remanded without prejudice to an additional amended complaint providing any relevant documents that Plaintiff would be able to procure. ("Dotson v Fischer, 613 F. App'x 35, 39 & n. 3 [2d Cir. 2015]") "In Re Howard Griffith,

35

22-7299" was denied on June 20, 2023, in the "Order List" of the United States Supreme Court which had been posted at 9:30 am, that morning.

A guilty plea for *"resisting arrest"* with regard to "People v Griffith, CR-01767-22, CR-01816-22" was entered on the afternoon of June 20, 2023. The merits support that final considerations, with regard to the conditions for "In Re Howard Griffith, 22-7299" that were to have been considered, were concluded in the Syracuse City Court. Plaintiff received a sentence for a one year conditional discharge for *"resisting arrest"* and no orders of protection were issued. (*see* Exhibit 8) Plaintiff supports that he received a settlement for *"resisting arrest"* for providing the Onondaga County District Attorney with *"information"* with regard to criminal activity at a location that applied to his policy with Jan Nastri. Plaintiff provided, with the settlement, that he would no longer need to pursue further actions in essence of "Howard Griffith et al. v New York et al., 5:20-cv-01312 (GLS/ML)".

On July 20, 2023, Plaintiff amended his address for his annual verification for his sex offender registry to the New York State Division of Criminal Justice Services. He verified that "2903 James Street, Apt. 5, Syracuse, NY 13206" was no longer a secondary address. (*see* Exhibit 13) July 20, 2023 was also the last day for a statute of limitations to reconsider "People v Griffith, 39 NY3d 1072 (2023)", pursuant to 22 NYCRR 500.20(f), which was one of the essentials for considerations of legal actions with regard to "In Re Howard Griffith, 22-7299".

Plaintiff appealed the determination dated March 18, 2022, by the Onondaga County Department of Social Services which denied his application for "Temporary Assistance". He objected that it was because he was in custody that he was unable to attend his "Jobs Plus" appointment. The hearing was held on June 10, 2022, and he claimed that the hearing was

essential to another matter (*see* Exhibit 12) which he did not claim at his hearing was in reference to "Howard Griffith v Onondaga County, SU-2020-005851".

In the "Jurisdictional Statement" taken for "Trump v New York, 592 U.S. ____ (2020)" on September, 2020, Appellant[s] demonstrated that the district court's theory of Article III Jurisdiction rested on a multi-step sequence of events. The Appellant[s] demonstrated how the sequence of events should have just been deemed to have been hypothetical to contest how the Appellee[s] failed to satisfy Article III's requirements for jurisdiction. As provided for the "Reasons for Noting Probable Jurisdiction" at page 13 (id.), Appellant[s] demonstrated what was a hypothesis in Paragraph B of Point I, provided with the second cause, and Appellant[s] provided that the Appellee[s] failed to demonstrate how the "chilling effect" did not explain why the possibility of the involvement of *"landlords"* and *"neighbors"* to offer any appropriate *"information"* necessary to be provided regarding correctness of the census would have been deemed to have been "chilling". With that matter, the United States Supreme Court determined that New York failed to satisfy the cause for jurisdiction, simply because New York provided a hypothesis that a "chilling effect" provided a good enough cause for non-citizens to not have to provide answers with regard to the citizenship question. [9] This was being considered when "Howard Griffith v Onondaga County, SU-2020-005851" was being taken. This supports the argument that was made with the amended complaint dated March 8, 2021, that was taken on May 26, 2021, with "Howard Griffith et al. v New York et al., 5:20-cv-01312 (GLS/ML)". This provided that the census without the citizenship question needs to be deemed as a *"test or device"* to determine the eligibility to illegally obtain absentee, mail-in ballots to vote and that a

---

[9] *see* New York Correction Law § 168-r[2], " *'Immunity from Liabilities' : 'Nothing in this section shall be deemed to impose any civil or criminal liability upon or to give rise to a cause of action against any official, employee or agency, whether public or private, for failing to release* **information** *as authorized in this section unless it is shown that such official, employee or agency acted with* **gross negligence** *or in* **bad faith**. *[emphasis added]' ")*

declaration needs to be provided that these would need to be eliminated from elections. (52 USC § 10303) This was demonstrated with "In Re Howard Griffith, 22-7299". (*see* page 23 of Exhibit 9) New York State continues to advance this, even after state or local action was taken to eliminate this process, (*see* 52 USC § 10303[d]) because New York State had a bill signed on September 20, 2023, Senate Bill 2023-S7394A, "Early Mail Voter Act", to authorize [e]arly mail-in ballots to be used in future elections. New York State claims that mail-in ballots benefit "communities of color" which may be deemed as an abridgement of the right to vote on account of race or color.

Plaintiff claims that, when he was placed in custody for failure to fulfill his *"duty to register"* as a sex offender, it placed him in *"conditions"* which were *"dangerous, hazardous, or detrimental to [his]... life, health, or safety [emphasis added]"*. [10] This is because he demonstrated that the results of the conviction for Rape in the First Degree [ ], with regards to what he was able to demonstrate for the record with "People v Griffith, KA 17-01664" ("People v Griffith, 166 A.D.3d 1518"), had persisted though the sentence had been served. This was demonstrated with "In Re Howard Griffith, 22-7299". (*see* page 40 of Exhibit 9)

With Plaintiff being convicted for *"resisting arrest"* on June 20, 2023, "People v Griffith, CR-01767-22, CR-01816-22" settled that further actions did not have to be considered in pursuance of "Howard Griffith et al. v New York et al., 5:20-cv-01312 (GLS/ML)" because it was not necessary that an injunction would need to have been provided to prohibit the order of protection from being enforced. This was with regard to an additional amended complaint not having to have been commenced in which Plaintiff would have had to have appended any relevant documents which he had procured. An additional amended complaint appending any

---

[10] Fifth Amendment of the United States Constitution: *"No person shall be subject for the same offence to be twice put in jeopardy of life or limb. [emphasis added]"*

relevant documents which Plaintiff had procured would have been deemed to have been in pursuance of further considerations with regard to the Motion for Temporary Restraining Order dated March 8, 2021, that was attached to the Petition for Rehearing for Petition for Writ of Certiorari, regarding "Howard Griffith v New York, 20-6395". With the Syracuse City Court not issuing an order of protection, with regard to "People v Griffith, CR-01767-22, CR-01816-22", it may be deemed that, with the Syracuse City Court being authorized to finally consider how the order of protection opposed the federal civil matter, this would have been in pursuance of considerations being made that the Summary Order dated August 3, 2021, with regard to "Howard Griffith et al. v New York et al., 5:20-cv-01312 (GLS/ML)", showed clear error from the Report and Recommendation dated July 14, 2021. This was essential to the considerations being made for the [P]etition for Extraordinary Writ dated May 23, 2021, the [P]etition for Rehearing for Petition for Writ of Certiorari [ ] dated March 9, 2021, and the Supplemental Brief for [P]etition for Extraordinary Writ dated June 6, 2021, having been deemed to have been "denied without prejudice" as it may have been deemed that these were intended to be construed as an appeal from the Summary Order dated May 4, 2021, which adopted the Order and Report and Recommendation dated December 28, 2020. In pursuance of final considerations being considered with regard to how the order of protection opposed the federal civil matter, it would have been deemed that considerations with regard to the how the [P]etitions had been considered to be "denied without prejudice" would have been in pursuance of considerations being made to consider how the District Court had considered this but failed to determine it. This may have been deemed to have been considered because this was considered with "In Re Howard Griffith, 22-7299" in pursuance of reaching the settlement that the Syracuse City Court did not have to issue an order of protection. In doing so, it may be deemed that it was considered by the

39

Syracuse City Court that these [P]etitions contained essential evidence to have been considered in pursuance of reaching a settlement to not issue an order of protection. This may be deemed to have been considered because this was demonstrated with the concise statement of facts demonstrated with "In Re Howard Griffith, 22-7299". The Syracuse City Court was able to consider this because the Syracuse City Court made "In Re Howard Griffith, 22-7299" part of the record, (*see* pages 2 of Exhibit 19) and the Amended Complaint [ ] dated March 8, 2021, and the Motion for Temporary Restraining Order [ ] dated March 8, 2021, were attached to "In Re Howard Griffith, 22-7299". Because of this, it did not have to be considered that Onondaga County was not *"immune from liabilities"* because Plaintiff was denied "Temporary Assistance", because he was in custody when considerations regarding temporary assistance were pending. Onondaga County being considered to not be *"immune from liabilities"*, because of Plaintiff being denied "Temporary Assistance", would have been because Plaintiff contested that he should not have been in custody when the matter was pending and because, if Plaintiff had been granted "Temporary Assistance", Onondaga County could have taken on the liability to transfer his "Temporary Assistance" to another policy within less than thirty days if he had been in any *"conditions"* which were *"dangerous"* to his *"health or safety"*. (Warranty for Habitability, NY Real Property Law § 235-b) Also, with regard to how the Syracuse City Court was authorized to make final considerations with regard to how the order of protection opposed the federal civil matter, it was because Plaintiff had not still been in custody at St. Joseph's Hospital, when final considerations with regard to when "People v Griffith, CR-01767-22, CR-01816-22" were being made, that habeas corpus did not have to be reconsidered. Also, in pursuance of the demonstrations being made in the Motion for Temporary Restraining Order dated March 8, 2021 [ ]; with regard to how Plaintiff had identified that Congressman John Katko sued the Onondaga

40

County Board of Elections, along with State Senator Rachel May, in essence of the Motion for Temporary Restraining Order Plaintif had taken for the commencement of "Howard Griffith et al. v New York et al., [ ]", and how Claudia Tenney had the 2020 general election decided for the 22nd Congressional District in essence of not having been able to identify 2,418 votes; it did not have to be considered that a declaration needed to be provided that mail-in, voting ballots would need to be eliminated from elections. This was to be, because, in the essence of an order of protection not having been issued, Plaintiff agreed that he would amend his sex offender registry to not include the address of 2903 James Street, Apt. 5, Syracuse, NY 13206, before the statute of limitations had run out to be able make further considerations in pursuance "Howard Griffith et al. v New York et al., 5:20-cv-01312 (GLS/ML)". Without Plaintiff having pursued further proceedings in the essence of "Howard Griffith et al. v New York et al., [ ]", and with Plaintiff amending his sex offender registry, it may have been deemed that the settlement was respected if there were no more laws being passed which would advance the process of mail-in ballots being used in New York in the future. This would provide that Plaintiff was authorized to live in *"conditions"*, with his roommate, with regard to the policy they shared with Jan Nastri, which weren't *"dangerous, hazardous, or detrimental"* to their *"life, health, or safety"* because Plaintiff would not be required to stay away from "[b] the home of Rebecca Sklaney". This would have also provided that Jan Nastri would be able to enforce this.

With New York State signing a bill on September 20, 2023, "Senate Bill 2023-S7394A, 'Early Mail Voter Act' ", which authorizes [e]arly mail-in ballots to be used in future elections, it may be concluded that a settlement to not pursue any further actions, in essence of "Howard Griffith et al., v New York et al., 5:20-cv-01312 (GLS/ML)", with "People v Griffith, CR-01767-22, CR-01816-22", has not been settled. This is retroactive. Also, the new Onondaga

41

County Sheriff, Tobias Shelley, granted the request for Plaintiff's FOIL request dated December 10, 2021, in response to a letter that Plaintiff wrote to him on August 22, 2023. Plaintiff received this [ ] on September 16, 2023. (*see* Exhibit 22) This was with regard to the due process disciplinary hearing that was held at the Onondaga County Justice Center on July 6, 2021, regarding DR # 21-339708, as Plaintiff demonstrated that this would be necessary to pursue overturning his conviction for failure to fulfill his *"duty to register"* as a sex offender. A declaration needs to be provided that mail-in ballots need to be eliminated from elections in pursuance of further considerations being considered in this complaint, based on the precedent regarding "Howard Griffith et al. v New York et al., 5:20-cv-01312 (GLS/ML)". With this declaration, injunctive relief can be provided as this Complaint will be deemed to be in pursuance of the remedy being provided that the Motion for Temporary Restraining Order dated March 8, 2021, that was filed with "Howard Griffith et al. v New York et al., 5:20-cv-01312 (GLS/ML)" and "People v Griffith, CR-01767-22, CR-01816-22", can further be considered. Plaintiff is not listing Jan Nastri as a party of this matter because Jan Nastri was never provided any documents that were prepared in essence of "Howard Griffith et al. v New York et al., 5:20-cv-01312 (GLS/ML)".

The New York Attorney General witnessed Plaintiff demonstrating everything to the Onondaga County District Attorney with regard to the criminal activity being carried out at the address for his policy with Jan Nastri and failed to release relevant *"information"* in *"bad faith"*, with regard to the evidence and the merits being demonstrated, regarding how the census without the citizenship question needs to be deemed as a *"test or device"* to determine the eligibility to illegally obtain absentee, mail-in ballots to vote. This was because the New York Attorney General rejects a declaration being made to consider that mail-in voting ballots need to be

eliminated from elections in the future. Instead, the NYAG authorized Plaintiff to be placed in *"conditions"* which were *"dangerous, hazardous, or detrimental,"* to his *"life, health, or safety"*.

## PRAYER FOR RELIEF

Plaintiff requests that "Howard Griffith et al. v New York et al., 5:20-cv-01312 (GLS/ML)" be reconsidered. With this, a declaration can be provided that mail-in, voting ballots need to be eliminated from elections, and an injunction can be provided for the NYAG to commence an investigation pursuant to NY Executive Law § 63(12) and Article 22-A of the New York General Business Law into whether any person or entity has engaged in any repeated or persistent fraudulent, illegal or deceptive conduct in the ownership, operation or management of the residential properties owned, operated and/or managed by Jan Nastri at the properties which include but aren't limited to the policies, procedures and practices of Jan Nastri with regard to the properties where the addresses of 2817 James Street, Syracuse, NY 13206 and 2903 James Street, Syracuse, NY 13206 are located. In this, the NYAG should be able to find that any relief or agreements that will be able to be contained, via investigation, will be able to be accepted pursuant to NY Executive Law § 63(15), in lieu of commencing a statutory proceeding for violations of NY Executive Law § 63(12) and NY General Business Law §§ 349 and 350, based on the conduct that Plaintiff describes in this complaint. In doing so, the Defendant will be able to ascertain that in pursuit of owning the properties at 2817 James Street, Syracuse, NY 13206 and 2903 James Street, Syracuse, NY 13206, Jan Nastri will be compelled to respect applicable laws, which are to be obeyed, to govern the legal rights of Plaintiff, to be intended to protect his health and safety, to include but not be limited to NY Real Property Law § 235-b. In doing so, due process provides that it will be able to be determined that Plaintiff was denied his right to the law library while at the Onondaga County Justice Center which is essential in taking further



action for it to be determined that Plaintiff should still be entitled to his relief that was to be

granted with the Memorandum/Order for "People v Griffith, 166 A.D.3d 1518 (4th Dept 2018)".

## CERTIFICATE AND CLOSING

Under Federal Rules of Civil Procedure 11, by signing below, I certify to the best of my

knowledge, information, and belief that this complaint: (1) is not being presented for an improper

purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

(2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or

reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so

identified, will likely have evidentiary support after a reasonable opportunity for further

investigation or discovery; and (4) the complaint otherwise complies with the requirements of

Rule 11.

**For Parties Without an Attorney**

I agree to provide the Clerk's Office with any changes to my address where case–related

papers may be served. I understand that my failure to keep a current address on file with

the Clerk's Office may result in the dismissal of my case.

Dated: October 6, 2023

Howard Griffith, pro se
2903 James Street, # 1R
Syracuse, NY 13206
315-726-2958

44

