UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

HOWARD GRIFFITH,

                         Plaintiff,

                                            5:23-CV-1266
v.                                            (DNH/ML)

NEW YORK STATE, Attorney General,

                         Defendant.

_____

APPEARANCES:                                   OF COUNSEL:

HOWARD GRIFFITH
  Plaintiff, *Pro Se*
2903 James Street, #1R
Syracuse, New York 13206

MIROSLAV LOVRIC, United States Magistrate Judge

## **ORDER and REPORT-RECOMMENDATION**

### I.    **INTRODUCTION**

      The Clerk has sent this *pro se* complaint (Dkt. No. 1) together with an application to proceed *in forma pauperis* (Dkt. No. 2) filed by Howard Griffith ("Plaintiff") to the Court for review.  For the reasons discussed below, I grant Plaintiff's *in forma pauperis* application (Dkt. No. 2) and recommend that Plaintiff's Complaint (Dkt. No. 1) be dismissed in its entirety without leave to amend.

### II.    **BACKGROUND**

      The Complaint is forty-four pages long and includes a series of allegations that are difficult to follow and appear to have little in common.  (*See generally* Dkt. No. 1.)

More specifically, Plaintiff appears to allege that between October 2019 and July 2020 he had issues with various individuals on real property that he rented from non-party Jan Nastri in the City of Syracuse.  (Dkt. No. 1 at 4-5.)  Plaintiff alleges that he drafted a N.Y. C.P.L.R. Article 78 petition against Onondaga County and provided a copy of the draft petition to Jan Nastri.  (*Id*. at 5-6.)

Plaintiff alleges that on September 14, 2020, he attempted to comply with his obligation to update his address with the sex offender registry but that the Syracuse Police Department would not include an apartment number with his address.  (*Id*. at 7.)  Plaintiff alleges that he filed the Article 78 petition he previously drafted with the addition of three points.  (*Id*.)  Plaintiff alleges that on October 30, 2020, New York State Judge McClusky rejected Plaintiff's request for poor person status. (Dkt. No. 1 at 9.)

The Complaint refers to an action that Plaintiff previously commenced in this Court, *Griffith v. New York*, 5:20-CV-1312 (GLS/ML) ("*Griffith I*"), which was dismissed.  (Dkt. No. 1 at 11.)

The Complaint alleges that on November 3, 2020, Plaintiff contacted then-Congressman Katko to lodge a complaint about his "false address demonstrated with his sex offender registry which provided the remedy to obtain mail-in ballots."  (*Id*. at 12.)  Plaintiff alleges that in response to his correspondence, then-Congressman Katko sued the Onondaga County Board of Elections.  (*Id*.)

The Complaint alleges that on January 10, 2002, Plaintiff was convicted of Rape in the first degree pursuant to N.Y. Penal Law § 130.35(1).  (Dkt. No. 1 at 13.)  The Complaint alleges that as a result of that conviction, Plaintiff was deemed a Level III sex offender pursuant to N.Y. Correct. Law § 168.  (*Id*.)  Plaintiff alleges that he sought (1) to vacate his judgment of

conviction, (2) modification of his sex offender registry obligations, and (3) habeas corpus relief. (*Id*. at 13-19.)

Plaintiff alleges that on March 9, 2021, he responded to a reward notification posted by the Federal Bureau of Investigation with information about individuals producing pipe bombs and explosive devices used on January 6, 2021, in Washington DC. (Dkt. No. 1 at 19.) The Complaint alleges that Plaintiff discovered evidence in the dumpster where he disposes of trash and referred the evidence to the Onondaga County District Attorney's office. (*Id*. at 19-20.)

The Complaint alleges that on June 8, 2021, Plaintiff was incarcerated for failure to register as a sex offender pursuant to N.Y. Correct. Law § 168-f(3). (Dkt. No. 1 at 22.) The Complaint alleges that Plaintiff was incarcerated "because the police needed a reason to place [Plaintiff] in jail for a psychiatric evaluation . . . after he had recovered from a grand-mal seizure." (*Id*.)

The Complaint alleges that Plaintiff sought a modification to his SORA level, which apparently was denied because, the Complaint alleges that had the modification been granted, he would have only been required to register once per year. (Dkt. No. 1 at 23.) Plaintiff alleges that he was denied access to the law library while incarcerated at the Onondaga County Justice Center because he was not given the inmate handbook. (*Id*.) Plaintiff alleges that he was placed in segregated housing because he struck a deputy who refused to authorize him use of the law library. (*Id*.) Plaintiff alleges that he was unable to exhaust his administrative remedies with respect to the associated disciplinary hearing because he was transferred to the Central New York Psychiatric Center ("CNYPC"). (*Id*.)

The Complaint alleges that Plaintiff was released from custody on bail on October 18, 2021. (Dkt. No. 1 at 27.) The Complaint alleges that after Plaintiff was released, "he obtained a

medicare voucher at his mailbox for the person identified on the flier that he filed with 'Howard Griffith v. Onondaga County, [ ]'. The medicare voucher was addressed to the fake address he attempted to demonstrate with his sex offender registry. . . . Plaintiff demonstrated how New York citizens had just voted against proposals that would ease restrictions on voting laws with regards to redistricting, mail-in ballots and same day voter registration." (*Id*.)

The Complaint alleges that on February 18, 2022, Plaintiff was convicted of failing to fulfill his duty to register as a sex offender pursuant to N.Y. Corr. Law § 168-f(3). (Dkt. No. 1 at 30.) The Complaint alleges that on March 7, 2022, Plaintiff was arrested and charged with harassment in the second degree for striking his roommate, Rebecca Sklaney. (*Id*. at 31.)

The Complaint does not appear to assert any causes of action, but states that it is "brought pursuant to 42 USC § 1983, to remedy the deprivation, under color of state law, of the rights guaranteed under the Fifth and Fourteenth Amendments of the United States Constitution." (Dkt. No. 1 at 2.) As relief, the Complaint seeks, *inter alia*, (1) reconsideration of *Griffith I*, (2) a declaration that mail-in voting ballots be eliminated from elections, and (3) an investigation "into whether any person or entity has engaged in . . . fraudulent, illegal or deceptive conduct in the ownership, operation or management of the residential properties owned, operated and/or managed by Jan Nastri." (Dkt. No. 1 at 43-44.)

## III.    PLAINTIFF'S APPLICATION TO PROCEED *IN FORMA PAUPERIS*

When a civil action is commenced in a federal district court, the statutory filing fee, currently set at $405, must ordinarily be paid. 28 U.S.C. § 1914(a). A court is authorized, however, to permit a litigant to proceed *in forma pauperis* status if a party "is unable to pay" the

standard fee for commencing an action. 28 U.S.C. § 1915(a)(1).[1] After reviewing Plaintiff's *in forma pauperis* application (Dkt. No. 2), the Court finds that Plaintiff meets this standard. Therefore, Plaintiff's application to proceed *in forma pauperis* is granted.[2]

## IV.   LEGAL STANDARD FOR INITIAL REVIEW OF COMPLAINT

"Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2).

In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. *Neitzke*, 490 U.S. at 327; *Harkins v. Eldridge*, 505 F.2d 802, 804 (8th Cir. 1974); *see Fitzgerald v. First East Seventh Street Tenants Corp.*, 221 F.3d 362, 364 (2d Cir. 2000) (a district court "may dismiss a frivolous complaint *sua sponte* even when the plaintiff has paid the required filing fee[.]"); *see also Pflaum v. Town of Stuyvesant, Columbia Cnty., N.Y.*, 11-CV-0335, 2016 WL 865296, at *1, n.2 (N.D.N.Y. Mar. 2, 2016) (Suddaby, C.J.) (finding that the Court had the power to address and dismiss additional theories

---

[1]      The language of that section is ambiguous because it suggests an intent to limit availability of IFP status to prison inmates. *See* 28 U.S.C. § 1915(a)(1) (authorizing the commencement of an action without prepayment of fees "by a person who submits an affidavit that includes a statement of all assets such prisoner possesses"). The courts have construed that section, however, as making IFP status available to any litigant who can meet the governing financial criteria. *Hayes v. United States*, 71 Fed. Cl. 366, 367 (Fed. Cl. 2006); *Fridman v. City of N.Y.*, 195 F. Supp. 2d 534, 536 n.1 (S.D.N.Y. 2002).

[2]      Plaintiff is reminded that, although the application to proceed *in forma pauperis* has been granted, he will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

of the plaintiff's retaliation claim *sua sponte* because those theories were so lacking in arguable merit as to be frivolous).

In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 [2007]). "Determining whether a complaint states a plausible claim for relief . . . requires the . . . court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not shown–that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citation and punctuation omitted).

"In reviewing a complaint . . . the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Courts are "obligated to construe a pro se complaint liberally." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009); *see also Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam) (reading the plaintiff's *pro se* complaint "broadly, as we must" and holding that the complaint sufficiently raised a cognizable claim). "[E]xtreme caution should be exercised in ordering sua

sponte dismissal of a pro se complaint before the adverse party has been served and [the] parties . . . have had an opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983).

## V.    ANALYSIS

In addressing the sufficiency of a plaintiff's complaint, the court must construe his pleadings liberally. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). Having reviewed Plaintiff's Complaint with this principle in mind, I recommend that all causes of action be dismissed.

Plaintiff brings this action pursuant to Section 1983, which establishes a cause of action for "'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *German v. Fed. Home Loan Mortg. Corp.*, 885 F. Supp. 537, 573 (S.D.N.Y. 1995) (citing *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983)) (footnote omitted). "Section 1983 itself creates no substantive rights, [but] . . . only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citation omitted). To establish liability under the statute, a plaintiff must plead that each government official defendant violated the Constitution through that official's own individual actions. *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020).

Plaintiff's Complaint is largely incomprehensible and must be dismissed for two reasons.

### A.    Frivolous

First, Rule 8 of the Fed. R. Civ. P. requires a "short and plain statement" of a claim, showing that "the pleader is entitled to relief." *Whitfield v. Johnson*, 763 F. App'x 106, 107 (2d Cir. 2019) (quoting Fed. R. Civ. P. 8(a)). Each statement must be "simple, concise, and direct,' and must give 'fair notice of the claims asserted." *Whitfield*, 763 F. App'x at 107 (quoting *Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995)). A pleading must also contain "a demand

for the relief sought[.]" *Id*. "A complaint may be dismissed under Rule 8 if it is 'so confused, ambiguous, or otherwise unintelligible that its true substance, if any, is well disguised.'" *Id*. Moreover, Rule 10 of the Fed. R. Civ. P. provides that "[a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances[.]" Fed. R. Civ. P. 10(b). Rule 10's purpose is to "provide an easy mode of identification for referring to a particular paragraph in a prior pleading[.]" *Clervrain v. Robbins*, 22-CV-1248, 2022 WL 17517312, at *2 (N.D.N.Y. Dec. 8, 2022) (Stewart, M.J.) (citation omitted), *report and recommendation adopted*, 2023 WL 3170384 (N.D.N.Y. May 1, 2023) (D'Agostino, J.). A complaint that does not comply with these Rules "presents far too heavy a burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of [the plaintiff's] claims," and may properly be dismissed by the court. *Gonzales v. Wing*, 167 F.R.D. 352, 355 (N.D.N.Y. 1996) (McAvoy, C.J.).

As it currently stands, Plaintiff's Complaint wholly fails to provide fair notice of the claims he attempts to assert. Although the Complaint begins using numbered paragraphs on pages 1 and 2, the remaining forty-two pages of the Complaint are unnumbered paragraphs. (*See generally* Dkt. No. 1.) Moreover, the Complaint is extremely difficult to follow and, as mentioned above, alleges a series of grievances that appear to have little to do with one another. As best as the undersigned can decipher, Plaintiff appears to believe that his arrest—and ultimate conviction—for failing to comply with his duty to register as a sex offender is somehow related to voting regulations in New York State. (*Id*.) Given its lack of clarity, the undersigned recommends dismissal of the Complaint because it is not acceptable under Rules 8 and 10 of the Fed. R. Civ. P. and because Plaintiff's Section 1983 claim or claims against Defendant are entirely unclear.

### B.    Immunity

Second, and in the alternative, I recommend that Plaintiff's Complaint be dismissed because it seeks relief from New York State, which is immune from suit.

The Eleventh Amendment bars individuals from suing states in federal court, unless Congress abrogates states' immunity or a state consents to suit. *See* U.S. Const. Amend. XI; *Gollomp v. Spitzer*, 568 F.3d 355, 365-66 (2d Cir. 2009). Eleventh Amendment immunity in this case extends to arms of New York State, including the New York State Attorney General. *See Smith v. United States*, 554 F. App'x 30, 31 (2d Cir. 2013) (affirming dismissal of claims against the New York State Attorney General on sovereign immunity grounds). Accordingly, I recommend that Plaintiff's claims asserted against the New York State Attorney General be dismissed pursuant to Section 1915(e)(2)(B)(i).

## VI.    OPPORTUNITY TO AMEND

Generally, a court should not dismiss claims contained in a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, . . . it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d

129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *1

(N.D.N.Y. Sept. 22, 1997) (Pooler, J.).[3]

Here, better pleading could not cure the Court's lack of subject matter jurisdiction based

on the immunities described above.[4]  *See Roark v. New York*, 23-CV-1237, 2023 WL 8827185,

at *6 (N.D.N.Y. Dec. 21, 2023) (Lovric, M.J.) (recommending dismissal without leave to amend

the plaintiff's claims against the People of the State of New York and the Watertown District

Attorney's Office because those governmental entities were immune from suit), *report and*

*recommendation adopted*, 2024 WL 125512 (N.D.N.Y. Jan. 11, 2024) (Hurd, J.).

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's IFP application (Dkt. No. 2) is **GRANTED**; and it is further

respectfully

---

[3]    *See also Carris v. First Student, Inc.*, 132 F. Supp. 3d 321, 340-41 n.1 (N.D.N.Y. 2015)
(Suddaby, C.J.) (explaining that the standard set forth in *Gomez v. USAA Fed. Sav. Bank*, 171
F.3d 794, 796 (2d Cir. 1999)—that the Court should grant leave to amend "unless the court can
rule out any possibility, however unlikely it might be, that an amended complaint would be
successful in stating a claim"—is likely not an accurate recitation of the governing law after *Bell
Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)), *rev'd on other grounds*, 682 F. App'x 30.

[4]    The undersigned notes that a dismissal based on the doctrine of sovereign immunity, is
consequently a dismissal for lack of subject matter jurisdiction. *Crumble v. United States*, 23-
CV-4427, 2023 WL 5102907, at *7 (S.D.N.Y. Aug. 7, 2023); *Nguyen v. Kijakazi*, 20-CV-0607,
2022 WL 542265, at *8 (E.D.N.Y. Feb. 23, 2022).  Moreover, the Second Circuit has directed
that dismissals for lack of subject matter jurisdiction are to be made without prejudice.  *Abadi v.
City of New York*, 22-CV-1560, 2023 WL 3295949, at *3 n.3 (2d Cir. May 8, 2023) (summary
order) (citing *Katz v. Donna Karan Co.*, 872 F.3d 114, 116 (2d Cir. 2017) ("[A] complaint must
be dismissed without prejudice where the dismissal is due to the court's lack of subject matter
jurisdiction.")) ("Because the Court lacks subject matter jurisdiction . . . the amended complaint
should be dismissed *without* prejudice.") (emphasis in original).

**RECOMMENDED** that the Court **DISMISS WITHOUT PREJUDICE BUT WITHOUT LEAVE TO REPLEAD** Plaintiff's Complaint (Dkt. No. 1) for frivolousness and because Defendant is immune from suit, pursuant to 28 U.S.C. § 1915(e)(2)(B); and it is further

**ORDERED** that the Clerk of the Court shall file a copy of this Order and Report-Recommendation on Plaintiff, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

**NOTICE:** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[5] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)).

Dated: March _20_, 2024
      Binghamton, New York

_Miroslav Lovric_
Miroslav Lovric
U.S. Magistrate Judge

---

[5]    If you are proceeding *pro se* and served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date that the report, recommendation, and order was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

Case 5:23-cv-01266-DNH-ML    Document 7    Filed 03/20/24    Page 12 of 56

Pflaum v. Town of Stuyvesant, Columbia Cty., N.Y., Not Reported in Fed. Supp. (2016)

2016 WL 865296

Only the Westlaw citation is currently available.

United States District Court, N.D. New York.

William PFLAUM, Individually and as a Citizen, Resident and Taxpayer of Town of Stuyvesant, Plaintiff,

v.

TOWN OF STUYVESANT, COLUMBIA CTY., N.Y.; and Valerie Bertram, Individually and as Supervisor of Town of Stuyvesant, Defendants.

1:11-CV-0335 (GTS/DJS)

|

Signed 03/02/2016

**Attorneys and Law Firms**

WILLIAM PFLAUM, Plaintiff, Pro Se [1], 3 Rybka Road, Box 40, Stuyvesant Falls, NY 12174.

BRYAN D. RICHMOND, ESQ., THOMAS J. MORTATI, ESQ., BURKE, SCOLAMIERO, MORTATI & HURD, LLP, Attorneys for Defendants, 9 Washington Square, Suite 201, P.O. Box 15085, Albany, NY 12212-5085.

**DECISION and ORDER**

GLENN T. SUDDABY, Chief United States District Judge

**\*1** Currently before the Court, in this civil rights action filed by William Pflaum ("Plaintiff") against the Town of Stuyvesant ("Town") and Valerie Bertram, Town Supervisor ("Bertram") (collectively, "Defendants"), is Defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56. (Dkt. No. 59.) For the reasons set forth below, Defendants' motion is granted.

**I. RELEVANT BACKGROUND**

**A. Plaintiff's Complaint**

As a result of the Court's prior decisions (Dkt. Nos. 17, 26), Plaintiff's sole remaining claim in this action is his First Amendment retaliation claim. More specifically, as articulated in his Complaint (which was drafted by Plaintiff, *pro se*, and therefore must be construed with special solicitude), that claim alleges three separate ways he was retaliated against for publicly criticizing Town officials. [2]

First, Plaintiff alleges that, in retaliation for filing charges of ethical violations against Defendant Bertram, she (a) "collaborated with and supported" the Town's Fire Chief to deny and/or threaten to deny fire protection to Plaintiff, (b) "supported and encouraged" various Town employees to "illegal[ly] revo[ke] ... Plaintiff's permit to operate his business," and (c) "supported and encouraged" the Town Assessor's "campaign to intimidate Plaintiff by linking [his] political speech [with his] real estate assessment." (Dkt. No. 1, ¶¶ 20-23, 116 [Pl.'s Compl.].)

Second, Plaintiff alleges that, in retaliation for writing columns on his Internet blog regarding corruption among the Town's public officials, the Town filed false criminal charges against him. (*Id.*, ¶ 116.)

Third, and finally, Plaintiff alleges that, in retaliation for criticizing Bertram, the Town Assessor, and the Town, the Town Assessor used his authority to raise taxes in order to intimidate Plaintiff into silence. (*Id.*, ¶¶ 23, 39, 47, 116.)

**B. Defendants' Motion for Summary Judgment**

**\*2** In their motion for summary judgment, Defendants request the dismissal of Plaintiff's Complaint in its entirety. (Dkt. No. 59.) In support of their motion, Defendants make the following four arguments. First, Defendants argue that there was no adverse action against Plaintiff in that there was no actual chilling of Plaintiff's First Amendment speech or any other damages. (Dkt. No. 61, at 3-8 [Defs.' Mem. of Law].)

Second, Defendants argue that, in any event, any such adverse action was not motivated or substantially caused by Plaintiff's First Amendment speech. (*Id.* at 5-6.)

Third, in the alternative, Defendants argue that Bertram was not personally involved in any deprivation of fire protection services to Plaintiff. (*Id.* at 5, 8-10.)

Fourth, and finally, Defendants argue that Bertram is entitled to qualified immunity. (*Id.*)

**C. Plaintiff's Opposition Memorandum of Law**

Generally construed, Plaintiff makes five arguments in opposition to Defendants' motion. First, Plaintiff argues that he engaged in protected speech by creating an Internet blog on which he publicly criticized Town officials and exposed

Case 5:23-cv-01266-DNH-ML    Document 7    Filed 03/20/24    Page 13 of 56

Pflaum v. Town of Stuyvesant, Columbia Cty., N.Y., Not Reported in Fed. Supp. (2016)

their illegal activities. (Dkt. No. 65, at 3 [Pl.'s Opp'n Mem. of Law].)

Second, Plaintiff argues that Town officials took adverse action against him by issuing noise violations against him with respect to loud dog barking on his property, retaining special prosecutors to pursue civil suits and criminal charges against him, encouraging harassment and extra-judicial threats against him, and treating him differently from other residents. (*Id.* at 4-5.) As a result, Plaintiff argues that he suffered a chilling effect on his blogging as well as monetary damages due to the expense required to oppose the Town's retaliatory activities. (*Id.* at 6-8.)

Third, Plaintiff argues that the timing of these adverse actions, i.e., that they began after he created his blog, establishes the causal connection between his protected speech and the adverse actions. (*Id.* at 5.)

Fourth, Plaintiff argues that Bertram is not entitled to qualified immunity because it was not objectively reasonable to believe that her actions did not violate Plaintiff's First Amendment rights. (*Id.* at 5-6.) According to Plaintiff, these actions consisted of (1) threatening to fire the Town's Dog Control Officer if he did not serve Plaintiff with a criminal charge related to dog barking, and (2) retaining special prosecutors to pursue this charge against Plaintiff without first obtaining the Town's approval. (*Id.* at 9.)

Fifth, Plaintiff argues that municipal liability extends to the Town because of the actions of Bertram, the Town's supervisor, and her position as a policymaker. (*Id.* at 8-9.)

Finally, the Court notes that Plaintiff spends considerable time in his opposition papers arguing the merits of issues not raised by Defendants in their motion. For example, Plaintiff discusses the Town's denial of his FOIL requests, the Town's failure to respond appropriately to alleged vandalism of his property, and the sufficiency of the evidence that led to the issuance of noise violations related to dog barking. (*See generally id.*, at 3-4, 6-9; Dkt. No. 67, ¶¶ 4, 14, 25, 27, 36, 56-107 [Pl.'s Decl.].)

### D. Defendants' Reply Memorandum of Law
In reply to Plaintiff's opposition memorandum of law, Defendants make two arguments. First, Defendants argue that, because Plaintiff has not complied with Local Rule 7.1(a) (3) in his response to their statement of material facts, their

statement of material facts should be deemed admitted. (Dkt. No. 74, at 2-6 [Defs.' Reply Mem. of Law].)

**\*3** Second, Defendants argue that the record is devoid of any admissible evidence that Bertram was personally involved in an alleged deprivation of fire protection services with regard to Plaintiff's residence. (*Id.* at 6-7.) Furthermore, Defendants argue that Plaintiff cannot demonstrate that any adverse action was taken because he was never actually deprived of fire protection services and his subjective belief that the fire department may not respond to a fire at his residence is insufficient to create a genuine dispute of fact. (*Id.* at 7-8.)

### E. Statement of Material Facts

#### 1. Plaintiff's Failure to Comply
#### with N.D.N.Y. Local Rule 7.1

Before reciting the material facts of this case, the Court must address Plaintiff's response to Defendant's Rule 7.1 Statement of Material Facts. Local Rule 7.1(a)(3) of the Local Rules of Practice for this Court requires a party moving for summary judgment to submit a statement of material facts supported by specific citations to the record where those facts are established. N.D.N.Y. L.R. 7.1(a)(3). The non-moving party's subsequent response must mirror the moving party's statement of material facts by (1) admitting and/or denying each of the moving party's factual assertions in matching numbered paragraphs and (2) supporting any denials with specific citations to the record where the factual issues arise. *Id.* Importantly, "[t]he Court shall deem admitted any properly supported facts set forth in the [moving party's] Statement of Material Facts that the [non-moving] party does not specifically controvert." *Id.*

This Court's "Local Rule requirements are not empty formalities." *Bombard v. Gen. Motors Corp.*, 238 F. Supp. 2d 464, 467 (N.D.N.Y. 2002) (Munson, J.) (stating that "[t]he courts of the Northern District have adhered to a strict application of Local Rule 7.1[a][3]'s requirement on summary judgment motions"); *accord, Cross v. Potter*, 09-CV-1293, 2013 WL 1149525, at *3 (N.D.N.Y. Mar. 19, 2013) (McAvoy, J.). Indeed, the underlying purpose of this rule "is to assist the court in framing the issues and determining whether there exist any triable issues of fact that would preclude the entry of summary judgment." *Youngblood v. Glasser*, 10-CV-1430, 2012 WL 4051846, at *4 (N.D.N.Y. Aug. 22, 2012) (Peebles, M.J.); *see also* 📁 *N.Y. Teamsters Conference Pension &*

Case 5:23-cv-01266-DNH-ML    Document 7    Filed 03/20/24    Page 14 of 56

Pflaum v. Town of Stuyvesant, Columbia Cty., N.Y., Not Reported in Fed. Supp. (2016)

*Ret. Fund v. Express Servs., Inc.*, 426 F.3d 640, 649 (2d Cir. 2005) (noting that "Rules governing summary judgment practice are essential tools for district courts, permitting them to efficiently decide summary judgment motions by relieving them of the onerous task of 'hunt[ing] through voluminous records without guidance from the parties'") (quoting 🚩 *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 74 [2d Cir. 2001]).

In the present case, Plaintiff has failed to respond appropriately to Defendants' Rule 7.1 Statement of Material Facts. Specifically, Plaintiff has failed to admit and/or deny each of Defendants' factual assertions in matching numbered paragraphs. Indeed, Defendants' Rule 7.1 Statement contains 71 paragraphs of factual assertions, while Plaintiff's 7.1 Response contains only 11 paragraphs. (*Compare* Dkt. No. 62 [Defs.' Rule 7.1 Statement] *with* Dkt. No. 66 [Pl.'s Rule 7.1 Response].) Moreover, many of Plaintiff's responses are conclusory in nature and/or contain legal arguments. The Court notes that, when he responded to Defendants' motion, Plaintiff was represented by counsel. Accordingly, the Court will accept the factual assertions in Defendants' 7.1 Statement as true to the extent that the evidence in the record supports these facts. *See Davis v. Cumberland Farms, Inc.*, 10-CV-0480, 2013 WL 375477, at *4 (N.D.N.Y. Jan. 29, 2013) (Scullin, J.) (accepting the defendant's statement of material facts as true where plaintiff neither admitted nor denied defendant's factual assertions); 📙 *Aktas v. JMC Dev. Co., Inc.*, 877 F. Supp. 2d 1, 5 n.3 (N.D.N.Y. 2012) (D'Agostino, J.) (accepting the third-party defendants' statement of material facts as true because the defendant/third-party plaintiff failed to respond to it in accordance with Local Rule 7.1[a][3] ).

### 2. Undisputed Material Facts

**\*4** For purposes of this motion, the undisputed material facts are as follows. Gerald Ennis has served as the Zoning Enforcement Officer for the Town of Stuyvesant continuously since 2003. (Dkt. No. 62, ¶ 43 [Defs.' Rule 7.1 Statement].) In this capacity, Mr. Ennis issued Plaintiff a Class 2 Home Occupation Permit in August, 2009. (*Id.*, ¶ 44.) Under this permit, "[n]o unusual appearances, noise, vibration, smoke, dust, odors, heat, glare or electrical disturbances that exceed those normally produced by a resident shall be permitted." (*Id.*, ¶ 45.) Following the issuance of this permit, Mr. Ennis received numerous noise complaints from Plaintiff's neighbors in regard to increasingly loud barking

from dogs on Plaintiff's property. (*Id.*, ¶¶ 46-47.) Following an investigation into these complaints, Mr. Ennis concluded that Plaintiff's "home dog kennel which housed up to 50 dogs at a time was producing noise levels that exceeded those normally produced by a resident and, accordingly, [Plaintiff] was in violation of his Permit." (*Id.*, ¶ 48.)

On December 7, 2009, Mr. Ennis issued Plaintiff a notice of violation, which informed Plaintiff that the Town had received several complaints about the noise coming from his property and directed Plaintiff to remedy the violation by December 23, 2009. (*Id.*, ¶ 49.) Subsequently, Plaintiff contacted Mr. Ennis and requested that his phone number be given to those who had complained with instructions that they contact Plaintiff directly when there are noise issues so he can rectify any problems. (*Id.*, ¶ 50.) However, after a few months had passed, Plaintiff stopped answering his neighbors' phone calls; and, as a result, his neighbors made new complaints to Mr. Ennis. (*Id.*, ¶ 51.) After receiving these complaints and personally observing the loud noise emanating from Plaintiff's property, Mr. Ennis issued a second notice of violation to Plaintiff on April 26, 2010. (*Id.*, ¶¶ 52-53.) In response, Plaintiff advised Mr. Ennis that he would erect a sound barrier to remedy the issue. (*Id.*, ¶ 54.)

According to Mr. Ennis, he waited "some time" for Plaintiff to erect, or apply for a permit to construct, a sound barrier but neither action was taken. (*Id.*, ¶¶ 55-56.) After continuing to receive noise complaints, Mr. Ennis issued a third notice of violation to Plaintiff on August 9, 2010. (*Id.*, ¶ 56.) On the same day, Mr. Ennis met with Bertram and the Town Attorney to discuss the noise issue on Plaintiff's property. (*Id.*, ¶ 57.) The Town Attorney advised Bertram that Mr. Ennis had the authority to revoke Plaintiff's home occupation permit if he determined that Plaintiff was in violation of the permit's conditions. (*Id.*, ¶ 37.) As a result, Bertram advised Mr. Ennis that he may revoke Plaintiff's permit if he determined that the permit's conditions had been violated. (*Id.*, ¶ 38.) Later that same day (August 9, 2010), Mr. Ennis made the decision to revoke Plaintiff's permit and notified Plaintiff of that fact. (*Id.*, ¶¶ 39, 59.) Neither Plaintiff's statements concerning various issues in the Town nor his postings on various Internet sites had any bearing on the decision to revoke Plaintiff's permit. (*Id.*, ¶¶ 40, 61.)

Plaintiff testified at his deposition that the basis for his claim that he was deprived of fire protection services is that, "in 2011, or perhaps late 2010," a local fire department chief, Steve Montie, posted an online statement that Plaintiff should

move out of town. (*Id.*, ¶ 14.) Plaintiff testified that the post was made in response to one of his earlier posts on a local town Internet forum; in Plaintiff's post, he had complained of alleged ethical violations committed by Bertram. (*Id.*, ¶¶ 15-16.) The alleged post by Mr. Montie states in its entirety as follows:

> William,
>
> How much more of this are you going to do ? ? ? ? You are wasting more tax payer dollars than its worth. Man up correct your problems and move on, or better yet move out.
>
> S

(*Id.*, ¶ 19.) The author of this post is not identified by name but only by the email address stuyvesantchief@fairpoint.net; and, as indicated above, the post is signed only as "S." (*Id.*, ¶ 18.)

**\*5** Plaintiff testified that the statements in the alleged post amounted to a threatened denial of fire department services because "the fire chief told me I should move out of town, which makes me wonder if there was a fire at my house would he come." (*Id.*, ¶ 20.) However, Plaintiff testified that no one has ever told him that the fire department would not respond if there was a fire at his house. (*Id.*, ¶ 22.) In addition, Plaintiff testified that there are two distinct fire departments in the Town, Stuyvesant Company 1 and Stuyvesant Company 2, which divide their responses to emergency calls in the Town geographically. (*Id.*, ¶ 23.) Steve Montie is the Chief of Stuyvesant Company 1 and a different chief controls Company 2. (*Id.*, ¶ 25.) Plaintiff's property is located in the geographic area covered by Company 2. (*Id.*, ¶ 24.) According to Bertram, she did not "in any way direct any fire department to deprive or threaten to deprive [Plaintiff] of fire services." (*Id.*, ¶ 33.)

Finally, Plaintiff testified that there was "never" a time that he did not publicize or speak out against some issues based upon any actions by the Town and the alleged efforts to silence him did not work. (*Id.*, ¶ 26.) In fact, following the alleged actions by the Town, Plaintiff did more blogging and increased his "political activities against the Town." (*Id.*, ¶ 27.) With respect to his business, Plaintiff testified that, despite losing his business permit in August, 2010, he continued to operate his business uninterrupted without a permit as he had before it was issued in 2009. (*Id.*, ¶ 29.) Accordingly, there was

no interruption to Plaintiff's business as a result of his home business permit being revoked. (*Id.*, ¶¶ 28, 30.)

## II. STANDARD GOVERNING A MOTION FOR SUMMARY JUDGMENT

Under Fed. R. Civ. P. 56, summary judgment is warranted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). As a result, "[c]onclusory allegations, conjecture and speculation ... are insufficient to create a genuine issue of fact." Kerzer v. Kingly Mfg., 156 F.3d 396, 400 (2d Cir. 1998) (citation omitted); *see also* Fed. R. Civ. P. 56(e)(2). As the Supreme Court has famously explained, "[the non-moving party] must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 585-86 (1986). As for the materiality requirement, a dispute of fact is "material" if it "might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248. "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

In determining whether a genuine issue of material fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the movign party. Anderson, 477 U.S. at 255. In addition, "[the moving party] bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the ... [record] which it believes demonstrate[s] the absence of any genuine issue of material fact." Celotex v. Catrett, 477 U.S. 317, 323-24 (1986); *see also* Fed. R. Civ. P. 56(c), (e). However, when the moving party has met this initial burden of establishing the absence of any genuine issue of material fact, the nonmoving party must come forward with specific facts showing a genuine dispute of material fact for trial. Fed. R. Civ. P. 56(c), (e). Where the non-movant fails to deny the factual assertions contained in the movant's Rule 7.1 Statement of Material Facts in matching numbered paragraphs supported by a citation to admissible record evidence (as required by Local Rule 7.1[a][3] of the Court's Local Rules of Practice), the court may not rely solely on the movant's Rule 7.1 Statement; rather, the court must be

satisfied that the citations to evidence in the record support the movant's assertions. *See Giannullo v. City of N.Y.*, 322 F.3d 139, 143, n.5 (2d Cir. 2003) (holding that not verifying in the record the assertions in the motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts").

## III. ANALYSIS

### A. Whether Plaintiff Suffered an Adverse Action

**\*6** After carefully considering the matter, the Court answers this question in the negative for the reasons set forth in Defendants' memorandum of law and reply memorandum of law. (Dkt. No. 61, at 3-8 [Defs.' Mem. of Law]; Dkt. No. 74, at 6-8 [Defs.' Reply Mem. of Law].) To those reasons, the Court adds the following two points.

As this Court noted in its prior decisions, in order to state a claim for retaliation under the First Amendment, "a plaintiff must prove (1) his conduct was protected by the First Amendment, (2) the defendants' actions were motivated or substantially caused by the exercise of that right, and (3) defendants' actions effectively 'chilled' the exercise of plaintiff's First Amendment right." *Pflaum*, 937 F. Supp. 2d at 303 (citing *Dillon v. Morano*, 497 F.3d 247, 251 [2d Cir. 2007]). "In cases 'involving criticism of public officials by private citizens,' the Second Circuit has generally 'impose[d] an actual chill requirement for First Amendment retaliation claims[,]' i.e., a requirement that the plaintiff allege and ultimately prove an 'actual chill' of his First Amendment rights." *Hafez v. City of Schenectady*, 894 F. Supp. 2d 207, 221 (N.D.N.Y. 2012) (D'Agostino, J.) (quoting *Gill v. Pidlypchak*, 389 F.3d 379, 381 [2d Cir. 2004]). "To establish this element, it is not enough for the plaintiff simply to show that he changed his behavior in some way; he must show that the defendant intended to, and did, prevent or deter him from exercising his rights under the First Amendment." *Hafez*, 894 F. Supp. 2d at 221. "However, 'where the retaliation is alleged to have caused an injury separate from any chilling effect, such as a job loss or demotion, an allegation as to a chilling effect is not necessary to state a claim.'" *Id.* (quoting *Puckett v. City of Glen Cove*, 631 F. Supp. 2d 226, 239 [E.D.N.Y. 2009]); *see also Brink v. Muscente*, 11-CV-4306, 2013 WL 5366371, at \*7 (S.D.N.Y. Sept. 25, 2013) (noting that, in private citizen cases, "various forms of concrete harm have been substituted for the 'actual chilling' requirement").

First, it is clear from Plaintiff's deposition testimony that there was no actual chilling of his protected speech as a result of Defendants' actions. As discussed above, Plaintiff admitted that he increased his political activities and continued to publicize his opinions against the Town in the face of its alleged efforts to silence him. "Where a party can show no change in his behavior, he has quite plainly shown no chilling of his First Amendment right to free speech." *Curley v. Vill. of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001); *see also Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 120 (2d Cir. 1995) (finding no chilling effect where, after an arrest, the plaintiff continued to publish his newspaper through which he criticized the village government); *Spear v. Town of W. Hartford*, 954 F.2d 63, 67 (2d Cir. 1992) (finding no chilling effect where, after the filing of a lawsuit, the plaintiff continued to write criticizing editorials in the same manner as before the lawsuit).

Second, to the extent that Plaintiff argues that he perceived the online post regarding the loss of fire protection as a real threat, he is still required to show that his perception was objectively reasonable, i.e., "that the defendant[s'] actions had some actual, non-speculative chilling effect." *Colombo v. O'Connell*, 310 F.3d 115, 117 (2d Cir. 2002); *see also Laird v. Tatum*, 408 U.S. 1, 13-14 (1972) (holding that "[a]llegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm"). Plaintiff's subjective belief that the online post constituted a real threat, without more, is insufficient to demonstrate an actual chilling effect on his First Amendment rights. Indeed, as discussed above in Point I.E.2. of this Decision and Order, Plaintiff admitted that no one had told him that the fire department would not respond if there was a fire at his house. Moreover, a different fire chief than the one who allegedly authored the online post is responsible for responding to fire calls in the location of Plaintiff's residence.

### B. Whether There Was a Causal Connection Between Plaintiff's Speech and Any Adverse Action

**\*7** After carefully considering the matter, the Court answers this question in the negative for the reasons set forth below.

To establish the second element of his First Amendment retaliation claim, "plaintiff must provide specific proof of defendants' improper motivation with either circumstantial or direct evidence." *Media All., Inc. v. Mirch*, 09-CV-0659, 2011 WL 3328532, at \*5 (N.D.N.Y. Aug.

Case 5:23-cv-01266-DNH-ML    Document 7    Filed 03/20/24    Page 17 of 56

Pflaum v. Town of Stuyvesant, Columbia Cty., N.Y., Not Reported in Fed. Supp. (2016)

2, 2011) (D'Agostino, J.) (citing *Curley*, 285 F.3d at 73). "Circumstantial evidence includes close temporal proximity between plaintiff's speech and the alleged retaliatory act." *Mirch*, 2011 WL 3328532, at *5.

"Regardless of the presence of retaliatory motive, however, a defendant may be entitled to summary judgment if he can show dual motivation, i.e., that even without the improper motivation the alleged retaliatory action would have occurred." *Scott v. Coughlin*, 344 F.3d 282, 287-88 (2d Cir. 2003) (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 [1977]). "Plaintiff has the initial burden of showing that an improper motive played a substantial part in defendant's action. The burden then shifts to defendant to show it would have taken exactly the same action absent the improper motive." *Scott*, 344 F.3d at 288.

### 1. Revocation of Plaintiff's Business Permit

In denying Defendants' underlying motion to dismiss Plaintiff's First Amendment claim, this Court held that Plaintiff had sufficiently alleged a concrete harm through the loss of his business permit, and consequently, the loss of business income, as a result of Defendants' alleged retaliatory actions. *Pflaum*, 937 F. Supp. 2d at 308. Having carefully reviewed the record, the Court finds that Plaintiff has failed to create a genuine dispute of material fact regarding Defendants' alleged improper motive. Specifically, with respect to the revocation of his business permit, the undisputed facts establish that the Town received complaints regarding the noise emanating from Plaintiff's property. Plaintiff was given two[3] noise violations over the course of approximately one year and ample opportunity to rectify the problem. (Dkt. No. 67, Attach. 5.) Because the noise problem and complaints continued, Mr. Ennis revoked Plaintiff's permit.[4] Even if Plaintiff were able to establish that an improper motive played a part in this decision, it is clear to the Court that, under these circumstances, the revocation would have still occurred. Indeed, Plaintiff challenged the decision to revoke his permit in appeals made to the Town's Zoning Board of Appeals and in two actions filed in New York State Supreme Court. (Dkt. No. 67, Attachs. 1 & 2.) Although Plaintiff was successful in his state court actions, those decisions were based, in part, upon the Town's failure to follow proper procedure, rather than the merits of the Town's decision. (*Id.*)

### 2. Criminal Charges

**\*8** Plaintiff has also failed to demonstrate an improper motive with respect to his claim that he received false criminal charges in retaliation for comments on his website about corruption among public officials. Plaintiff relies on the temporal proximity of these charges with a meeting he had with Bertram and his filing of an Article 78 petition in New York State Supreme Court. More specifically, Plaintiff argues that he began an Internet blog on or about January 1, 2011, and in that blog reported on what he perceived to be the illegal activities of Town officials. (Dkt. No. 67, ¶ 15 [Pl.'s Decl.].)

For example, on January 1, 2011, Plaintiff wrote about the alleged inflation of billable time by the Town Attorney that was spent on work paid for by the Town. (*Id.* at 65:8-11.) Around the same time, Plaintiff met with Bertram to discuss his discovery of specific instances of corruption by public officials, including the alleged inflation of billable work by the Town Attorney. (Dkt. No. 59, Attach. 7, at 62:13-15; 64:9-15 [Pl.'s Dep. Tr.].) On January 15, 2011, a few days after this meeting occurred, Plaintiff was issued a criminal summons for the offense of "habitual loud barking," in violation of N.Y. Local Law § 1. (*Id.* at 61:19-22; Dkt. No. 68, Attach. 7 [Criminal Summons; Dkt. No. 67, ¶ 15 [Pl.'s Decl.].) Plaintiff testified at his deposition that the Town Attorney went to great lengths to research the Local Law that he was charged under and assisted one of Plaintiff's neighbors in drafting an affidavit upon which the criminal summons was based. (Dkt. No. 59, Attach. 7, at 65:17-21 [Pl.'s Dep. Tr.; Dkt. No. 67, ¶ 107 [Pl.'s Decl.].) Plaintiff argues that he is the first Town resident to be charged under this section of the Local Law. (Dkt. No. 67, ¶¶ 100, 106 [Pl.'s Decl.].) Finally, Plaintiff argues that Bertram retained outside counsel to pursue this charge against him, which was later dismissed. (Dkt. No. 67, ¶¶ 5, 19, 21 [Pl.'s Decl.]; Dkt. No. 59, Attach. 7, at 57:16-18 [Pl.'s Dep. Tr.].)

Thereafter, in October 2011, Plaintiff filed an Article 78 petition in New York State Supreme Court challenging the Town's denial of Plaintiff's FOIL requests. (Dkt. No. 59, Attach. 7, at 67:7-12 [Pl.'s Dep. Tr.].) Plaintiff sought disclosure of the information in the FOIL requests to substantiate his belief that Town officials were engaging in illegal activities. (Dkt. No. 67, ¶¶ 43-44 [Pl.'s Decl.].) One week after commencing that action, Plaintiff received a second criminal summons for the same offense related to loud

dog barking. (Dkt. No. 68, Attach. 7 [Appearance Ticket]; Dkt. No. 59, Attach. 7, at 56:16-19; 67:7-12 [Pl.'s Dep. Tr.].) Plaintiff testified that he had "almost no dogs" on his property in October 2011. (Dkt. No. 59, Attach. 7, at 67:8-10 [Pl.'s Dep. Tr.].) According to Plaintiff, that charge was neither dismissed nor withdrawn, but "vanished." (*Id.*, at 57:19-58:9.)

While Plaintiff's allegations may plausibly suggest that an improper motive played a role in the charges brought against him, Defendants have submitted admissible record evidence that establishes otherwise. (Dkt. No. 59, Attach. 17.) Specifically, the criminal information in question is signed by one of Plaintiff's neighbors, Frederick Platt, and states, in part, that "my complaint is that the dogs at Glencadia Dog Camp exhibit ongoing habitual barking/howling at any given time of day or night. This has been an issue since the Fall of 2009." (*Id.*) Furthermore, an affidavit filed by Wes Powell, the Town's Dog Control Officer, states that he received repeated complaints from Mr. Platt throughout 2010, culminating in the noise complaint that served as the basis for the criminal charge. (Dkt. No. 59, Attach. 16, ¶¶ 3-5 [Powell Aff.].) Mr. Powell states that the complaint was written by Mr. Platt in his presence and that no Town official directed Mr. Powell to serve Plaintiff with the criminal summons. (*Id.*, ¶¶ 7-10.)

**\*9**  Conversely, Plaintiff has not submitted any admissible record evidence supporting his claim that the Town Attorney (who is not a party) played any role in the charge being filed against him or that he is the only resident to have ever been charged under this section of the Local Law. Similarly, Plaintiff's contention that the Town pressured Mr. Platt to file a complaint against him (Dkt. No. 67, ¶ 7[Pl.'s Decl.] ) is unsubstantiated. While the timing of the charge may appear suspicious, the Town cannot control when its residents decide to file a complaint and, in light of the record evidence demonstrating that there was a preexisting noise problem on Plaintiff's property, the complaint is unsurprising. Moreover, the fact that Plaintiff *believes* the Town shored up its criminal charge against him is of little, if any, materiality. Finally, because the second charge seemingly "vanished," no documentation or evidence (other than the appearance ticket itself) has been submitted with respect to that charge. In any event, because the charge was never prosecuted, Plaintiff has failed to support his claim that he suffered any harm. Accordingly, the Court finds that Plaintiff has failed to meet his burden in demonstrating an improper motive with respect to this charge.

### 3. Town Assessor Gleason

Plaintiff claims that Town Assessor Howard Gleason (also not a party) threatened to raise his property taxes for engaging in political activities when Mr. Gleason hand delivered a letter to Plaintiff before a public meeting. (Dkt. No. 69, Attach. 18, at 3 [Letter from Pl. to Gleason]; Dkt. No. 67, ¶ 29 [Pl.'s Decl.].) The only evidence submitted with respect to this claim is not the original letter from Mr. Gleason to Plaintiff but letter correspondence from Plaintiff to Mr. Gleason. (Dkt. No. 69, Attach. 18, at 3 [Letter from Pl. to Gleason].) Plaintiff's letter to Mr. Gleason, dated October 5, 2010, states that Plaintiff interpreted Mr. Gleason's attempt to speak with him about tax filings before a town hall meeting as threatening in nature due to the "timing and manner of the interaction." (*Id.*) This is because Plaintiff "had announced [his] intention to call for a referendum frequently and in many forums prior to appearing for the meeting." (*Id.*) Furthermore, Plaintiff requested that, in order to "avoid the impression that you coordinate your tax-related activities with other people in government in order to intimidate free speech, please do not present important information to me in such an information [sic] and unverifiable way." (*Id.*)

However, Mr. Gleason's response to Plaintiff's letter suggests that their interaction was not meant as a threat to raise Plaintiff's taxes or "was in any way politically motivated." (Dkt. No. 69, Attach. 18, at 4 [Letter from Pl. to Gleason].) More specifically, Mr. Gleason explains that he needed to re-assess Plaintiff's property in light of the fact that Plaintiff was now running a kennel (business) on his property and decided to hand deliver his letter knowing that Plaintiff would be present for the town hall meeting. (*Id.*) Moreover, Mr. Gleason reassured Plaintiff that politics do not dictate how he performs his job and promised that all future communication will be transmitted through mail rather than in-person. (*Id.*)

Plaintiff has failed to submit any additional evidence with respect to his tax assessment, that his taxes were improperly raised or that Mr. Gleason acted with a retaliatory animus.[5] Similarly, no evidence has been submitted to substantiate Plaintiff's claim that Bertram encouraged Mr. Gleason to use his authority as Town Assessor to intimidate Plaintiff. In sum, Plaintiff has wholly failed to satisfy his burden demonstrating that he suffered harm as a result of any action taken by Mr. Gleason and that Mr. Gleason acted with an improper motive.

Pflaum v. Town of Stuyvesant, Columbia Cty., N.Y., Not Reported in Fed. Supp. (2016)

Case 5:23-cv-01266-DNH-ML    Document 7    Filed 03/20/24    Page 19 of 56

**\*10**  For all of these reasons, the Court finds that Plaintiff has failed to create a genuine dispute of material fact with respect to his First Amendment claim. Because the Court has reached this conclusion, it need not, and does not, consider the merits of Defendant Bertram's alternative qualified immunity argument.

**ACCORDINGLY**, it is

**ORDERED** that Defendants' motion for summary judgment (Dkt. No. 59) is **GRANTED**. The Clerk of the Court is directed to enter judgment in favor of the Defendants and close this case.

**All Citations**

Not Reported in Fed. Supp., 2016 WL 865296

## Footnotes

1    Although Plaintiff is currently proceeding *pro se*, the Court notes that he had counsel when preparing his response to Defendant's motion for summary judgment. Accordingly, no need exists to construe Plaintiff's response with the special solicitude ordinarily afforded to *pro se* litigants.

2    The Court notes that, while it did not previously (i.e., in its prior decisions) liberally construe Plaintiff's retaliation claim as arising under three separate theories, it does so now. The Court further notes that it has the power to address these two additional theories for each of two alternative reasons: (1) because Defendants moved for dismissal of Plaintiff's retaliation claim in its entirety, Plaintiff has had sufficient notice and an opportunity to be heard with respect to the two theories in question; and (2) in any event, even if Plaintiff cannot be said to have had such notice and an opportunity to be heard, he filed his Complaint *pro se* and the Court finds the two theories to be so lacking in arguable merit as to be frivolous, *see Fitzgerald v. First E. Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (recognizing that district court has power to *sua sponte* dismiss *pro se* complaint based on frivolousness notwithstanding fact that plaintiff has paid statutory filing fee).

3    As discussed above, Plaintiff was actually given three noise violations. However, because his permit was revoked on the same day that he received the third violation, the Court will disregard the third violation for purposes of this analysis.

4    The Court notes that Plaintiff spends considerable time in his opposition papers disputing the sufficiency of the evidence and procedures that were followed that led to the issuance of noise violations. (*See generally* Dkt. No. 67, ¶¶ 56-95 [Pl.'s Decl.].) However, this Court is not the proper forum for that dispute. Furthermore, to the extent that the New York Supreme Court observed that there appeared "to have been a disproportionate amount of time and money spent on [the noise violation] notice," and that the records did not "reveal a real issue with dog-barking," those observations are not binding upon this Court. (Dkt. No. 67, Attach. 2, at 6.) Setting aside the fact that the observations constitute dicta, Defendants have submitted admissible record evidence demonstrating that Mr. Ennis acted upon complaints made to him by residents of the Town, which Plaintiff has failed to properly dispute.

5    For example, with regard to this lack of additional evidence regarding retaliatory animus, Plaintiff has failed to adduce admissible record evidence establishing that, even assuming Mr. Gleason knew of Plaintiff's intent to engage in protected speech, the so-called "manner of the interaction" by Mr. Gleason (i.e., the hand delivery of the letter) was in fact unusual for Mr. Gleason given the date of the letter and the date of the public meeting. Moreover, Plaintiff has failed to adduce admissible record evidence that the so-called "timing ...

of the interaction" is significant, given his rather constant exercise of his First Amendment rights during the time in question.

---

**End of Document**                                             © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2022 WL 17517312
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Manetirony CLERVRAIN, Plaintiff,

v.

Jonathan ROBBINS, et al., Defendants.

1:22-CV-1248 (MAD/DJS)
|
Signed December 8, 2022

**Attorneys and Law Firms**

MANETIRONY CLERVRAIN, Plaintiff, Pro Se, Anderson, IN 46013.

**REPORT-RECOMMENDATION and ORDER**

DANIEL J. STEWART, United States Magistrate Judge

**\*1** The Clerk has forwarded for review what has been docketed as a civil complaint filed by Plaintiff. Dkt. No. 1, Compl. Plaintiff has not paid the filing fee but has submitted an application to proceed *in forma pauperis* ("IFP"), Dkt. No. 2, which the Court has granted. [1]

**I. SUFFICIENCY OF THE COMPLAINT**

**A. Governing Legal Standard**

28 U.S.C. § 1915(e) directs that, when a plaintiff seeks to proceed *in forma pauperis*, "(2) ... the court shall dismiss the case at any time if the court determines that – ... (B) the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). [2] Thus, even if a plaintiff meets the financial criteria to commence an action *in forma pauperis*, it is the court's responsibility to determine whether the plaintiff may properly maintain the complaint that he filed in this District before the court may permit the plaintiff to proceed with this action *in forma pauperis. See id.*

Likewise, under 28 U.S.C. § 1915A, a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief may be granted; or ... seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A; *see also Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (*per curiam*); *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (stating that both sections 1915 and 1915A are available to evaluate *pro se* prisoner complaints).

In reviewing a *pro se* complaint, the court has a duty to show liberality toward *pro se* litigants, *see Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (*per curiam*), and should exercise "extreme caution ... in ordering sua sponte dismissal of a pro se complaint *before* the adverse party has been served and both parties (but particularly the plaintiff) have had an opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983) (internal citations omitted). Therefore, a court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. at 556).

**\*2** Although a court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. at 555). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not show[n] - that the pleader is entitled to relief." *Id.* at 679 (quoting FED. R. CIV. P. 8(a)(2)). Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556

Case 5:23-cv-01266-DNH-ML    Document 7    Filed 03/20/24    Page 22 of 56

Clervrain v. Robbins, Not Reported in Fed. Supp. (2022)

U.S. at 678 (citing 🚩 *Bell Atl. Corp. v. Twombly*, 550 U.S. at 555). Thus, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Id.* (internal quotation marks and alterations omitted).

### B. Analysis of the Complaint

A court's initial review of a complaint under 🚩 § 1915(e) must encompass the applicable standards of the Federal Rules of Civil Procedure. Rule 8 of the Federal Rules of Civil Procedure provides that a pleading must contain:

> (1) a short and plain statement of the grounds for the court's jurisdiction ...;
>
> (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and
>
> (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

FED. R. CIV. P. 8(a). The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer [and] prepare an adequate defense." *Hudson v. Artuz*, 1998 WL 832708, at *1 (S.D.N.Y. Nov. 30, 1998) (quoting *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y. 1995)). Moreover, Rule 10 of the Federal Rules of Civil Procedure provides, in part:

> **(b) Paragraphs; Separate Statements.** A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence – and each defense other than a denial – must be stated in a separate count or defense.

FED. R. CIV. P. 10(b). The purpose of Rule 10 is to "provide an easy mode of identification for referring to a particular paragraph in a prior pleading[.]" *Sandler v. Capanna*, 1992 WL 392597, at *3 (E.D. Pa. Dec. 17, 1992).

A complaint that fails to comply with basic pleading requirements presents too heavy a burden for defendants to craft a defense "and provides no meaningful basis for the Court to assess the sufficiency of [the plaintiff's] claims," and may properly be dismissed. 🚩 *Gonzales v. Wing*, 167 F.R.D. 352, 355 (N.D.N.Y. 1996).

Plaintiff's Complaint clearly does not satisfy these requirements. The nature of the Complaint is unclear. The Complaint recites a wide variety of federal statutes and case law, but a thorough review of the main Complaint and the numerous attachments does not provide clarity as to what federal claim Plaintiff seeks to pursue in this Court. It is unclear what relationship the individuals identified by Plaintiff as Defendants have to Plaintiff and how he alleges they violated his rights.

Given its lack of clarity, the Complaint is clearly subject to dismissal. "[A] court should not dismiss a complaint filed by a *pro se* litigant without granting leave to amend at least once 'when a liberal reading of the complaint gives any indication that a valid claim might be stated.' " *Bruce v. Tompkins Cty. Dep't of Soc. Servs. ex rel. Kephart*, 2015 WL 151029, at *4 (N.D.N.Y. Jan. 7, 2015) (quoting 🚩 *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991)). Accordingly, the Court recommends that the Complaint be dismissed, but that Plaintiff be afforded an opportunity to amend.

**\*3** The Court advises Plaintiff that should he be permitted to amend his Complaint, any amended pleading she submits must comply with Rules 8 and 10 of the Federal Rules of Civil Procedure. Any such amended complaint, **which shall supersede and replace in its entirety the previous Complaint filed by Plaintiff**, must contain **sequentially numbered paragraphs containing only one act of misconduct per paragraph**. Thus, if Plaintiff claims that his civil and/or constitutional rights were violated by more than one defendant, or on more than one occasion, he should include a corresponding number of paragraphs in his amended complaint for each such allegation, with each paragraph specifying (i) the alleged act of misconduct; (ii) the date, including the year, on which such misconduct occurred; (iii) the names of each and every individual who participated in such misconduct; (iv) where appropriate, the location where the alleged misconduct occurred; and, (v) the

Case 5:23-cv-01266-DNH-ML    Document 7    Filed 03/20/24    Page 23 of 56

Clervrain v. Robbins, Not Reported in Fed. Supp. (2022)

nexus between such misconduct and Plaintiff's civil and/or constitutional rights.

Plaintiff is further cautioned that no portion of his prior Complaint shall be incorporated into his amended complaint by reference. Any amended complaint submitted by Plaintiff must set forth all of the claims he intends to assert against the defendants and must demonstrate that a case or controversy exists between the Plaintiff and the defendants which Plaintiff has a legal right to pursue and over which this Court has jurisdiction. If Plaintiff is alleging that the named defendant violated a law, he should specifically refer to such law.

## II. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Plaintiff's Complaint be **DISMISSED with leave to amend**; and it is

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) [3] days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

## All Citations

Not Reported in Fed. Supp., 2022 WL 17517312

## Footnotes

1    Plaintiff has also moved for leave to file electronically. Dkt. No. 3. Given the recommended disposition of this case, that Motion is denied with leave to renew if Plaintiff files a complaint that survives review under section 1915.

2    To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

3    If you are proceeding *pro se* and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. FED. R. CIV. P. 6(a)(1)(C).

---

**End of Document**                                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2023 WL 3170384
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Manetirony CLERVRAIN, Plaintiff,

v.

Jonathan ROBBINS, Jean-Max Bellerive,
Josue Pierre-Louis, Garry Conille, Jean-Claude
Theogene, Barthelemy Anteno, Kwasi Amoako-
Attah, and Victor (Ito) Bisono Haza, Defendants.

1:22-CV-1248 (MAD/DJS)
|
Signed May 1, 2023

**Attorneys and Law Firms**

MANETIRONY CLERVRAIN, 4326 South Scatterfield
Road, Suite 153, Anderson, Indiana 46013, Plaintiff, Pro Se.

## ORDER

Mae A. D'Agostino, United States District Judge:

**\*1** On November 22, 2022, *pro se* Plaintiff Manetirony
Clervrain ("Plaintiff") filed a complaint against Defendants
consisting of 70 pages of forms and documents, *see* Dkt.
No. 1, "recit[ing] a wide variety of federal statutes and case law,"
Dkt. No. 7 at 5, and around two hundred pages of attachments.
*See* Dkt. Nos. 1-1, 1-5, 1-6. On the same day, Plaintiff moved
for leave to proceed *in forma pauperis* ("IFP"), *see* Dkt. No.
2, and to obtain an ECF login and password. *See* Dkt. No. 3.

On December 8, 2022, Magistrate Judge Daniel J. Stewart
granted Plaintiff's motion to proceed IFP. *See* Dkt.
No. 6. Additionally, Magistrate Judge Stewart issued a
Report-Recommendation and Order recommending that the
complaint be dismissed with leave to amend. *See* Dkt.
No. 7. Plaintiff has not filed an objection to the Report-
Recommendation and Order.

When a party declines to file objections to a magistrate judge's
report-recommendation or files "[g]eneral or conclusory
objections or objections which merely recite the same
arguments [presented] to the magistrate judge," the district
court reviews those recommendations for clear error. *O'Diah
v. Mawhir*, No. 9:08-CV-322, 2011 WL 933846, \*1 (N.D.N.Y.
Mar. 16, 2011) (citations and footnote omitted); *see also*

*McAllan v. Von Essen*, 517 F. Supp. 2d 672, 679 (S.D.N.Y.
2007). After the appropriate review, "the court may accept,
reject, or modify, in whole or in part, the findings or
recommendations made by the magistrate judge." 28
U.S.C. § 636(b)(1).

"[I]n a *pro se* case, the court must view the submissions
by a more lenient standard than that accorded to 'formal
pleadings drafted by lawyers.' " *Govan v. Campbell*, 289
F. Supp. 2d 289, 295 (N.D.N.Y. 2007) (quoting *Haines v.
Kerner*, 404 U.S. 519, 520 (1972)) (other citations omitted).
The Second Circuit has held that the court is obligated to
" 'make reasonable allowances to protect *pro se* litigants' "
from inadvertently forfeiting legal rights merely because they
lack a legal education. *Govan*, 289 F. Supp. 2d at 295
(quoting *Taguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)).

Having reviewed the December 8, 2022 Report-
Recommendation and Order, Plaintiff's complaint and the
applicable law, the Court finds that Magistrate Judge Stewart
correctly determined that the complaint should be dismissed.
The complaint is largely incomprehensible and suffers from
several deficiencies. Rule 8(a) of the Federal Rules of Civil
Procedure provides that a pleading must contain "a short
and plain statement of the claim showing that the pleader is
entitled to relief." Fed. R. Civ. P. 8(a)(2). Plaintiff's complaint
is neither short nor plain. *See* Dkt. No. 1. As currently
drafted, and even with the leniency given to a *pro se* litigant's
pleadings, Plaintiff failed to meet pleading standards such
that the Court is unable to meaningfully analyze whether
Plaintiff can allege any colorable claim against Defendants.
*See Canning v. Hofmann*, No. 1:15-CV-0493, 2015 WL
6690170, \*5 (N.D.N.Y. Nov. 2, 2015) ("[H]aving found
that none of the allegations in Plaintiff's meandering and
indecipherable Complaint raise a cognizable cause of action,
the Court concludes that the Complaint fails to state a claim
upon which relief may be granted and is subject to dismissal")

(citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

**\*2** Finally, the Court agrees with Magistrate Judge Stewart
that Plaintiff should be granted an opportunity to amend out
of deference to Plaintiff's *pro se* status. *See Nielsen
v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (" 'Generally,
leave to amend should be freely given, and a *pro se*
litigant in particular should be afforded every reasonable
opportunity to demonstrate that he has a valid claim' ")

(quotation omitted). Should Plaintiff choose to amend the complaint, the Court urges Plaintiff to review Magistrate Judge Stewart's suggestions in the Report-Recommendation and Order thoroughly. *See* Dkt. No. 7 at 4-6.

Accordingly, the Court hereby

**ORDERS** that the Report-Recommendation and Order (Dkt. No. 7) is **ADOPTED in its entirety**; and the Court further

**ORDERS** that Plaintiff's complaint (Dkt. No. 1) is **DISMISSED with leave to amend**; and the Court further

**ORDERS** that Plaintiff shall file his amended complaint within **thirty (30) days** of the date of this Order; and the Court further

**ORDERS** that, if Plaintiff fails to file an amended complaint within thirty (30) days of the date of this Order, the Clerk of the Court shall enter judgment in Defendants' favor and close this case without further order from this Court; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2023 WL 3170384

---

End of Document                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

1997 WL 599355
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Kenneth BROWN, Plaintiff,

v.

Andrew PETERS, Warden, Watertown Correctional
Facility; Joseph Williams, Warden, Lincoln Work–
Release Center; Francis J. Herman, Senior Parole
Officer Interstate Bureau; T. Stanford, Senior Parole
Officer; Deborah Stewart, Parole Officer; John Doe #
1, Parole Agent, Watertown Correctional Facility; John
Doe # 2, Parole Agent, Lincoln Work Release Center;
Susan Bishop, Director of Interstate Compact, South
Carolina; Cecil Magee, Parole Officer, South Carolina;
Frank Barton, Parole Officer, South Carolina; John
McMahan, Parole Officer, South Carolina, Defendants.

No. Civ.A. 95CV1641RSPDS.
|
Sept. 22, 1997.

**Attorneys and Law Firms**

Kenneth Brown, State Court Institute–Greene, Waynesburg,
PA, plaintiff, pro se.

Dennis C. Vacco, New York State Attorney General, The
Capitol Albany, NY, for defendants Peters, Herman Stewart,
Doe # 1, Doe # 2, and Williams, Jeffrey M. Dvorin, Assistant
Attorney General, Carl N. Lundberg, Chief Legal Counsel,
South Carolina Department of Probation, Columbia, SC, for
defendants Bishop, Magee, Barton, McMahan, and Stanford,
Carl N. Lundberg, of Counsel.

DECISION AND ORDER

POOLER, J.

**\*1** The above matter comes to me following a Report–
Recommendation by Magistrate Judge Daniel Scanlon, Jr.,
duly filed on April 17, 1997. Following ten days from the
service thereof, the Clerk has sent me the entire file, including
any and all objections filed by the parties herein.

Plaintiff Kenneth Brown commenced this Section 1983 civil
rights action on November 17, 1995. On February 12,

1996, Magistrate Judge Scanlon ordered Brown to submit an
amended complaint alleging the specific acts committed by
the individuals named as defendants which Brown claimed
violated his constitutional rights. Brown filed an amended
complaint on March 21, 1996. In his amended complaint,
Brown alleged that defendants violated his rights under the
Eighth and Fourteenth Amendments by failing to process
properly his interstate compact paperwork, resulting in Brown
being imprisoned pursuant to a parole hold when in fact
he had never violated the conditions of his parole. For a
more complete statement of Brown's claims, see his amended
complaint. Dkt. No. 5.

On August 5, 1996, defendants Peters and Williams made
a motion to dismiss for failure to state a claim pursuant to
Fed.R.Civ.P. 12(b)(6). Dkt. No. 13; Dkt. No. 14, at 2. On
August 19, 1996, defendants Bishop, Magee, Barton, and
McMahan made a motion to dismiss the complaint against
them or, in the alternative, for summary judgment. Dkt. No.
20. On October 17, 1996, defendants Herman, Stewart, and
Stanford made a motion to dismiss for failure to state a
claim. Dkt. No 34. On April 17, 1996, Magistrate Judge
Scanlon recommended that all defendants' motions to dismiss
be granted and that the complaint be dismissed. Dkt. No. 50.

On June 9, 1997, Brown filed objections to the
magistrate judge's report-recommendation, having been
granted additional time in which to do so. Dkt. No. 52. In
addition, Brown filed on June 9, 1997, a motion for leave to
file a second amended complaint and a copy of his proposed
amended complaint. Dkt. No. 53. I turn first to the last motion
filed, Brown's motion for leave to amend his complaint a
second time.

Brown seeks to file a second amended complaint "setting
forth in detail the personal involvement of each defendant
and how their acts of commission and omission served to
deprive plaintiff of Constitutionally secured rights." Dkt. No.
53. The district court has discretion whether to grant leave
to amend. Ruffolo v. Oppenheimer & Co., 987 F.2d 129,
131 (2d Cir.1993). In exercising this discretion, the court
should freely grant leave to amend when justice so requires.
Fed.R.Civ.P. 15(a). However, the court need not grant leave
to amend where it appears that amendment would prove to be
unproductive or futile. Ruffolo, 987 F.2d at 131.

Here, Brown moved to amend his complaint to add additional
allegations against the named defendants. However, the

**Brown v. Peters, Not Reported in F.Supp. (1997)**

Case 5:23-cv-01266-DNH-ML    Document 7    Filed 03/20/24    Page 27 of 56

additional allegations fail to cure the deficiency which forms the basis of defendants' motion to dismiss—the absence of defendants' personal involvement in a constitutional deprivation. Section 1983 imposes liability upon an individual only when personal involvement of that individual subjects a person to deprivation of a federal right.

*See* Monell v. Dep't of Soc. Servs., 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). A complaint is fatally defective if it fails to allege personal involvement sufficient to establish that a supervisor was "directly and personally responsible for the purported unlawful conduct." Alfaro Motors, Inc. v. Ward, 814 F.2d 883, 886 (2d Cir.1987).

 *2 Brown's proposed amended complaint alleges in conclusory fashion that defendants acted "in a grossly negligent and concerted manner which breached their duties owed to Plaintiff and is the proximate cause of [the violation of plaintiff's constitutional rights]." Proposed Am. Compl., at 3. Brown continues in the same vein, stating that defendants owed duties to plaintiff to carry out their jobs in a professional manner and they failed to carry out those duties appropriately. The complaint states that defendants held specific responsibilities, such as checking for outstanding warrants, which if performed properly should have alerted them to a problem. However, nowhere does the complaint set forth allegations that these defendants either participated directly in any constitutional infraction or that they were even aware of such an infraction. The proposed amended complaint merely alleges that these defendants failed in performing their supervisory and ministerial functions. "These bare assertions do not state a claim under 42 U.S.C. § 1983." Smiley v. Davis, 1988 WL 78306, *2 (S.D.N.Y.).

This plaintiff previously has had the opportunity to amend his complaint for the same reason asserted here, to allege personal involvement on the part of defendants. Brown's first amended complaint failed to accomplish that task, and it appears that even if allowed to amend again Brown would be unable to make the requisite allegations with sufficient specificity to sustain his complaint. Consequently, I find that amendment would be futile, and I deny Brown's motion for leave to amend his complaint.

I turn now to the magistrate judge's report-recommendation and defendants' motions. The magistrate judge recommends that I grant defendants' motions and dismiss the complaint as to all defendants. The report-recommendation clearly describes the grounds on which the magistrate judge

recommends dismissal as to each defendant. Fed.R.Civ.P. 72(b) requires the district judge to make a *de novo* determination on "any portion of the magistrate's disposition to which specific, written objection has been made." Brown's objections fail to address directly any of the analysis. Brown's objections state (1) that he has been deprived of his constitutional rights; (2) that he has stated a cause of action; (3) that the court wrongly refused to appoint an attorney for him and wrongly stayed discovery pending the outcome of these motions; (4) that he seeks to file an amended complaint; (5) the standard of review for a Fed.R.Civ.P. 12(b)(6) motion; (6) that he disagrees with the magistrate judge's recommendation to grant defendants' motions because the allegations in his complaint, which he repeats, show that his rights were violated; and (7) the text of the Fourteenth and Eighth Amendments.

Even affording the objections the liberal reading required for *pro se* pleadings, I find that these objections fail to state any basis whatsoever, much less a specific one, for the court not to adopt the magistrate judge's rulings. They simply re-state the relief sought and the facts on which Brown grounds his complaint and conclude that the magistrate judge's conclusions are wrong. When the parties make only frivolous, conclusive, or general objections, the court reviews the report-recommendation for clear error. *See* Camardo v. General Motors Hourly–Rate Employees Pension Plan, 806 F.Supp. 380, 382 (W.D.N.Y.1992) (court need not consider objections which are frivolous, conclusive, or general and constitute a rehashing of the same arguments and positions taken in original pleadings); Chambrier v. Leonardo, 1991 WL 44838, *1 (S.D.N.Y.) (restatement of allegations already before the court and assertion that valid constitutional claim exists insufficient to form specific objections); Schoolfield v. Dep't of Correction, 1994 WL 119740, *2 (S.D.N.Y.) (objections stating that magistrate judge's decisions are wrong and unjust, and restating relief sought and facts upon which complaint grounded, are conclusory and do not form specific basis for not adopting report-recommendation); Vargas v. Keane, 1994 WL 693885, *1 (S.D.N.Y.) (general objection that report does not address violation of petitioner's constitutional rights is a general plea that report not be adopted and cannot be treated as objection within the meaning of 28 U.S.C. § 636), aff'd, 86 F.3d 1273 (2d Cir.), cert. denied, 519 U.S. 895, 117 S.Ct. 240, 136 L.Ed.2d 169 (U.S.1996). *See also* Scipio v. Keane, 1997 WL 375601, *1 (1997) (when objections fail to address analysis directly, court reviews report-recommendation for clear error); Fed.R.Civ.P.

Brown v. Peters, Not Reported in F.Supp. (1997)

Case 5:23-cv-01266-DNH-ML    Document 7    Filed 03/20/24    Page 28 of 56

72(b), Advisory Comm. Note (when no specific, written objections filed, "court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation").

**\*3** Because Brown fails to make specific objections or provide any basis for his general objections, I review the report-recommendation for clear error. After careful review, I conclude that the magistrate judge's report-recommendation is well-reasoned and is not clearly erroneous.[1] The magistrate judge employed the proper standard, accurately recited the facts, and reasonably applied the law to those facts. Consequently, I adopt the report-recommendation.

CONCLUSION

Because plaintiff's proposed amendment demonstrates that amendment would be futile, I deny plaintiff's motion for leave to amend his complaint. I approve the magistrate judge's recommendation and grant defendants' motions to dismiss. Plaintiff's complaint is dismissed in its entirety.

IT IS SO ORDERED.

**ORDER and REPORT–RECOMMENDATION**

This matter was referred to the undersigned for report and recommendation by the Hon. Rosemary S. Pooler, United States District Judge, by Standing Order dated November 12, 1986. Currently before this Court are a number of motions. Defendants Peters and Williams have filed a motion to dismiss (dkt.13); defendants Bishop, Magee, Barton and McMahan have filed a motion for summary judgment, or in the alternative to dismiss (dkt.20); and defendants Herman, Stewart and Stanford also have filed a motion to dismiss (dkt.34). Plaintiff opposes these three motions (dkts.27, 29, 33, 38). Defendants Bishop, Magee and McMahan have filed a motion to stay discovery (dkt.41) and plaintiff has filed a motion to extend time (dkt.44) in which to file opposition to the latter motion for a stay of discovery.

The Court addresses these issues *seriatim*.

**BACKGROUND**

Plaintiff's amended complaint, which he has brought pursuant to 42 U.S.C. § 1983, alleges the following facts. In October, 1991, plaintiff was incarcerated in the Watertown Correctional Facility in Watertown, New York. He applied for an interstate compact because he wanted to return to South Carolina to live with his common law wife, Pamela Reid. During the application process, he was interviewed by the facility's parole officer, identified only as defendant John Doe # 1. After signing the necessary papers, his application was forwarded to defendant Andrew Peters, the facility's superintendent, who reviewed, signed and forwarded the papers to the Interstate Bureau. Amend. Compl. at ¶¶ 1–2; Exs. A, B.

On or about January 15, 1992, while his compact was waiting for review at the Interstate Bureau, plaintiff was approved for work release and sent to the Lincoln Work Release Center in New York City. While at the center, plaintiff spoke to a parole officer, defendant John Doe # 2, and told him that he was seeking a compact that would return him to South Carolina upon his conditional release. Plaintiff claims the parole officer told him that he would handle the necessary paperwork, although the officer had had no experience with an interstate compact. Amend. Compl. at ¶¶ 3, 4.

**\*4** Plaintiff, meanwhile, asked Reid whether any officials had contacted her in South Carolina regarding his prospective residence in that state. Upon discovering no one had contacted her, plaintiff asked a lawyer he knew, Navron Ponds, to inquire as to his compact status. In March, 1992, the lawyer spoke with defendant Susan Bishop, who is the director of the interstate compact program in South Carolina. Bishop allegedly told Ponds that plaintiff "was disapproved because there was a discrepancy about approving plaintiff['s] compact." The "discrepancy" was the fact that plaintiff owed the state of South Carolina eighty-six days of confinement from a previous sentence. Plaintiff claims Bishop told Ponds to contact defendants Cecil Magee and Frank Barton, who worked for the South Carolina Parole Department. Sometime in March, 1992, Ponds made some calls to Barton and Magee. A verbal agreement was reached, and plaintiff, upon speaking with Barton and Magee was told that his compact had been approved. He also was told that he should report to the South Carolina Department of Parole upon being released. Amend. Compl. at ¶¶ 5–7.

Prior to leaving the Lincoln Work Release Center, plaintiff processed paperwork related to his interstate compact. His paperwork was sent by Doe # 2 to defendant Joseph Williams,

**Brown v. Peters, Not Reported in F.Supp. (1997)**

Case 5:23-cv-01266-DNH-ML   Document 7   Filed 03/20/24   Page 29 of 56

the superintendent of the center. Williams reviewed, signed and returned the paperwork to plaintiff. On May 1, 1992, upon his release from the center, plaintiff traveled to South Carolina. Three days later, he entered a South Carolina parole office and promptly was arrested because of the eighty-six days of confinement that he owed the state. Plaintiff's paperwork was given to defendant John McMahan, a parole officer. Plaintiff claims that McMahan never returned this paperwork to him. On May 20, 1992, the state of South Carolina revoked plaintiff's parole and plaintiff was returned to prison to serve the eighty-six days that he owed. When he asked McMahan what would happen to his one year of parole from New York, the officer allegedly told him that his New York parole would run concurrently with his South Carolina parole, and that when he finished his South Carolina parole, he would not owe any parole whatsoever. Plaintiff served the eighty-six days he owed and was released on July 31, 1992. Amend. Compl. at ¶¶ 8–10.

In February, 1993, plaintiff was arrested on robbery charges in South Carolina. The charges ultimately were dropped, but he apparently encountered some difficulties regarding this arrest as a result of a parole hold that New York state had placed upon him. Bishop's office told him that it had nothing to do with his parole hold and that any problem that he had was between him and the state of New York. He talked to authorities in Albany, New York regarding the parole hold, but was not successful in his efforts to have the hold removed. On September 30, 1993, after had been extradited to New York as a fugitive from justice, plaintiff was given a preliminary hearing at Riker's Island, New York. The hearing officer found no probable cause that plaintiff had violated any condition of parole. He was released. Amend. Compl. at ¶¶ 11–14; Exs. C–J.

**\*5** Plaintiff claims that he would not have suffered hardships if his interstate compact had been handled correctly. He alleges that defendant Deborah Stewart failed to follow up and see whether plaintiff had arrived in South Carolina. If she had, he argues, she would have discovered that he had been arrested upon his arrival. He alleges that defendant Francis Herman, a parole officer at the Interstate Bureau failed to do his job by not investigating plaintiff's violation reports. Amend. Compl. at ¶¶ 15–17; Exs. F–I.

Plaintiff asserts that the foregoing amounts violations of his Eighth and Fourteenth Amendment rights, wherefore he both compensatory and declaratory relief.

## DISCUSSION

A. Motion to Dismiss by Williams and Peters.

Williams and Peters have filed a motion to dismiss plaintiff's complaint pursuant to FED.R.CIV.P. 12(b)(6) on the grounds that it fails to state a claim upon which relief may be granted. In a Rule 12(b)(6) motion, all factual allegations in the complaint must be taken and construed in plaintiff's favor. *See* LaBounty v. Adler, 933 F.2d 121, 122 (2d Cir.1991) (citing *Ortiz v. Cornette,* 867 F.2d 146, 149 (1989)). The Court's role is not to assess whether plaintiffs have raised questions of fact or demonstrated an entitlement to a judgment as a matter of law, as in a motion made pursuant to FED.R.CIV.P. 56 for summary judgment, but rather to determine whether plaintiff's complaint sufficiently alleges all of the necessary legal elements to state a claim under the law. *See Christopher v. Laidlaw Transit, Inc.* 899 F.Supp. 1224, 1226 (S.D.N.Y.1995), (citing Ricciuti v. New York City Transit Authority, 941 F.2d 119, 124 (2d Cir.1991)). Factual allegations in brief or memoranda may not be considered. Fonte v. Board of Managers of Continental Towers Condominium, 848 F.2d 24, 25 (2d Cir.1988). The Court now turns to the issues presented.

Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983. Wright v. Smith, 21 F.3d 496, 501 (2d Cir.1994). As superintendents at New York State Correctional facilities, Williams and Peter may be found personally involved in the alleged deprivation of plaintiff's constitutionally protected rights by a showing that they: (1) directly participated in the infraction; (2) knew of the infraction, but failed to remedy the wrong; (3) created or continued a policy or custom under which unconstitutional practices occurred; or (4) were grossly negligent in managing subordinates who caused unlawful conditions or events. *Id.,* (quoting Williams v. Smith, 781 F.2d 319, 323–24 (2d Cir.1986)). Supervisory liability also may be imposed against Williams or Peters with a showing of gross negligence or deliberate indifference to plaintiff's constitutional rights. *Id.* Absent some personal involvement by Williams or Peters in the allegedly constitutionally infirm conduct of their subordinates, neither can be held liable under § 1983. Gill v. Mooney, 824 F.2d 192, 196 (2d Cir.1987).

**Brown v. Peters, Not Reported in F.Supp. (1997)**

Case 5:23-cv-01266-DNH-ML    Document 7    Filed 03/20/24    Page 30 of 56

**\*6** Plaintiff has not provided any evidence linking either Williams or Peters to his alleged constitutional deprivations. All that plaintiff has alleged is that Williams and Peters, as superintendents, have reviewed and signed paperwork relating to plaintiff's compact. Though it has long been held that *pro se* complaints are held to "less stringent standards than formal pleadings drafted by lawyers" for the purpose of a motion to dismiss under Rule 12(b)(6), ⚑*Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972), plaintiff has not explained how the ministerial conduct of these two defendants was violative of the Constitution. Their motion to dimiss should be granted.

B. Motion for Summary Judgment or to Dismiss by Bishop, Magee, Barton and McMahan.

Bishop, Magee, Barton and McMahan have filed a motion for summary judgment, or in the alternative a motion to dismiss. The Court will treat their motion as a motion to dismiss. "[C]omplaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning." ⚑*Barr v. Adams,* 810 F.2d 358, 363 (2d Cir.1987). Plaintiff has not alleged specifically how the conduct of these four defendants infringed upon his constitutional rights. In his amended complaint, he contends that defendants violated the Constitution by "continuously breaching [[[their] duty" to him. This language underscores the defect with the complaint: if it alleges anything at all, it alleges that defendants were negligent in handling plaintiff's interstate compact and parole. To state a cognizable ⚑§ 1983 claim, the prisoner must allege actions or omissions sufficient to demonstrate deliberate indifference; mere negligence will not suffice. ⚑*Hayes v. New York City Dept. of Corrections,* 84 F.3d 614, 620 (2d Cir.1996); ⚑*Morales v. New York State Dep't of Corrections,* 842 F.2d 27, 30 (2d Cir.1988) (⚑section 1983 does not encompass a cause of action sounding in negligence).

The Court finds that the claims against Bishop, Magee, Barton and McMahan should be dismissed.

C. Motion to Dismiss by Herman, Stewart and Stanford.
Plaintiff's claim against Stewart is that she failed to follow up and see whether plaintiff had arrived in South Carolina. Herman, he likewise asserts, failed to do his job because he did not investigate plaintiff's violation reports. Plaintiff has not alleged how these actions run afoul of the Constitution; and again, these claims seem to be grounded in negligence, which is not actionable under ⚑§ 1983. ⚑*Hayes,* 84 F.3d at 620.

Plaintiff's claim against Stanford must fail because his complaint literally fails to state a claim against that defendant. Aside from naming Stanford as a defendant, and alleging that he was the appointed Senior Parole Officer at plaintiff's September 30, 1993 revocation hearing at Riker's Island, plaintiff does not detail how Stanford violated his constitutional rights. Absent some personal involvement by Stanford in the allegedly constitutionally infirm conduct of his subordinates, he cannot be held liable under ⚑§ 1983. ⚑*Gill,* 824 F.2d at 196.

**\*7** Accordingly, the Court finds that Stanford, Stewart and Herman's motion to dismiss should be granted.

D. Plaintiff's "John Doe" Claims.
In so far as neither John Doe # 1 nor John Doe # 2 have been identified and served in this matter, the Court does not have jurisdiction over these parties and does not reach the merits of plaintiff's claims against them.

E. Discovery Motions.
Defendants Bishop, Magee and McMahan have filed a motion to stay discovery until the Court has made a ruling on their motion to dismiss. Plaintiff has filed a motion to extend the time in which he may file opposition to defendants' motion. Plaintiff, however, has filed his opposing response (dkt.47), therefore his instant discovery motion is denied as moot. In that the Court recommends granting defendants' motion to dismiss, discovery in this matter would be fruitless. Accordingly, defendants' motion for a stay of discovery pending the resolution of their motion to dismiss is granted.

**CONCLUSION**

WHEREFORE, based upon the foregoing analysis, it is hereby

ORDERED, that plaintiff's motion to extend the time to file an opposing reply (dkt.44) is denied as moot; and it is further

**Brown v. Peters, Not Reported in F.Supp. (1997)**

Case 5:23-cv-01266-DNH-ML    Document 7    Filed 03/20/24    Page 31 of 56

ORDERED, that defendants Bishop, Magee and McMahan's motion to stay discovery until their motion to dismiss is decided (dkt.41) is granted; and it is further

RECOMMENDED, that defendants Peters and Williams' motion to dismiss (dkt.13) be granted; and it is further

RECOMMENDED, that defendants Bishop, Magee, Barton and McMahan's motion to dismiss (dkt.20) be granted; and it is further

RECOMMENDED, that defendants Herman, Stewart and Stanford's motion to dismiss (dkt.34) be granted.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten (10) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. *FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.* *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 6(a), 6(e) and 72.

**All Citations**

Not Reported in F.Supp., 1997 WL 599355

## Footnotes

1    I note, however, that the report-recommendation would survive even *de novo* review.

**End of Document**                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2023 WL 8827885
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Mark A. ROARK, Plaintiff,

v.

The People of the State of NEW YORK;
Watertown Police Dep't; Samaritan Hosp.;
and the Watertown District Attorney's
Office, Kristyna S. Mills, [1] Defendants.

5:23-CV-1237 (DNH/ML)
|
Signed December 21, 2023

**Attorneys and Law Firms**

MARK A. ROARK, Plaintiff, Pro Se, Ulster Correctional
Facility, Post Office Box 800, Berme Road, Napanoch, New
York 12458.

## <u>ORDER and REPORT-RECOMMENDATION</u>

MIROSLAV LOVRIC, United States Magistrate Judge

**\*1** The Clerk has sent a *pro se* complaint in the above
captioned action together with an application to proceed *in
forma pauperis* and inmate authorization filed by Mark A.
Roark ("Plaintiff") to the Court for review. (Dkt. Nos. 1,
2.) For the reasons discussed below, I grant Plaintiff's *in
forma pauperis* application and recommend that Plaintiff's
Complaint be dismissed in its entirety. (Dkt. Nos. 1, 2.)

## I. BACKGROUND

Construed as liberally [2] as possible, Plaintiff's Complaint
appears to allege that his civil rights were violated
by Defendants The People of the State of New York,
Watertown Police Department ("WPD"), Samaritan Hospital,
and the Watertown District Attorney's Office (collectively
"Defendants"). (*See generally* Dkt. No 1.) More specifically,
the Complaint alleges that on an unspecified date, time, and
year, he was walking around an unspecified town where he
was "pulled to the side of the road" by officers employed by
Defendant WPD and asked why he was J-walking. (Dkt. No.
1 at 5, 7.) The Complaint alleges that, despite not being "put
through any test," the officers insisted that Plaintiff was under
the influence of a substance, placed handcuffs on him, and

transported him to the WPD headquarters. (Dkt. No 1 at 5,
7.) The Complaint alleges that while at WPD headquarters,
"6 John Doe's came in and assaulted [Plaintiff] while being
fully [restrained]." (Dkt. No. 1 at 5.)

The Complaint alleges that after Plaintiff was assaulted, he
was taken to Defendant Samaritan Hospital, where he was
admitted for medical care. (Dkt. No. 1 at 5.)

The Complaint alleges that Defendant Watertown District
Attorney's Office "never spoke to [Plaintiff] nor read [him
his] rights" but that he sat in jail for ten days before being
transported by the New York State Police to the Clinton
County Jail for a probation violation. (Dkt. No. 1 at 6.) The
Complaint alleges that no new charges were filed against
Plaintiff, he did not plead guilty, and did not appear before a
judge. (*Id.*)

Notwithstanding these allegations, the Complaint also alleges
that on an unspecified date and at an unspecified time,
Plaintiff was "brought in[ ]front of a [j]udge and ... charged
[with] orderly misconduct." (Dkt. No. 1 at 8.)

Plaintiff alleges that as a result of the incidents alleged in
the Complaint, he has lost his dog, his belongings, and his
freedom. (Dkt. No. 1 at 8.)

Based on these factual allegations, Plaintiff appears to assert
the following nine claims: (1) a claim of false arrest against
Defendant WPD in violation of the Fourth Amendment and
42 U.S.C. § 1983; (2) a claim of excessive force against
Defendant WPD in violation of the Fourth Amendment and
42 U.S.C. § 1983; (3) a claim of failure to protect against
Defendant WPD in violation of the Fourth Amendment and
42 U.S.C. and § 1983; (4) a claim that his right to
equal protection of the law was violated by Defendant WPD
pursuant to Fourteenth Amendment and 42 U.S.C. § 1983;
(5) a claim that Defendant Watertown District Attorney's
Office denied his right of access to the courts pursuant to
First Amendment and 42 U.S.C. § 1983; (6) claim of
false arrest against Defendant Watertown District Attorney's
Office in violation of the Fourth Amendment and 42
U.S.C. § 1983; (7) a claim that Defendant Watertown District
Attorney's Office violated his right to freedom of speech
pursuant to the First Amendment and 42 U.S.C. § 1983;
(8) a claim that Defendant Watertown District Attorney's

Office violated his due process rights pursuant to Fourteenth Amendment and 42 U.S.C. § 1983; and (9) a claim that Defendant Watertown District Attorney's Office violated his right to counsel pursuant to the Sixth Amendment and 42 U.S.C. § 1983. (Dkt. No. 1 at 5-7.) As relief, Plaintiff seeks $5,000,000.00 in damages and would like to "fully charge the officers from [his] assault." (Dkt. No. 1 at 5.)

**\*2**  Plaintiff also filed a motion for leave to proceed *in forma pauperis*. (Dkt. No. 2.)

## II. PLAINTIFF'S APPLICATION TO PROCEED *IN FORMA PAUPERIS*

"28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged." *Cash v. Bernstein*, 09-CV-1922, 2010 WL 5185047, at \*1 (S.D.N.Y. Oct. 26, 2010). [3]  "Although an indigent, incarcerated individual need not prepay the filing fee at the time of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts." *Cash*, 2010 WL 5185047, at \*1 (citing 28 U.S.C. § 1915(b); *Harris v. City of New York*, 607 F.3d 18, 21 (2d Cir. 2010)).

Upon review, the Court finds that Plaintiff has submitted a completed IFP application which has been certified by an appropriate official at his facility (Dkt. No. 2 at 2), and which demonstrates economic need. *See* 28 U.S.C. § 1915(a)(2). Plaintiff has also filed the inmate authorization required in the Northern District. (Dkt. No. 2 at 3.)

Accordingly, Plaintiff's application to proceed with this action IFP is granted. (Dkt. No. 2.)

## III. LEGAL STANDARD FOR REVIEW OF THE COMPLAINT

Having found that Plaintiff met the financial criteria for commencing this action *in forma pauperis*, the Court must consider the sufficiency of the allegations set forth in the Complaint in light of 28 U.S.C. §§ 1915(e). Section 1915(e) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed *in forma pauperis*, "the court shall dismiss the case at any time if the court determines that— ... (B) the action ... (i) is frivolous or malicious; (ii)

fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B); *see also* 28 U.S.C. 1915A(a) ("The court shall review ... as soon as practicable ... a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity."). [4]

Additionally, when reviewing a complaint, a court may also look to the Federal Rules of Civil Procedure. Rule 8 of the Federal Rules of Civil Procedure provides that a pleading which sets forth a claim for relief shall contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2). The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y. 1995) (McAvoy, C.J.) (quoting *Brown v. Califano*, 75 F.R.D. 497, 498 (D.D.C. 1977)).

**\*3**  A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), *rev'd on other grounds*, 682 F. App'x 30. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Rule 8 "demands more than an unadorned the-defendant-unlawfully-harmed-me accusation." *Id.* Thus, a pleading that contains only allegations which "are so vague as to fail to give the defendants adequate notice of the claims against them" is subject to dismissal. *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009).

"[E]xtreme caution should be exercised in ordering sua sponte dismissal of a ... complaint before the adverse

party has been served and [the] parties ... have had an opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983). The Court, however, also has an overarching obligation to determine that a claim is not legally frivolous before permitting a plaintiff's complaint to proceed. *See, e.g., Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (holding that a district court may *sua sponte* dismiss a frivolous complaint, notwithstanding the fact that the plaintiff paid the statutory filing fee). "Legal frivolity ... occurs where 'the claim is based on an indisputably meritless legal theory [such as] when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint." *Aguilar v. United States*, 99-MC-0304, 99-MC-0408, 1999 WL 1067841, at *2 (D. Conn. Nov. 8, 1999) (quoting *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998)); *see also Neitzke v. Williams*, 490 U.S. 319, 325 (1989) ("[D]ismissal is proper only if the legal theory ... or factual contentions lack an arguable basis."); *Pino v. Ryan*, 49 F.3d 51, 53 (2d Cir. 1995) ("[T]he decision that a complaint is based on an indisputably meritless legal theory for purposes of dismissal under section 1915(d), may be based upon a defense that appears on the face of the complaint.").

## IV. ANALYSIS

In addressing the sufficiency of a plaintiff's complaint, the court must construe his pleadings liberally. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). Having reviewed Plaintiff's Complaint with this principle in mind, I recommend that all causes of action be dismissed.

### A. Defendants The People of the State of New York and Watertown District Attorney's Office [5]

To the extent Plaintiff seeks money damages against Defendants The People of the State of New York and Watertown District Attorney's Office, those claims are barred by the Eleventh Amendment. *Drawhorne v. Aloise*, 23-CV-1278, 2023 WL 8188396, at *3 (N.D.N.Y. Nov. 27, 2023) (Dancks, M.J.) (citing *Best v. Brown*, 19-CV-3724, 2019 WL 3067118, at *2 (E.D.N.Y. July 12, 2019) (dismissing the plaintiff's claim against the Office of the Queens County District Attorney as barred by the Eleventh Amendment); *D'Alessandro v. City of New York*, 713 F. App'x 1, 8 (2d Cir. 2017) ("[I]f a district attorney or an assistant district attorney

acts as a prosecutor, she is an agent of the state, and therefore immune from suit in her official capacity."); *Rich v. New York*, 21-CV-3835, 2022 WL 992885, at *5 n.4 (S.D.N.Y. Mar. 31, 2022) ("[A]ny claims Plaintiff may raise against the DA Defendants in their 'official capacity' would be precluded by immunity under the Eleventh Amendment."); *Gentry v. New York*, 21-CV-0319, 2021 WL 3037709, at *6 (N.D.N.Y. June 14, 2021) (Lovric, M.J.) (recommending dismissal of the plaintiff's claims against the defendant assistant district attorneys—which were effectively claims against the State of New York—as barred by the Eleventh Amendment) *adopted by*, 2021 WL 3032691 (N.D.N.Y. July 19, 2021) (Suddaby, C.J.)). Therefore, the undersigned recommends Plaintiff's Section 1983 claims against Defendants The People of the State of New York and Watertown District Attorney's Office be dismissed with prejudice pursuant to 28 U.S.C. §§ 1915(e), 1915A. *Drawhorne*, 2023 WL 8188396, at *3.

### B. Defendant Watertown Police Department

**\*4** "Although a municipality is subject to suit pursuant to section 1983, *see Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978), a municipal police department does not have the capacity to be sued as an entity separate from the municipality in which it is located." *White v. Syracuse Police Dep't*, 18-CV-1471, 2019 WL 981850, at *3 (N.D.N.Y. Jan. 7, 2019) (Peebles, M.J.) (citing *Krug v. Cnty. of Rennselaer*, 559 F. Supp. 2d 223, 247 (N.D.N.Y. 2008) (McAvoy, J.); *Turczyn ex rel. McGregor v. City of Utica*, 13-CV-1357, 2014 WL 6685476, at *2 (N.D.N.Y. Nov. 26, 2014) (Sharpe, J.); *Hoisington v. Cnty. of Sullivan*, 55 F. Supp. 2d 212, 214 (S.D.N.Y. 1999) ("Under New York law, a department of a municipal entity is merely a subdivision of the municipality and has no separate legal existence. Therefore, municipal departments like the Department of Social Services are not amenable to suit and no claims lie directly against the Department.")), *report and recommendation adopted by*, 2019 WL 974824 (N.D.N.Y. Feb. 28, 2019) (Suddaby, C.J.). Thus, Defendant WPD is not a proper party which would be amenable to suit.

To the extent that Plaintiff's claims are liberally construed as against the City of Watertown, I recommend that they be dismissed.

A municipality may only be named as a defendant in certain circumstances. In *Monell v. Dep't of Soc. Servs.*, 436

U.S. 658 (1978), the Supreme Court outlined the limited circumstances under which a municipality may be liable under 🚩 Section 1983. A municipality may not be held liable solely because it employs a tortfeasor. 🚩 *Los Angeles Cnty., Cal. v. Humphries*, 562 U.S. 29, 36 (2010). Only when the municipality, through the execution of its policies, actually deprives an individual of his constitutional rights, is it liable for the injury. 🚩 *Monell*, 436 U.S. at 694.

To establish municipal liability, the policy must actually cause the violation of constitutional rights; it must be the moving force behind the violation. *Id.*; 🚩 *Dominguez v. Beame*, 603 F.2d 337, 341 (2d Cir. 1979). Official policy includes the decisions of a government's lawmakers, the acts of policymaking officials, and practices that are so widespread as to "practically have the force of law." 🚩 *Connick v. Thompson*, 563 U.S. 51, 61 (2011). Municipal liability may also be shown by establishing that a policymaking official ordered or ratified the employees' actions either expressly or tacitly.

Finally, municipal liability can, under limited circumstances, be based upon a failure to properly train the municipality's employees. 🚩 *Connick*, 563 U.S. at 51. However, municipal liability is most tenuous when a claim turns on the failure to train. *Id.* (citing 🚩 *Oklahoma City v. Tuttle*, 471 U.S. 808, 822-23 (1985) (plurality opinion) ("[A] 'policy' of 'inadequate training' " is "far more nebulous, and a good deal further removed from the constitutional violation, than was the policy in Monell")). To satisfy the statute, a municipality's failure to train its employees must amount to " 'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.' " *Id.* (citing 🚩 *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989)).

There is no basis for municipal liability alleged in the Complaint. Plaintiff essentially complains of a single incident, during which an officer or officers employed by the Watertown Police Department did not act properly. There is no indication that Plaintiff can assert a policy or custom which would support municipal liability based on these facts. In addition, none of Plaintiff's allegations reflect a failure to train or "deliberate indifference" to the rights of persons who would come into contact with employees of Defendant WPD.

**\*5** As a result, I recommend that, to the extent Plaintiff's claims against Defendant WPD are construed as against the City of Watertown, they be dismissed at this time. *See Flagg v. NYS Division of Parole*, 19-CV-0886, 2019 WL 5002215, at \*5 (N.D.N.Y. Aug. 15, 2019) (Baxter, M.J.) (citing *DeCarlo v. Fry*, 141 F.3d 56, 61 (2d Cir. 1998)) ("A single incident, particularly if it involved individuals below the policy-making level is insufficient to state a *Monell* claim."), *report and recommendation adopted*, 2019 WL 4963112 (N.D.N.Y. Oct. 8, 2019) (McAvoy, J.).

### C. Defendant Samaritan Hospital

A claim for relief under 🚩 42 U.S.C. § 1983 must allege facts showing that the defendant acted under the color of a state "statute, ordinance, regulation, custom or usage." 🚩 42 U.S.C. § 1983. Thus, to state a claim under 🚩 § 1983, a plaintiff must allege both that: (1) a right secured by the Constitution or laws of the United States was violated, and (2) the right was violated by a person acting under the color of state law, or a "state actor." 🚩 *West v. Atkins*, 487 U.S. 42, 48-49 (1988). Private parties are generally not state actors, and are therefore not usually liable under 🚩 § 1983. 🚩 *Sykes v. Bank of Am.*, 723 F.3d 399, 406 (2d Cir. 2013) (quoting 🚩 *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001)); *see also* 🚩 *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002) ("[T]he United States Constitution regulates only the Government, not private parties.") (internal quotation marks and citation omitted).

"For the purposes of 🚩 section 1983, the actions of a nominally private entity are attributable to the state when: (1) the entity acts pursuant to the 'coercive power' of the state or is 'controlled' by the state ('the compulsion test'); (2) when the state provides 'significant encouragement' to the entity, the entity is a 'willful participant in joint activity with the [s]tate,' or the entity's functions are 'entwined' with state policies ('the joint action test' or 'close nexus test'); or (3) when the entity 'has been delegated a public function by the [s]tate,' ('the public function test')." *Caballero v. Shayna*, 18-CV-1627, 2019 WL 2491717, at \*3 (E.D.N.Y. June 14, 2019) (quoting 🚩 *Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008)). "The fundamental question under each test is whether the

private entity's challenged actions are 'fairly attributable' to the state." *Caballero*, 2019 WL 2491717, at *3 (quoting *Fabrikant v. French*, 691 F.3d 193, 207 (2d Cir. 2012)).

Plaintiff is suing Samaritan Hospital, a private medical institution. [6] The Complaint alleges no facts suggesting that the hospital is under any of the aforementioned exceptions, or describing how Defendant Samaritan Hospital's actions are otherwise "fairly attributable to the state." Because Plaintiff has failed to plausibly allege that Defendant Samaritan Hospital acted under color of state law, the Complaint fails to state any claims for relief under § 1983. *See White v. St. Joseph's Hosp.*, 369 F. App'x 225, 226 (2d Cir. 2010) ("[P]rivate actors and institutions, such as the hospitals ... named as defendants in [plaintiff's] complaint, are generally not proper § 1983 defendants because they do not act under color of state law."). As a result, I recommend that the district court dismiss Plaintiff's claims alleged pursuant to § 1983. *Guillory v. Benedict*, 21-CV-0073, 2021 WL 707076, at *2 (N.D.N.Y. Feb. 4, 2021) (Baxter, M.J.) (recommending dismissal of the plaintiff's § 1983 claims against private medical institution St. Joseph's Hospital), *report and recommendation adopted by,* 2021 WL 706644 (N.D.N.Y. Feb. 23, 2021) (Sharpe, J.); *see Guillory v. Crouse Hosp.*, 21-CV-1177, 2021 WL 5605260, at *2 (N.D.N.Y. Nov. 2, 2021) (Baxter, M.J.) (citing *McGugan v. Aldana-Bernier*, 752 F.3d 224, 229 (2d Cir. 2014); *White v. St. Joseph's Hosp.*, 369 F. App'x 225, 226 (2d Cir. 2010); *Doe v. Rosenberg*, 996 F. Supp. 343, 352 (S.D.N.Y. 1998), *aff'd,* 166 F.3d 507 (2d Cir. 1999)) ("it remains well settled in this Circuit that a private hospital, and its employees, are not deemed state actors solely because the state has granted them authority to practice medicine within its borders."), *report and recommendation adopted by,* 2021 WL 5585926 (N.D.N.Y. Nov. 30, 2021) (Hurd, J.).

## V. OPPORTUNITY TO AMEND

**\*6** Generally, a court should not dismiss claims contained in a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). An opportunity

to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, ... it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.). [7]

Here, I find that leave to replead would be futile with respect to Plaintiff's claims against Defendants The People of the State of New York and Watertown District Attorney's Office. [8]

Although I have serious doubts about whether Plaintiff can replead to assert an actionable claim against Defendants WPD and Samaritan Hospital, given that this is the Court's first review of Plaintiff's pleading, out of an abundance of caution, I recommend that he be permitted to replead the Complaint with respect to those claims.

If Plaintiff chooses to file an amended complaint, he should note that the law in this circuit clearly provides that " 'complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning.' " *Hunt v. Budd*, 895 F. Supp. 35, 38 (N.D.N.Y. 1995) (McAvoy, J.) (quoting *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987)); *accord Pourzancvakil v. Humphry*, 94-CV-1594, 1995 WL 316935, at *7 (N.D.N.Y. May 22, 1995) (Pooler, J.). Therefore, in any amended complaint, Plaintiff must clearly set forth facts that give rise to the claims, including the dates, times, and places of the alleged underlying acts, and each individual who committed each alleged wrongful act. In addition, the revised pleading should allege facts demonstrating the specific involvement of any of the named defendants in the constitutional deprivations alleged in sufficient detail to establish that they were tangibly connected to those deprivations. *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). Finally, Plaintiff is informed that any such amended complaint will replace the existing Complaint,

and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the Court. *See* 🚩 *Shields v. Citytrust Bancorp, Inc.,* 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect.").

**\*7  ACCORDINGLY**, it is

**ORDERED** that Plaintiff's application to proceed *in forma pauperis* (Dkt. No. 2) is **GRANTED**; and it is further

**ORDERED** that the Clerk of the Court (1) provide the Superintendent of the facility that Plaintiff has designated as his current location with a copy of Plaintiff's inmate authorization form (Dkt. No. 2 at 3) and notify that official that Plaintiff has filed this action and is required to pay the Northern District of New York the entire statutory filing fee of $350.00 in installments, over time, pursuant to 🚩 28 U.S.C. § 1915; and (2) provide a copy of Plaintiff's inmate authorization form (Dkt. No. 2 at 3) to the Financial Deputy of the Clerk's office; and it is further

**ORDERED** that the Clerk of the Court add "Watertown District Attorney's Office, Kristyna S. Mills" as a defendant in this action; and it is further respectfully

**RECOMMENDED** that the Court **DISMISS** the Complaint (Dkt. No. 1) **WITH PREJUDICE AND WITHOUT**

**LEAVE TO REPLEAD** to the extent that it asserted claims against Defendants The People of the State of New York and Watertown District Attorney's office, and **WITHOUT PREJUDICE AND WITH LEAVE TO REPLEAD** to the extent that it asserted claims against Defendants WPD and Samaritan Hospital; and it is further

**ORDERED** that the Clerk of the Court shall file a copy of this order, report, and recommendation on the docket of this case and serve a copy upon the parties in accordance with the local rules. [9]

**NOTICE:** Pursuant to 🚩 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. [10] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** 🚩 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 6(a), 6(d), 72; 🚩 *Roldan v. Racette,* 984 F.2d 85 (2d Cir. 1993) (citing 🚩 *Small v. Sec'y of Health and Human Servs.,* 892 F.2d 15 (2d Cir. 1989)).

**All Citations**

Slip Copy, 2023 WL 8827185

---

### Footnotes

1    The Clerk of the Court is directed to add Watertown District Attorney's Office, Kristyna S. Mills to the docket as a defendant in this action. (Dkt. No. 1 at 2.)

2    The court must interpret *pro se* complaints to raise the strongest arguments they suggest. 🚩 *Soto v. Walker,* 44 F.3d 169, 173 (2d Cir. 1995) (quoting 🚩 *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir. 1994)).

3    Section 🚩 § 1915(g) prohibits a prisoner from proceeding *in forma pauperis* where, absent a showing of "imminent danger of serious physical injury," a prisoner has filed three or more actions that were subsequently dismissed as frivolous, malicious, or failing to state a claim upon which relief may be granted. *See* 🚩 28 U.S.C. § 1915(g). The Court has reviewed Plaintiff's litigation history on the Federal Judiciary's Public Access to Court Electronic Records ("PACER") Service. *See* http://pacer.uspci.uscourts.gov. It does not appear from

that review that Plaintiff had accumulated three strikes for purposes of ⚑ 28 U.S.C. § 1915(g) as of the date this action was commenced.

4    To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis in either law or in fact." ⚑ *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

5    The Court presumes that Plaintiff intended to assert claims against the Jefferson County District Attorney's Office. Watertown, New York is located within Jefferson County and the current District Attorney of Jefferson County is Kristyna S. Mills.

6    "Samaritan Medical Center (Watertown, New York) is a 290-bed not-for-profit community medical center, offering a full spectrum of inpatient and outpatient health services." Samaritan Health, https://samaritanhealth.com/ (last visited December 20, 2023).

7    *See also* 🚩 *Carris v. First Student, Inc.*, 132 F. Supp. 3d 321, 340-41 n.1 (N.D.N.Y. 2015) (Suddaby, C.J.) (explaining that the standard set forth in ⚑ *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 796 (2d Cir. 1999)—that the Court should grant leave to amend "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would be successful in stating a claim"—is likely not an accurate recitation of the governing law after ⚑ *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)), *rev'd on other grounds*, 682 F. App'x 30.

8    The undersigned notes that a dismissal based on the doctrine of sovereign immunity, is consequently a dismissal for lack of subject matter jurisdiction. *Crumble v. United States*, 23-CV-4427, 2023 WL 5102907, at *7 (S.D.N.Y. Aug. 7, 2023); *Nguyen v. Kijakazi*, 20-CV-0607, 2022 WL 542265, at *8 (E.D.N.Y. Feb. 23, 2022). Moreover, the Second Circuit has directed that dismissals for lack of subject matter jurisdiction are to be made without prejudice. *Abadi v. City of New York*, 22-CV-1560, 2023 WL 3295949, at *3 n.3 (2d Cir. May 8, 2023) (summary order) (citing ⚑ *Katz v. Donna Karan Co.*, 872 F.3d 114, 116 (2d Cir. 2017) ("[A] complaint must be dismissed without prejudice where the dismissal is due to the court's lack of subject matter jurisdiction.")) ("Because the Court lacks subject matter jurisdiction ... the amended complaint should be dismissed *without* prejudice.") (emphasis in original). Notwithstanding, the undersigned recommends dismissal with prejudice and without leave to amend because any amendment or attempt to bring these claims against Defendants The People of the State of New York and Watertown District Attorney's Office, would be futile. *Drawhorne,* 2023 WL 8188396, at *3 (recommending that the plaintiff's "Section 1983 claims against The People of the State of New York be dismissed with prejudice pursuant to ⚑ 28 U.S.C. §§ 1915(e), 1915A.").

9    The Clerk shall also provide Plaintiff with copies of all unreported decisions cited herein in accordance with ⚑ *Lebron v. Sanders,* 557 F.3d 76 (2d Cir. 2009) (per curiam).

10   If you are proceeding *pro se* and served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date that the report, recommendation, and order was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

---

**End of Document**                                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

2024 WL 125512
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Mark A. ROARK, Plaintiff,

v.

The People of the State of
NEW YORK et al., Defendants.

5:23-CV-1237
|
Signed January 11, 2024

**Attorneys and Law Firms**

MARK A. ROARK, Plaintiff, Pro Se, 23-R-2152, Ulster
Correctional Facility, P.O. Box 800, Berme Road, Napanoch,
NY 12458.

**ORDER ON REPORT & RECOMMENDATION**

DAVID N. HURD, United States District Judge

**\*1** On September 29, 2023, *pro se* plaintiff Mark A.
Roark ("plaintiff"), who is currently incarcerated at Ulster
Correctional Facility, initially filed this civil action in the U.S.
District Court for the Western District of New York. Dkt.
No. 1. Along with his complaint, plaintiff sought leave to
proceed *in forma pauperis* ("IFP Application"). Dkt. No. 2.
But the case was transferred to this judicial district because it
involved events that occurred in Watertown, New York, which
is located in Jefferson County. Dkt. Nos. 3, 4.

On December 21, 2023, U.S. Magistrate Judge Miroslav
Lovric granted plaintiff's IFP Application and advised
by Report & Recommendation ("R&R") that plaintiff's
complaint be dismissed with leave to replead some claims but
not others. Dkt. No. 5. As Judge Lovric explained, plaintiff's
claims for money damages against the State of New York
or the Watertown District Attorney's Office (or one of its
named employee for actions taken in the course of her official
duties) were barred by Eleventh Amendment immunity. *Id.*
So Judge Lovric recommended that those claims be dismissed
for lack of subject matter jurisdiction. *Id.* But Judge Lovric

concluded that plaintiff might be able to plead one or more
actionable claims for relief against defendant Watertown
Police Department and/or defendant Samaritan Hospital. *Id.*

Plaintiff has not filed objections, and the time period in which
to do so has expired. *See* Dkt. No. 5. Upon review for clear
error, the R&R is accepted and will be adopted in all respects.
*See* FED. R. CIV. P. 72(b).

Therefore, it is

ORDERED that

1. The Report & Recommendation (Dkt. No. 5) is
ACCEPTED;

2. Plaintiff's complaint (Dkt. No. 1) is DISMISSED;

3. Plaintiff's claims against defendants The People of the State
of New York and Watertown District Attorney's Office are
DISMISSED without prejudice but <u>without leave to amend</u>
for lack of subject matter jurisdiction;

4. Plaintiff's claims against defendants Watertown Police
Department and Samaritan Hospital are DISMISSED <u>with
leave to amend</u>;

5. Plaintiff shall have THIRTY DAYS in which to submit an
amended complaint in accordance with the instructions set
forth in Judge Lovric's R&R;

6. If plaintiff timely files an amended complaint, this matter
shall be referred to Judge Lovric for further review or other
action as appropriate; and

7. If plaintiff does not timely file an amended complaint, the
Clerk of the Court is directed to close this matter without
further Order of the Court.

IT IS SO ORDERED.

**All Citations**

Slip Copy, 2024 WL 125512

---

2023 WL 5102907
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Michael CRUMBLE, Plaintiff,

v.

UNITED STATES of America; Warden
Sage; Ms. Swaboski (NPC Provider);
Mr. Seffan, Asst. Physician; Ms. Loury,
Paramedic; Mr. Kubic, Counselor, Defendants.

1:23-CV-4427 (LTS)
|
Signed August 7, 2023

**Attorneys and Law Firms**

Michael Crumble, Otisville, NY, Pro Se.

ORDER

LAURA TAYLOR SWAIN, Chief United States District Judge:

**\*1** Plaintiff Michael Crumble, who is currently incarcerated in the Federal Correctional Institution in Otisville, New York ("FCI Otisville"), filed this *pro se* action asserting claims under the Freedom of Information Act; the Federal Tort Claims Act ("FTCA"); 42 U.S.C. §§ 1981, 1983, 1985, and 1986; *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971); and 28 U.S.C. § 2241. He sues: (1) the United States of America; (2) Warden Sage, the Warden of the Federal Correctional Institution (Schuylkill), located in Minersville, Pennsylvania ("FCI Schuylkill"); (3) Ms. Swaboski, an "NPC Provider" at FCI Schuylkill; (4) Mr. Seffan, an Assistant Physician at FCI Schuylkill; (5) Ms. Loury, a paramedic at FCI Schuylkill; and (6) and Mr. Kubi, a counselor at FCI Schuylkill. He seeks damages and declaratory relief. Plaintiff may also be seeking injunctive relief, specifically, "adequate medical attention" or his release to home confinement for the purpose of receiving adequate medical treatment at his own expense. (ECF 1, at 9.)

The Court construes Plaintiff's complaint as asserting: (1) claims for damages under FTCA against the United States of America arising from events alleged to have occurred at both FCI Schuylkill and at FCI Otisville; (2) claims for

damages under *Bivens* against Defendants Sage, Swaboski, Seffan, Loury, and Kubic (who are all allegedly located at FCI Schuylkill), and against individual members of the staff at FCI Otisville; and (3) claims for *habeas corpus* relief under 28 U.S.C. § 2241 with respect to the execution of Plaintiff's federal sentence in which Plaintiff seeks adequate medical treatment while he is incarcerated at FCI Otisville or his release to home confinement for the purpose of seeking adequate medical treatment at his own expense.

By order dated July 21, 2023, the Court granted Plaintiff's request to proceed *in forma pauperis* ("IFP"), that is, without prepayment of fees. [1] For the reasons stated below, the Court: (1) severs from this action Plaintiff's claims brought under the FTCA against the United States of America arising from events alleged to have occurred at FCI Schuylkill, and transfers them to the United States District Court for the Middle District of Pennsylvania; (2) severs from this action Plaintiff's claims under *Bivens* against Defendants Sage, Swaboski, Seffan, Loury, and Kubic, and transfers them to the United District Court for the Middle District of Pennsylvania; (3) grants Plaintiff leave to amend his complaint as to his claims brought under the FTCA against the United States of America arising from events alleged to have occurred at FCI Otisville; (4) grants Plaintiff leave to amend his complaint as to his possible claims under *Bivens* against members of the FCI Otisville staff; and (5) grants Plaintiff leave to amend his complaint as to his claims for *habeas corpus* relief under Section 2241.

**STANDARD OF REVIEW**

**\*2** The Prison Litigation Reform Act requires that federal courts screen complaints brought by prisoners who seek relief against a governmental entity or an officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). The Court must dismiss a prisoner's IFP complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b); *see Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007). The Court must also dismiss a complaint if the court lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3).

In addition, the Court may entertain a petition for a writ of *habeas corpus* from a person in custody challenging the legality of his detention on the ground that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The Court has the authority to review the petition and "award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled [to such relief]." 28 U.S.C. § 2243.

The Court is obliged to construe *pro se* pleadings liberally and interpret them "to raise the strongest arguments they *suggest.*" *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted, emphasis in original); *see Williams v. Kullman,* 722 F.2d 1048, 1050 (2d Cir. 1983). Nevertheless, a *pro se* litigant is not exempt " 'from compliance with relevant rules of procedural and substantive law.' " *Triestman,* 470 F.3d at 477 (quoting *Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir. 1983)).

## BACKGROUND

Plaintiff's claims largely arise from his allegations that officials at FCI Schuylkill, including the individual defendants, did not provide him with adequate medical care while he was incarcerated there, however, denied his requests for such care. Some of Plaintiff's claims, however, appear to arise from his allegations that officials at FCI Otisville have not provided him with adequate medical care while he has been incarcerated at that facility, and have denied his requests for such care.

## DISCUSSION

### A. Severance and Transfer of Claims

Plaintiff asserts claims under the FTCA against the United States of America, and claims under *Bivens* against Defendants Sage, Swaboski, Seffan, Loury, and Kubic, arising from events alleged to have taken place at FCI Schuylkill. For the reasons set forth below, the Court severs those claims from this action, and transfers them to the United States District Court for the Middle District of Pennsylvania.

### 1. Claims under the FTCA against the United States of America arising from events alleged to have occurred at FCI Schuylkill

The relevant venue provision for claims brought under the FTCA against the United States of America provides that: "[a]ny civil action on a tort claim against the United States ... may be prosecuted only in the judicial district where the plaintiff resides or wherein the act or omission complained of occurred." 28 U.S.C. § 1402(b).

Plaintiff alleges no facts showing where he resides. He does allege, however, that most of the events alleged occurred at FCI Schuylkill, which is located in the Middle District of Pennsylvania. *See* https://www.bop.gov/locations/institutions/sch/ (Federal Bureau of Prisons's website for FCI Schuylkill). Thus, for the purpose of Plaintiff's claims under FTCA against the United States of America arising from events alleged to have occurred at FCI Schuylkill, while it is not clear that this court is a proper venue for such claims, it is clear that the United States District Court for the Middle District of Pennsylvania is a proper venue for such claims. *See* § 1402(b).

### 2. Claims under *Bivens* against Defendants Sage, Swaboski, Seffan, Loury, and Kubic

**\*3** Claims under *Bivens* may generally be brought in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b). For venue purposes, a "natural person" resides in the judicial district where the person is domiciled, and an "entity with the capacity to sue and be sued," if a defendant, resides in any judicial district where it is subject to personal jurisdiction with respect to the civil action in question. § 1391(c)(1), (2).

Plaintiff does not specify where any of the individual defendants resides. He does allege, however, that the individual defendants are all assigned to FCI Schuylkill, and that the alleged events giving rise to his claims against the individual defendants occurred at that facility, which is located the Middle District of Pennsylvania. Thus, while it is not clear that this court is a proper venue, under Section 1391(b)(1), for his claims under *Bivens* against those defendants, it is clear that the United States District Court for the Middle District of Pennsylvania is a proper venue, under Section 1391(b)(2).

**3. Severance and transfer**

Rules 18 and 20 of the Federal Rules of Civil Procedure govern joinder of claims and parties, respectively. Rule 18(a) permits a plaintiff to join as many claims as he has against a particular defendant. *See* Fed. R. Civ. P. 18(a). By contrast, under Rule 20, a plaintiff may not pursue unrelated claims against multiple defendants. *See* Fed. R. Civ. P. 20(a) (2); *Deskovic v. City of Peekskill,* 673 F. Supp. 2d 154, 167 (S.D.N.Y. 2009) (holding that "the mere allegation that Plaintiff was injured by all Defendants is not sufficient [by itself] to join unrelated parties as defendants in the same lawsuit pursuant to Rule 20(a)") (internal quotation marks and citation omitted, alteration in original). Rule 21 of the Federal Rules of Civil Procedure provides that "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." Fed. R. Civ. P. 21.

Plaintiff's claims under the FTCA against the United States of America arising from events alleged to have occurred at FCI Schuylkill, in the Middle District of Pennsylvania, and his claims under *Bivens* against Defendants Sage, Swaboski, Seffan, Loury, and Kubic, which are also based on events alleged to have taken place at that facility, are not related to his claims that arise from events alleged to have occurred at FCI Otisville, which is located within this judicial district. Accordingly, under Rule 21, the Court severs from this action

Plaintiff's claims under the FTCA against the United States of America arising from events alleged to have occurred at FCI Schuylkill, and his claims under *Bivens* against Defendants Sage, Swaboski, Seffan, Loury, and Kubic.

**\*4** Under 28 U.S.C. § 1404(a), even if an action is filed in a federal district court where venue is proper, a court may transfer the action to any other federal district court where it might have been brought "[f]or the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). In determining whether transfer is appropriate, courts consider the following ten factors: (1) the convenience of witnesses; (2) the convenience of the parties; (3) the locus of operative facts; (4) the availability of process to compel the attendance of the unwilling witnesses; (5) the location of relevant documents and the relative ease of access to sources of proof; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded to the plaintiff's choice of forum; (9) trial efficiency; and (10) the interest of justice, based on the totality of circumstances.

*Keitt v. N.Y. City,* 882 F. Supp. 2d 412, 458-59 (S.D.N.Y. 2011); *see also N.Y. Marine & Gen. Ins. Co. v. LaFarge N. Am., Inc.,* 599 F.3d 102, 112 (2d Cir. 2010) (setting forth similar factors).

Transfer of the severed claims to the United States District Court for the Middle District of Pennsylvania appears to be appropriate. The events alleged with respect to the severed claims occurred at FCI Schuylkill, in the Middle District of Pennsylvania; it is therefore reasonable to expect that relevant documents and witnesses would also be located there. Thus, the United States District Court for the Middle District of Pennsylvania appears to be a more convenient forum for the severed claims. Accordingly, this Court transfers the severed claims to that court. *See* 28 U.S.C. § 1404(a); *D.H. Blair & Co. v. Gottdiener,* 462 F.3d 95, 106 (2d Cir. 2006) ("District courts have broad discretion in making determinations of convenience under Section 1404(a) and notions of convenience and fairness are considered on a case-by-case basis.").

**B. Claims under the FTCA against the United States of America arising from events alleged to have occurred at FCI Otisville**

The doctrine of sovereign immunity bars federal courts from hearing all suits against the federal government, except where sovereign immunity has been waived. *United States v.*

*Mitchell*, 445 U.S. 535, 538 (1980) (quoting *United States v. Sherwood*, 312 U.S. 584, 586 (1941)); *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 510 (2d Cir. 1994) ("Under the doctrine of sovereign immunity, an action for damages will not lie against the United States absent consent."). The FTCA provides for a waiver of sovereign immunity for certain claims for damages arising from the tortious conduct of federal officers or employees acting within the scope of their office or employment. *See* 28 U.S.C. §§ 1346(b)(1), 2680.

A plaintiff must comply with the FTCA's procedural requirements before a federal court can entertain his claim. *See* *Johnson v. Smithsonian Inst.*, 189 F.3d 180, 189 (2d Cir. 1999), *abrogated on other grounds*, *United States v. Kwai Fun Wong*, 575 U.S. 402 (2015). Before bringing a damages claim in a federal district court under the FTCA, a claimant must first exhaust his administrative remedies by filing a claim for damages with the appropriate federal government entity and must receive a final written determination. *See* 28 U.S.C. § 2675(a). Such an administrative claim must be in writing, specify the amount of damages sought, and be filed within two years of the claim's accrual. 28 U.S.C. §§ 2401(b), 2675(a). A claimant may thereafter challenge the Government's final denial in a federal district court by filing an action within six months after the date of the mailing of the notice of final denial by the federal entity. *See* § 2401(b). If no written final determination is made by the appropriate federal entity within six months of the date of the claimant's filing of the administrative claim, the claimant may then bring an FTCA action in a federal district court. *See* § 2675(a). While this exhaustion requirement is jurisdictional and cannot be waived, *see* *Celestine v. Mount Vernon Neighborhood Health Ctr.*, 403 F.3d 76, 82 (2d Cir. 2005), "the FTCA's time bars are nonjurisdictional and subject to equitable tolling," *Kwai Fun Wong,* 575 U.S. at 420.

**\*5** To the extent that Plaintiff asserts claims under FTCA against the United States of America arising from events alleged to have occurred in FCI Otisville, it is unclear whether Plaintiff has exhausted the administrative remedies to bring to such claims. Plaintiff alleges that he "filed a tort claim concerning the pain and injury he suffered mentally, physically[,] [and] emotionally." (ECF 1, at 7.) He also alleges that he "has exhausted his administrative remedies with respect to all claims." (*Id.*) Plaintiff does not, however, indicate the agency with which he filed his administrative claim, when he filed his administrative claim, whether that administrative claim concerned events that allegedly occurred at FCI Otisville (as opposed to events that allegedly occurred at FCI Schuylkill), whether the federal government responded to his administrative claim and, if it did, when. Because Plaintiff does not provide this information, it is not clear that he has exhausted the administrative remedies as to his claims under the FTCA against the United States of America arising from events alleged to have occurred at FCI Otisville. In light of Plaintiff's *pro se* status, the Court grants Plaintiff leave to file an amended complaint in which he alleges facts showing that he has exhausted administrative remedies as to those claims.

## C. Claims under *Bivens* arising from events alleged to have occurred at FCI Otisville

The Court understands Plaintiff's complaint as possibly asserting claims under *Bivens* against individuals who are officials assigned to FCI Otisville, arising from events alleged to have occurred at that facility. *See* *Higazy v. Templeton*, 505 F.3d 161, 169 (2d Cir. 2007) ("A *Bivens* action is a judicially-created remedy designed to provide individuals with a cause of action against federal officials who have violated their constitutional rights.... The only remedy available in a *Bivens* action is an award for monetary damages from defendants in their individual capacities."). A plaintiff asserting claims under *Bivens* must name individual federal officials as defendants and allege facts showing those federal officials' direct and personal involvement in the alleged constitutional violations. *See* *Reynolds v. United States*, No. 21-CV-4763, 2021 WL 3501201, at *2 (S.D.N.Y. Aug. 9, 2021) (quoting *Tangreti v. Bachman*, 983 F.3d 609, 620 (2d Cir. 2020)).

Plaintiff does not name as defendants any individual defendants alleged to be assigned to FCI Otisville who violated his federal constitutional rights while he has been incarcerated in that facility. Because it appears that Plaintiff may be attempting to assert such claims, and in light of his *pro se* status, however, the Court grants Plaintiff leave to file an amended complaint in which he names as defendants individual members of the staff of FCI Otisville who have violated his federal constitutional rights while he has been incarcerated at that facility, and in which he alleges facts showing those individual defendants' direct and personal involvement in such federal constitutional violations.

**D. *Habeas corpus* relief under 🚩 28 U.S.C. § 2241**

The Court understands Plaintiff's request for adequate medical treatment while he is incarcerated at FCI Otisville, or for his release to home confinement (for the purpose of his receiving adequate medical treatment at his own expense), as claims for *habeas corpus* relief under 🚩 28 U.S.C. § 2241. Claims "challenging the medical treatment afforded during [a federal prisoner's] confinement are properly brought as 🚩 Section 2241 habeas petitions." *Allen v. Lindsay*, No. 09-CV-1283, 2010 WL 5067907, at *2 (E.D.N.Y. Dec. 7, 2010); *see also* 📙 *Carmona v. BOP*, 243 F.3d 629, 632 (2d Cir. 2001) ("A writ of habeas corpus under § 2241 is available to a federal prisoner who does not challenge the legality of his sentence, but challenges instead its execution subsequent to his conviction."); 📙 *Sullivan v. United States,* No. 02-CV-4947, 2002 WL 32096584, at *1 (E.D.N.Y. Dec. 6, 2002) ("Petitioner's request for review of [the Federal Bureau of Prisons's] decisions regarding medical treatment challenges the execution of his sentence. Accordingly, it should have been brought as a petition for habeas corpus pursuant to 🚩 § 2241, and the Court hereby construes Petitioner's initial motion as such.").

**1. Proper respondent for claims seeking *habeas corpus* relief brought under 🚩 Section 2241**

**\*6**  To the extent that Plaintiff seeks *habeas corpus* relief under 🚩 Section 2241 as to the execution of his federal sentence while he is incarcerated at FCI Otisville, he has not named the correct party as a respondent. For claims for such relief, "[t]he proper respondent ... is 'the person who has custody over [the petitioner].' " 📙 *Rumsfeld v. Padilla*, 542 U.S. 426, 434 (2004) (quoting 28 U.S.C. § 2242) (alteration in original). "[L]ongstanding practice confirms that in habeas challenges to present physical confinement – 'core challenges' – the default rule is that the proper respondent is the warden of the facility where the prisoner is being held ...." 📙 *Id.* at 435. The Court therefore grants Plaintiff leave to amend his complaint to name the proper respondent for his claims for *habeas corpus* relief under 🚩 Section 2241 as to the execution of his federal sentence while he is incarcerated at FCI Otisville – the warden of that facility.

**2. Exhaustion of administrative remedies as to *habeas corpus* relief arising from Plaintiff's incarceration at FCI Otisville**

The United States Court of Appeals for the Second Circuit has made clear that a federal prisoner asserting claims for *habeas corpus* relief under 🚩 Section 2241 challenging the execution of his sentence must exhaust the available administrative remedies before filing his pleading. 📙 *Carmona,* 243 F.3d at 634. Failure to exhaust is a procedural default that will be excused upon a showing of cause and prejudice. *See* 📙 *id.* at 630, 633-34. A court may also excuse a litigant's failure to exhaust when: "(1) available remedies provide no genuine opportunity for adequate relief; (2) irreparable injury may occur without immediate judicial relief; (3) [an] administrative appeal would be futile; and (4) in certain instances a plaintiff has raised a substantial constitutional question." 📙 *Beharry v. Ashcroft*, 329 F.3d 51, 62 (2d Cir. 2003) (internal quotation marks and citation omitted).

As stated above, Plaintiff alleges that he "filed a tort claim concerning the pain and injury he suffered mentally, physically[,] [and] emotionally." (ECF 1, at 7.) He also alleges that he "has exhausted his administrative remedies with respect to all claims." (*Id.*) It is not clear, however, that he has exhausted the Federal Bureau of Prisons's available administrative remedies with regard to the medical treatment he receives (or does not receive) at FCI Otisville and (if he does receive any at that facility) with regard to whether it is adequate. He also does not allege any reason why the Court should excuse the requirement to exhaust such administrative remedies. In light of Plaintiff's *pro se* status, the Court grants Plaintiff leave to amend his complaint to allege facts showing either that he has exhausted his administrative remedies as to the execution of his sentence while he has been incarcerated in FCI Otisville or that such exhaustion should be excused.

**CONCLUSION**

The Court severs from this action, under Rule 21 of the Federal Rules of Civil Procedure, Plaintiff's claims against the United States of America arising from events alleged to have occurred at FCI Schuylkill, and Plaintiff's claims under *Bivens* against Defendants Sage, Swaboski, Seffan, Loury, and Kubic, and transfers those claims, under 28 U.S.C. §

1404(a), to the United States District Court for the Middle District of Pennsylvania.

The Court also grants Plaintiff 60 days' leave to file an amended complaint as to the claims remaining in this action. The Court grants Plaintiff leave to file an amended complaint in which he: (1) alleges facts showing that he has exhausted administrative remedies as to his claims under the FTCA against the United States of America arising from events alleged to have occurred at FCI Otisville; (2) names as defendants individual members of the staff of FCI Otisville who have violated his federal constitutional rights while he has been incarcerated at that facility, and alleges facts showing those individual defendants' direct and personal involvement in such federal constitutional violations; (3) names the proper respondent for his claims for *habeas corpus* relief under Section 2241 as to the execution of his federal sentence while he has been incarcerated at FCI Otisville – the warden of that facility; and (4) alleges facts showing either that he has exhausted his administrative remedies as to the execution of his sentence while he has been incarcerated in FCI Otisville or that such exhaustion should be excused. An amended complaint form is attached to this order.

**\*7** If Plaintiff does not file an amended complaint within the time allowed, or fails to show cause to excuse such failure, the Court will direct the Clerk of Court to enter judgment dismissing this action. Such judgment will: (1) dismiss Plaintiff's claims against the United States of America arising from events alleged to have occurred at FCI Otisville under the doctrine of sovereign immunity and, consequently, for lack of subject matter jurisdiction and for seeking monetary relief from a defendant that is immune from such relief, *see* Fed. R. Civ. 12(h)(3); 28 U.S.C. § 1915(e)(2)(B) (iii); (2) dismiss Plaintiff's claims under *Bivens* arising from events alleged to have occurred at FCI Otisville without prejudice; and (3) dismiss Plaintiff's claims for *habeas corpus* relief under Section 2241 as to the execution of Plaintiff's sentence at FCI Otisville without prejudice.

Because Plaintiff's claims for *habeas corpus* relief do not make substantial showing of a denial of a constitutional right, a certificate of appealability will not issue. *See* 28 U.S.C. § 2253.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

**All Citations**

Slip Copy, 2023 WL 5102907

## Footnotes

1    Prisoners are not exempt from paying the full filing fee, even when they have been granted permission to proceed IFP. *See* 28 U.S.C. § 1915(b)(1).

---

**End of Document**                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.

Nguyen v. Kijakazi, Not Reported in Fed. Supp. (2022)

Case 5:23-cv-01266-DNH-ML   Document 7   Filed 03/20/24   Page 46 of 56

2022 WL 542265
Only the Westlaw citation is currently available.
United States District Court, E.D. New York.

Thomas Einstein NGUYEN, Plaintiff,

v.

Kilolo KIJAKAZI, in her official capacity, and

Social Security Administration, [1] Defendants.

20-CV-607 (MKB)
|
Signed 02/23/2022

**Attorneys and Law Firms**

Thomas Einstein Nguyen, Brooklyn, NY, Pro Se.

Dennis Canning, SSA-Ogc, Baltimore, MD, Social Security Administration, for Defendant Andrew Saul.

Dennis Canning, SSA-Ogc, Baltimore, MD, for Defendant Social Security Administration.

**MEMORANDUM & ORDER**

MARGO K. BRODIE, United States District Judge:

**\*1**  Plaintiff Thomas Einstein Nguyen, proceeding *pro se*, commenced the above-captioned action on January 23, 2020, in the Southern District of New York against Defendants Andrew Saul, in his then-official capacity as Commissioner of the Social Security Administration, and the Social Security Administration. (Compl., Docket Entry No. 2.) On January 28, 2020, the action was transferred to this Court. (Transfer Order, Docket Entry No. 3.) Plaintiff alleges that Defendants "wrongfully denied [his disability] benefits" in a biased decision and then "committed fraud on [his] ... appeal in order to avoid paying for [his] benefits." (Compl. ¶ 4.) Plaintiff brings this action "pursuant to the Social Security Act as amended and [the] applicable federal[ ]/state[ ] statute(s) such as discrimination (bullying), fraud, deception, etc." (*Id.* ¶ 3.)

The Court liberally construes the Complaint as seeking review of a final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Plaintiff's claim for Social Security disability insurance benefits under the Social Security Act (the "SSA"), pursuant to 42 U.S.C. § 405(g), and asserting tort claims against the Commissioner and the Social Security Administration pursuant to the Federal Tort Claims Act. (*See id.*)

The Commissioner moves to dismiss the Complaint for lack of subject matter jurisdiction and failure to state a claim pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, respectively. (Comm'r's Mot. to Dismiss ("Comm'r's Mot."), Docket Entry No. 11; Comm'r's Mem. in Supp. of Comm'r's Mot. ("Comm'r's Mem."), annexed to Comm'r's Mot. as Ex. 1, Docket Entry No. 11-1.) Plaintiff has not opposed the motion, and the time for doing so has passed. For the reasons set forth below, the Court grants the Commissioner's motion.

**I. Background**

On May 8, 2018, administrative law Judge Mark Solomon (the "ALJ") denied Plaintiff's claim for disability insurance benefits under Title II of the SSA. (Decl. of Dexter Potts ("Potts Decl.") ¶ 3(a), annexed to Comm'r's Mot. as Ex. 1, Docket Entry No. 11-2; ALJ's Decision, annexed to Potts Decl. as Ex. 2, at 8, Docket Entry No. 11-2.) [2] Plaintiff requested review by the Social Security Administration Appeals Council, and, on April 25, 2019, the Appeals Council sent Plaintiff and his then-counsel a denial of his request for review of the ALJ's determination, rendering the ALJ's decision final (the "Notice of Denial"). (Notice of Denial, annexed to Potts Decl. as Ex. 2, at 18–21, Docket Entry No. 11-2.) The Notice of Denial indicated that Plaintiff had sixty days to file a civil action and that the sixty days began the day after he received the Notice of Denial. (*Id.* at 20.) It further indicated that Plaintiff would be presumed to have received the Notice of Denial five days after the date on the Notice of Denial unless he showed that he did not receive it within the five-day period and that, if he could not file for court review within sixty days, he could request an extension of time to file a civil action. (*Id.*) Plaintiff did not request an extension, (*see* Potts Decl. ¶ 3(c)), and commenced this action on January 23, 2020, (Compl.).

**\*2**  Plaintiff alleges that Defendants "wrongfully denied [his disability] benefits" in a biased decision and then "committed fraud on [his] ... appeal in order to avoid paying for [his] benefits." (Compl. ¶ 4.) Plaintiff seeks the benefits that he alleges he was wrongfully denied, plus interest, which he calculates to be $423,921.51, and punitive damages of $42,392,151,000.00 contingent on Defendants settling this suit and $1,140,000,000,000,000.01 if Defendants do not settle. (*Id.* ¶ 5.)

Case 5:23-cv-01266-DNH-ML    Document 7    Filed 03/20/24    Page 47 of 56

Nguyen v. Kijakazi, Not Reported in Fed. Supp. (2022)

## II. Discussion

### a. Standards of review

#### i. 12(b)(1)

A district court may dismiss an action for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure when the court "lacks the statutory or constitutional power to adjudicate it." *Huntress v. United States*, 810 F. App'x 74, 75 (2d Cir. 2020) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)); *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.À.R.L.*, 790 F.3d 411, 416–17 (2d Cir. 2015) (quoting *Makarova*, 201 F.3d at 113); *Shabaj v. Holder*, 718 F.3d 48, 50 (2d Cir. 2013) (per curiam) (quoting *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005)). " '[C]ourt[s] must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of [the] plaintiff,' but 'jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it.' " *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (citation omitted) (first quoting *Nat. Res. Def. Council v. Johnson*, 461 F.3d 164, 171 (2d Cir. 2006); and then quoting *APWU v. Potter*, 343 F.3d 619, 623 (2d Cir. 2003)), *aff'd*, 561 U.S. 247, 130 S.Ct. 2869, 177 L.Ed.2d 535 (2010). Ultimately, "the party asserting subject matter jurisdiction 'has the burden of proving by a preponderance of the evidence that it exists.' " *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014) (quoting *Makarova*, 201 F.3d at 113); *see also Suarez v. Mosaic Sales Sols. US Operating Co.*, 720 F. App'x 52, 53 (2d Cir. 2018) (citing *Morrison*, 547 F.3d at 170); *Clayton v. United States*, No. 18-CV-5867, 2020 WL 1545542, at *3 (E.D.N.Y. Mar. 31, 2020) (quoting *Tandon*, 752 F.3d at 243); *Fed. Deposit Ins. Corp. v. Bank of N.Y. Mellon*, 369 F. Supp. 3d 547, 552 (S.D.N.Y. 2019) (quoting *Tandon*, 752 F.3d at 243).

#### ii. 12(b)(6)

In reviewing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must construe the complaint liberally, "accepting all factual allegations therein as true and drawing all reasonable inferences in the plaintiffs' favor." *Sacerdote v. N.Y. Univ.,* 9 F.4th 95, 106–07 (2d Cir. 2021); *Vaughn v. Phoenix House N.Y. Inc.*, 957 F.3d 141, 145 (2d Cir. 2020) (same). A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); *Bacon v. Phelps*, 961 F.3d 533, 540 (2d Cir. 2020) (quoting *Chambers v. Time Warner Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)); *Cavello Bay Reinsurance Ltd. v. Shubin Stein*, 986 F.3d 161, 165 (2d Cir. 2021) (quoting *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937). Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937; *Vaughn*, 957 F.3d at 145 (same).

**\*3** In reviewing a *pro se* complaint, a court must be mindful that a plaintiff's pleadings must be held "to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251, (1976)); *see also Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (noting that even after *Twombly*, courts "remain obligated to construe a *pro se* complaint liberally").

### b. Plaintiff's claim that his social security benefits were wrongfully denied is untimely and not subject to equitable tolling

#### i. Plaintiff's claim is untimely

The Commissioner argues that the Court should dismiss Plaintiff's claim that his benefits were wrongfully denied because Plaintiff did not timely commence this action and there is no basis to toll the sixty-day limitations period. (*See* Comm'r's Mem. 3–7.)

Claimants seeking federal district court review of a final decision by the Commissioner must file a civil action within sixty days of receiving notice of such a decision. 42 U.S.C. § 405(g). This requirement "is not jurisdictional, but rather constitutes a period of limitations," which "is a condition on the waiver of sovereign immunity" that "must be strictly construed." *Cole-Hill ex rel. T.W. v. Colvin*, 110 F. Supp. 3d 480, 483–84 (W.D.N.Y. 2015) (quoting *Bowen v. City of New York*, 476 U.S. 467, 478–79, 106 S.Ct. 2022, 90 L.Ed.2d 462 (1986)). The notice of the Commissioner's final decision is presumed to have been received within five days of its mailing unless a plaintiff can show otherwise. 20 C.F.R. §§ 416.1401, 422.210(c); *see also Matsibekker v. Heckler*, 738 F.2d 79, 82 (2d Cir. 1984) (same); *Kesoglides v. Comm'r of Soc. Sec.*, No. 13-CV-4724, 2015 WL 1439862, at *3 (E.D.N.Y. Mar. 27, 2015) (citing *Matsibekker*, 738 F.2d at 81) (same).

Because the Notice of Denial is dated April 25, 2019, Plaintiff is presumed to have received the Notice of Denial within five days of its mailing, on or before April 30, 2019. *See* 20 C.F.R. §§ 404.901, 416.1401 ("[The] [d]ate you receive notices means [five] days after the date on the notice, unless you show us you did not receive it within the [five]-day period."). Under the applicable sixty-day statute of limitations, Plaintiff was required to commence this action on or before June 29, 2019, in order for this action to be timely. *See* 42 U.S.C. § 405(g). Because Plaintiff commenced this action on January 23, 2020 — 208 days after the deadline — Plaintiff's claim that his social security benefits were wrongfully denied is untimely. (*See* Compl.)

#### c. Plaintiff has not presented a basis to toll the sixty-day limitations period

In light of Plaintiff's *pro se* status, the Court considers whether the sixty-day deadline should be tolled under the doctrine of equitable tolling despite Plaintiff's failure to raise the issue or oppose the Commissioner's motion.

"[T]he doctrine of equitable tolling permits courts to deem filings timely where a litigant can show that 'he has been pursuing his rights diligently' and that 'some extraordinary circumstance stood in his way.' " *Torres v. Barnhart*, 417 F.3d 276, 279 (2d Cir. 2005) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418, 125 S.Ct. 1807, 161 L.Ed.2d 669 (2005)). The plaintiff must "demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing." *Jenkins v. Greene*, 630 F.3d 298, 303 (2d Cir. 2010) (quoting *Valverde v. Stinson*, 224 F.3d 129, 134 (2d Cir. 2000)). Circumstances that justify equitable tolling include circumstances where the plaintiff "(i) was unaware that there had been a violation giving rise to a claim, (ii) rebutted the presumption that notice of the Appeals Council denial was received within five days, (iii) received conflicting information about the filing deadline, or (iv) was unable to comprehend the appeal process because of an impediment." *Cole-Hill*, 110 F. Supp. 3d at 485 (quoting *Sindrewicz v. Chater*, No. 96-CV-139, 1997 WL 166564, at *2 (W.D.N.Y. Jan. 30, 1997) (collecting cases)). The plaintiff bears the burden of demonstrating that equitable tolling is justified. *See Guobadia v. Irowa*, 103 F. Supp. 3d 325, 341 (E.D.N.Y. 2015) (quoting *Boos v. Runyon*, 201 F.3d 178, 185 (2d Cir. 2000)).

**\*4** Plaintiff has not alleged any facts that would warrant tolling the sixty-day limitations period. (*See generally* Compl.) Plaintiff does not allege that he sought additional time from the Appeals Council within which to file the Complaint. Nor does the Complaint contain any allegations that support an inference that Plaintiff was pursuing his rights diligently or that extraordinary circumstances prevented him from filing within the limitations period. Plaintiff has therefore failed to demonstrate that he is entitled to equitable tolling. *See Kamara v. Comm'r of Soc. Sec.*, No. 18-CV-3672, 2019 WL 2300632, at *3 (E.D.N.Y. May 30, 2019) (finding no basis to toll limitations period where the plaintiff did not make any showing of extraordinary circumstances or that she "asked the Appeals Council for an extension of time to file within the requisite [sixty]-day period or attempted to file her complaint within the [sixty]-day period"); *Courtney v. Colvin*, No. 13-CV-2884, 2014 WL 129051, at *2–3 (S.D.N.Y. Jan. 14, 2014) (finding the plaintiff's allegations that he was ill, his identity was stolen, and he had changed his address

Nguyen v. Kijakazi, Not Reported in Fed. Supp. (2022)

Case 5:23-cv-01266-DNH-ML    Document 7    Filed 03/20/24    Page 49 of 56

insufficient to provide a basis for equitable tolling); *Pressley v. Astrue*, No. 12-CV-8461, 2013 WL 3974094, at *2–3 (S.D.N.Y. Aug. 2, 2013) (dismissing the plaintiff's complaint where it was filed five days late and the plaintiff did not oppose the government's motion to dismiss).

Accordingly, the Court finds that Plaintiff's claim that his social security benefits were wrongfully denied is untimely and that there is no basis to toll the sixty-day limitations period under the doctrine of equitable tolling. Therefore, the Court dismisses this claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See, e.g., Cartwright v. Comm'r of Soc. Sec.*, No. 19-CV-10853, 2021 WL 4249430, at *5 (S.D.N.Y. Sept. 17, 2021) (dismissing with prejudice pursuant to Rule 12(b)(6) a social security appeal filed one day late).

### d. The Court lacks subject matter jurisdiction over Plaintiff's remaining claims

In addition to allegations that his claim for benefits was wrongly denied, Plaintiff alleges that the denial of his claim was the product of "discrimination (bullying), fraud, deception, etc[.]" and demands $423,921.51 as immediate relief, punitive damages of $42,392,151,000 contingent on Defendants settling this suit, and $1,140,000,000,000,000.01 if Defendants do not settle. (*See* Compl. ¶¶ 3–5.)

The Commissioner argues that the Court lacks subject matter jurisdiction over Plaintiff's remaining claims because (1) "Congress has provided only a limited waiver of sovereign immunity for cases arising under the Social Security Act," making judicial review available only for final decisions of the Commissioner made after a hearing, and (2) "[t]he only waiver of sovereign immunity for tort claims is the Federal Tort Claims Act ['FTCA']," but "Plaintiff has not alleged that he satisfied the administrative claim requirements of the FTCA." (Comm'r's Mem. 8–9.) The Commissioner also argues that, "[w]ith respect to Plaintiff's ... assertion that he should receive interest, it is well-settled that neither pre-judgment nor post-judgment interest is recoverable against the United States, except where the liability is imposed by statute or assumed by contract, and such is not the case here." (*Id.* at 11.)

### i. Lack of subject matter jurisdiction under the Social Security Act

To the extent Plaintiff is seeking monetary damages for violations of the Social Security Act, his claim is barred by sovereign immunity because there is no private right of action under the Social Security Act and plaintiffs are barred from bringing a civil action against the Social Security Administration for monetary relief based on violations of the SSA.

The United States is generally immune from suit. *See United States v. Bormes*, 568 U.S. 6, 9–10, 133 S.Ct. 12, 184 L.Ed.2d 317 (2012) ("Sovereign immunity shields the United States from suit absent a consent to be sued that is 'unequivocally expressed.' " (quoting *United States v. Nordic Vill., Inc.*, 503 U.S. 30, 33–34, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992))); *see also Cangemi v. United States*, 13 F.4th 115, 130 (2d Cir. 2021) ("Absent an unequivocally expressed statutory waiver, the United States ... [is] immune from suit based on the principle of sovereign immunity." (quoting *County of Suffolk v. Sebelius*, 605 F.3d 135, 140 (2d Cir. 2010) (alteration in original))); *Binder & Binder, P.C. v. Colvin*, 818 F.3d 66, 70 (2d Cir. 2016) (" 'Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit.' Moreover, 'waivers of sovereign immunity must be "unequivocally expressed" in statutory text, and cannot simply be implied.' " (first quoting *F.D.I.C. v. Meyer*, 510 U.S. 471, 475, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994); and then quoting *Adeleke v. United States*, 355 F.3d 144, 150 (2d Cir. 2004))).

**\*5** "[T]he United States has not waived its sovereign immunity for claims by a Social Security claimant seeking monetary relief in addition to benefits awards." *Donnelly v. Barnhart*, 80 F. App'x 701, 702 (2d Cir. 2003) (first citing *United States v. Sherwood*, 312 U.S. 584, 586, 61 S.Ct. 767, 85 L.Ed. 1058 (1941); and then citing *Liffiton v. Keuker*, 850 F.2d 73, 77 (2d Cir. 1988)); *see also Pryor v. Comm'r of Soc. Sec.*, No. 14-CV-5596, 2016 WL 1171589, at *6 (E.D.N.Y. Mar. 22, 2016), *aff'd*, 690 F. App'x 42 (2d Cir. 2017); *Purisima v. Astrue*, No. 12-CV-3528, 2012 WL 5519295, at *3 (S.D.N.Y. Nov. 14, 2012) ("Though the Social Security Act, 42 U.S.C. § 405(g), provides for judicial review of [the Social Security Administration's]

final decisions made after a hearing, and confers subject matter jurisdiction to that extent, it is well-established that the Act 'does not bestow a private right of action for monetary relief.' " (quoting *Katsoulakis v. Astrue*, No. 10-CV-81, 2011 WL 3877080, at *5 (E.D.N.Y. Aug. 31, 2011))). Moreover, "the Supreme Court has found that no action for damages can be maintained against personnel of the [Social Security Administration] because Congress provided an elaborate statutory scheme in the Act with 'meaningful safeguards or remedies for the rights of persons' wrongfully denied under the Act." *Ortega v. Colvin*, No. 13-CV-3487, 2015 WL 6143591, at *4 (E.D.N.Y. Oct. 19, 2015) (quoting *Schweiker v. Chilicky*, 487 U.S. 412, 425, 108 S.Ct. 2460, 101 L.Ed.2d 370 (1988)).

Accordingly, to the extent Plaintiff is seeking monetary damages for violations of the Social Security Act, his claim is barred by sovereign immunity. *See, e.g.*, *Hatcher v. Saul*, No. 18-CV-2282, 2021 WL 1207315, at *3–4 (E.D.N.Y. Mar. 31, 2021) (finding *pro se* plaintiff's constitutional claims barred because there "is no private right of action under the Social Security Act" and plaintiffs are "barred from bringing a civil action against the [Social Security Administration] for monetary relief based on violations of the Social Security Act" and further finding that, to the extent the plaintiff was attempting to allege a *Bivens* claim for violations of his constitutional rights by the Social Security Administration or the Commissioner, such claims are also barred (quoting *Katsoulakis*, 2011 WL 3877080, at *5)); *Shmueli v. Comm'r of Soc. Sec.*, No. 17-CV-3734, 2018 WL 4403279, at *5 (S.D.N.Y. July 19, 2018) ("The [c]ourt ... lacks subject matter jurisdiction to consider any discrimination, retaliation, harassment or similar claims for money damages against the Commissioner that [the] [p]laintiff may seek to assert."), *report and recommendation adopted*, 2018 WL 4387556 (S.D.N.Y. Sept. 14, 2018); *Davis v. Comm'r of Soc. Sec.*, No. 15-CV-6301, 2016 WL 3390586, at *5 (S.D.N.Y. Apr. 18, 2016) (finding that "the [c]ourt ... lacks subject matter jurisdiction to consider any discrimination, retaliation, harassment, or similar claims against the Commissioner that [the plaintiff] may seek to assert" because "[it] is well-settled that the Act itself 'does not bestow a private right of action for monetary relief' " or make any "provision for remedies in money damages against officials responsible for unconstitutional conduct that leads to the wrongful denial of benefits" (first *quoting Purisima*, 2012 WL 5519295, at *3; and then quoting *Schweiker*, 487 U.S. at 424, 108 S.Ct. 2460)), *report and recommendation adopted*, 2016 WL 3453452 (S.D.N.Y. June 16, 2016); *Oji v. Soc. Sec. Admin.*, No. 12-CV-7338, 2013 U.S. Dist. LEXIS 189928, at *49, *52 (S.D.N.Y. Sept. 12, 2013) (noting that *pro se* plaintiff's claim for "$975 septillion" in money damages was "couche[d]" in terms of discrimination but was actually a claim that the Social Security Administration "improperly denied" him benefits and finding that this "purported civil rights claim" fails for the same reasons), *report and recommendation adopted*, 2015 U.S. Dist. LEXIS 149822 (S.D.N.Y. Nov. 4, 2015); *Okocha v. Disman*, No. 11-CV-1854, 2012 WL 6860892, at *12–13 (S.D.N.Y. Oct. 1, 2012) (finding *pro se* plaintiff's claims against Commissioner for punitive damages for " 'deliberate denial of benefits,' deliberate infliction of emotional distress, and 'causing [the plaintiff] undue stress' " barred under the SSA), *report and recommendation adopted*, 2013 WL 163834 (S.D.N.Y. Jan. 15, 2013).

### ii. Lack of subject matter jurisdiction under the FTCA

**\*6** To the extent Plaintiff is asserting a cause of action in tort against the United States for alleged damages he suffered, his claims are barred by sovereign immunity because he failed to name the United States as a party and failed to administratively exhaust his claims.

Under the FTCA, a plaintiff may bring a tort suit against the United States under certain circumstances. *See* *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 217–18, 128 S.Ct. 831, 169 L.Ed.2d 680 (2008) ("In the FTCA, Congress waived the United States' sovereign immunity for claims arising out of torts committed by federal employees."); *Cooke v. United States*, 918 F.3d 77, 81 (2d Cir. 2019) ("One such 'limited waiver' of [the United States'] sovereign immunity is provided by the FTCA, which 'allows for a tort suit against the United States under specified circumstances.' " (quoting *Hamm v. United States*, 483 F.3d 135, 137 (2d Cir. 2007))). "[I]f a suit is 'cognizable' under ... the FTCA, the FTCA remedy is 'exclusive' and the federal agency cannot be sued 'in its own name' ...." *Meyer*, 510 U.S. at 476, 114 S.Ct. 996 (quoting 28 U.S.C. § 2679(a)); *Rivera v. United States*, 928 F.2d 592, 609 (2d Cir. 1991) ("The FTCA ... precludes tort suits against federal agencies. The only proper federal institutional defendant in such an action is the United States." (citing 28 U.S.C. § 2679(a))); *see also* 28 U.S.C. § 2679(a) ("The authority of any federal agency to ... be sued in its own name shall not be construed to authorize suits against

Case 5:23-cv-01266-DNH-ML    Document 7    Filed 03/20/24    Page 51 of 56

Nguyen v. Kijakazi, Not Reported in Fed. Supp. (2022)

such federal agency on claims which are cognizable under section 1346(b).").

"Prior to filing an FTCA action, a plaintiff must exhaust administrative remedies, which include presenting the claim to the appropriate federal agency." *Yunkeung Lee v. United States*, 570 F. App'x 26, 27 (2d Cir. 2014) (citing 28 U.S.C. § 2675(a)); *see DeBoe v. Du Bois*, 503 F. App'x 85, 89 (2d Cir. 2012) (citing *Millares Guiraldes de Tineo v. United States*, 137 F.3d 715, 720 (2d Cir. 1998)) (affirming the district court's finding that it lacked subject matter jurisdiction over the plaintiff's claim because the plaintiff failed to exhaust his administrative remedies under the FTCA by filing a complaint with the appropriate federal agency); *see also Millares Guiraldes de Tineo*, 137 F.3d at 720 ("In sum, the United States has not consented to be sued on a tort claim unless the claim was first presented to the appropriate federal agency in writing, was so presented within two years after the claim accrued, and specified the amount of the claim in writing."). "[A]n administrative claim must be filed with the responsible federal agency within two years of a plaintiff's alleged injury." *Torres v. United States*, 612 F. App'x 37, 39 (2d Cir. 2015); *see Phillips v. Generations Fam. Health Ctr.*, 723 F.3d 144, 147 (2d Cir. 2013) ("Under the FTCA, before a claimant can file suit, he or she must first present the claim to the appropriate federal agency ... within two years of the date the claim accrued." (citing 28 U.S.C. § 2401(b))). A "claimant can only initiate his or her lawsuit once the claim has been denied by the agency (or if the agency has failed to make a decision within six months after the claim was filed)." *Phillips*, 723 F.3d at 147; *see Celestine v. Mount Vernon Neighborhood Health Ctr.*, 403 F.3d 76, 82 (2d Cir. 2005) ("The FTCA requires that a claimant exhaust all administrative remedies before filing a complaint in federal district court." "Because this presentment requirement serves to ease court congestion and to permit expeditious settlement without 'costly and time-consuming litigation,' the claimant must provide the agency with enough information to permit it 'to conduct an investigation and to estimate the claim's worth.' " *Yunkeung Lee*, 570 F. App'x at 27 (first quoting *McNeil v. United States*, 508 U.S. 106, 111–12, 113 S.Ct. 1980, 124 L.Ed.2d 21 (1993); and then quoting *Romulus v. United States*, 160 F.3d 131, 132 (2d Cir. 1998)).

**\*7** "This [exhaustion] requirement is jurisdictional and cannot be waived." *Celestine*, 403 F.3d at 82 (citing

*McNeil*, 508 U.S. at 113, 113 S.Ct. 1980); *see Collins v. United States*, 996 F.3d 102, 109 (2d Cir. 2021) ("The FTCA requires that a claimant exhaust all administrative remedies before filing a complaint in federal district court. This requirement is jurisdictional and cannot be waived." (quoting *Celestine*, 403 F.3d at 82)); *Hollis Care Grp. Inc. v. U.S. Small Bus. Admin.*, 848 F. App'x 483, 484 (2d Cir. 2021) ("First, to the extent [p]laintiffs pled the necessary elements of fraud and negligent supervision under New York law, those claims were cognizable under the [FTCA] and therefore subject to a non-waivable, jurisdictional administrative exhaustion requirement." (footnote omitted)); *Leytman v. United States*, 832 F. App'x 720, 722 (2d Cir. 2020) ("Failure to comply with this exhaustion requirement deprives Article III courts of subject matter jurisdiction over FTCA claims." (citing *Celestine*, 403 F.3d at 82)); *Yunkeung Lee*, 570 F. App'x at 27 ("Although the presentment 'need not meet formal pleading' standards, the requirement is jurisdictional and must be 'adhered to strictly.' " (quoting *Johnson ex rel. Johnson v. United States*, 788 F.2d 845, 848–49 (2d Cir. 1986), *overruled on other grounds by Sheridan v. United States*, 487 U.S. 392, 108 S.Ct. 2449, 101 L.Ed.2d 352 (1988))); *Accolla v. U.S. Gov't*, 381 F. App'x 71, 73 (2d Cir. 2010) (same); *see also Ruffin v. United States*, No. 20-CV-4128, 2021 WL 4408039, at \*6 (E.D.N.Y. Sept. 27, 2021) (same); *Johnson v. Smithsonian Inst.*, 189 F.3d 180, 189 (2d Cir. 1999) ("Unless a plaintiff complies with [the exhaustion] requirement, a district court lacks subject matter jurisdiction over a plaintiff's FTCA claim." (citing *United States v. Kubrick*, 444 U.S. 111, 117–18, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979))), *abrogated on other grounds*, *United States v. Wong*, 575 U.S. 402, 135 S.Ct. 1625, 191 L.Ed.2d 533 (2015).

To the extent Plaintiff asserts tort claims against the Social Security Administration, the Court lacks subject matter jurisdiction over these claims because the FTCA precludes tort suits against federal agencies. *Mignogna v. Sair Aviation, Inc.*, 937 F.2d 37, 40 (2d Cir. 1991) (holding that actions under the FTCA "must be brought against the United States rather than an agency thereof"); *Hatcher*, 2021 WL 1207315, at \*4 ("[A]ny claim under the FTCA necessarily fails ... because [the] [p]laintiff does not name the United States as a defendant and '[t]he [Social Security Administration] cannot be sued for negligence based on

the doctrine of sovereign immunity, which bars FTCA suits against federal agencies.' " (second alteration in original) (quoting *Katsoulakis*, 2011 WL 3877080, at \*5 n.1)); *Oji*, 2013 U.S. Dist. LEXIS 189928, at \*54 (same).

In addition, even if Plaintiff had named the United States as a defendant in this action, Plaintiff has not alleged any facts suggesting that he complied with the FTCA's exhaustion requirements. *See Pope v. Geo Grp.*, No. 18-CV-6900, 2019 WL 79426, at \*3 (E.D.N.Y. Jan. 2, 2019) ("[E]ven if a *pro se* 'plaintiff's complaint can be liberally construed to state a claim under the FTCA ... the court does not have subject matter jurisdiction over' the FTCA claim if [the] 'plaintiff has neither pleaded that he filed an administrative claim within two years of the incident giving rise to the action, nor that he exhausted an administrative tort claim prior to initiating the instant action.' " (quoting *Diaz v. MDC Detention Ctr.*, No. 17-CV-3768, 2018 WL 472810, at \*2 (E.D.N.Y. Jan. 17, 2018))); *see also, e.g.*, *Shmueli*, 2018 WL 4403279, at \*5 (finding that the court lacked subject matter jurisdiction under the FTCA "to consider any discrimination, retaliation, harassment or similar claims for money damages against the Commissioner that [the *pro se*] [p]laintiff may seek to assert" because the plaintiff "has not alleged that she satisfied the FTCA's exhaustion requirements" and also because "a claim for punitive damages 'does not fall within the limited waiver created by the FTCA' " (quoting *Okocha*, 2012 WL 6860892, at \*13)); *Oji*, 2013 U.S. Dist. LEXIS 189928, at \*54–55 (dismissing *pro se* plaintiff's tort claims against Social Security Administration, to the extent raised, because "even if [the] [p]laintiff had named the United States as a defendant in this action, the Commissioner has no records indicating that [the] [p]laintiff presented an administrative tort claim to the [Social Security Administration] as is required prior to bringing suit pursuant to the FTCA, and [the] [p]laintiff does not allege otherwise); *Okocha*, 2012 WL 6860892, at \*13 ("[E]ven if the Social Security Act did not independently bar [the plaintiff's] punitive damages claim, his failure to establish FTCA exhaustion does."); *Greco v. Comm'r of Soc. Sec.*, No. 04-CV-141, 2004 U.S. Dist. LEXIS 29981 (N.D.N.Y. Dec. 30, 2004) ("[A] plaintiff may not bring claims against the Commissioner of Social Security under the [FTCA] 'because negligent mishandling of social security benefits is not cognizable under this statute.' " (quoting 🚩 *Langella v. Bush*, 306 F. Supp. 2d 459, 464 (S.D.N.Y. 2004))), *report*

*and recommendation adopted*, 2005 U.S. Dist. LEXIS 43365 (N.D.N.Y. June 8, 2005).

**\*8** Accordingly, because Plaintiff's claims for money damages based on the denial of his request for benefits being the product of "discrimination (bullying), fraud, [or] deception" are barred by sovereign immunity under both the SSA and the FTCA, the Court lacks subject matter jurisdiction over these claims and dismisses them without prejudice. (Compl. ¶ 3.)

### e. Leave to amend

In light of Plaintiff's *pro se* status, the Court grants Plaintiff leave to amend the Complaint within thirty days of this Memorandum and Order to replead his claims of "discrimination (bullying), fraud, [or] deception" under the FTCA. Plaintiff is advised that the Amended Complaint will completely replace the original Complaint, must be captioned "Amended Complaint," and shall bear the same docket number as this Order. Plaintiff must name the United States as a defendant and allege his compliance with the FTCA's exhaustion requirements. Plaintiff may contact the Federal Pro Se Legal Assistance Project of the City Bar Justice Center at 212-382-4729, for limited-scope legal assistance.

### III. Conclusion

For the foregoing reasons, the Court grants Defendant's motion to dismiss the Complaint. Pursuant to Rule 12(b)(6), the Court dismisses with prejudice Plaintiff's claim that he was wrongfully denied social security disability benefits for failure to state a claim. Pursuant to Rule 12(b)(1), the Court dismisses without prejudice for lack of subject matter jurisdiction Plaintiff's claims that the denial of his request for benefits was the product of "discrimination (bullying), fraud, [or] deception." (Compl. ¶ 3.) The Court grants Plaintiff leave to file an Amended Complaint to replead these claims under the FTCA.

### All Citations

Not Reported in Fed. Supp., 2022 WL 542265

**Nguyen v. Kijakazi, Not Reported in Fed. Supp. (2022)**

Case 5:23-cv-01266-DNH-ML     Document 7     Filed 03/20/24     Page 53 of 56

## Footnotes

1      Pursuant to Federal Rule of Civil Procedure 25(d), the Court substitutes Kilolo Kijakazi, the Acting Commissioner of the Social Security Administration, for Andrew M. Saul, the former Commissioner. *See Acting Commissioner*, Soc. Sec. Admin., https://www.ssa.gov/agency/commissioner/ (last visited Feb. 17, 2022).

2      Because the exhibits to the Potts Declaration are not consecutively paginated, the Court refers to the page numbers assigned by the electronic case filing system.

---

**End of Document**                                              © 2024 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW   © 2024 Thomson Reuters. No claim to original U.S. Government Works.                    8

Case 5:23-cv-01266-DNH-ML    Document 7    Filed 03/20/24    Page 54 of 56

Abadi v. City of New York, Not Reported in Fed. Rptr. (2023)

2023 WL 3295949

Only the Westlaw citation is currently available.

United States Court of Appeals, Second Circuit.

Aaron ABADI, Plaintiff-Appellant,

v.

CITY OF NEW YORK, Defendant-Appellee.

22-1560-cv

|

May 8, 2023

Appeal from a judgment of the United States District Court for the Southern District of New York (Engelmayer, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the appeal is **DISMISSED** as moot, the judgment of the district court is **VACATED**, and the case is **REMANDED** to the district court with instructions to enter a judgment of dismissal without prejudice.

**Attorneys and Law Firms**

FOR PLAINTIFF-APPELLANT: Aaron Abadi, pro se, New York, NY.

FOR DEFENDANT-APPELLEE: Richard Dearing, Devin Slack, Chloe K. Moon, of Counsels, for Sylvia O. Hinds-Radix, Corporation Counsel of the City of New York, New York, NY.

PRESENT: JOSÉ A. CABRANES, JOSEPH F. BIANCO, SARAH A. L. MERRIAM, Circuit Judges.

## SUMMARY ORDER

**\*1** Appellant Aaron Abadi, proceeding *pro se*, sued the City of New York (the "City") under 42 U.S.C. § 1983, asserting that emergency orders requiring a COVID-19 vaccination to enter various indoor establishments (the "Key to NYC program"), or to work as an employee for the City, violated, *inter alia*, his rights to equal protection, bodily integrity, and freedom from false imprisonment. After previously denying Abadi's motion for a preliminary injunction, the district court dismissed his amended complaint. The Key to NYC program ended on March 7, 2022, and the employee vaccination requirements for City

workers ended on February 10, 2023.[1] We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

## I. Mootness

Although the district court did not address mootness, we have an "independent obligation" to consider whether an appeal is moot. *United States v. Williams*, 475 F.3d 468, 479 (2d Cir. 2007); *see also Hassoun v. Searls*, 976 F.3d 121, 127 (2d Cir. 2020) ("When a case becomes moot, the federal courts lack subject matter jurisdiction over the action." (alteration adopted) (internal quotation marks and citation omitted)). "A case is moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Tann v. Bennett*, 807 F.3d 51, 52 (2d Cir. 2015) (per curiam) (internal quotation marks and citation omitted). A case remains live, by contrast, when "a court can fashion *some* form of meaningful relief to award the complaining party." *Exxon Mobil Corp. v. Healey*, 28 F.4th 383, 392 (2d Cir. 2022) (internal quotation marks and citation omitted). "The voluntary cessation of allegedly illegal activities will usually render a case moot if the defendant can demonstrate that (1) there is no reasonable expectation that the alleged violation will recur and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Mhany Mgmt., Inc. v. County of Nassau*, 819 F.3d 581, 603 (2d Cir. 2016) (internal quotation marks and citation omitted). As the Supreme Court recently explained, "even if the government withdraws or modifies a COVID restriction in the course of litigation, that does not necessarily moot the case" where the plaintiff "remain[s] under a constant threat that government officials will use their power to reinstate the challenged restrictions." *Tandon v. Newsom*, 141 S. Ct. 1294, 1297 (2021) (per curiam) (internal quotation marks and citation omitted).

Here, both the Key to NYC program and the City's employment vaccination requirement have expired. Moreover, there is no evidence in the record that would support the conclusion that the City is likely to reinstitute any such COVID-19 restrictions. *Cf. Fed. Defs. of N.Y., Inc. v. Fed. Bureau of Prisons*, 954 F.3d 118, 127 (2d Cir. 2020) ("[P]ublic health-related developments" as of March 20, 2020, concerning COVID-19 "suggest" that "circumstances that disrupted attorney-client visits at the MDC ... are all too likely to recur."). In other words, there is no basis to conclude that Abadi "remain[s] under a constant threat" that these

restrictions will be reinstated, *Tandon*, 141 S. Ct. at 1297 (internal quotation marks and citation omitted), and thus the possibility of any such future action is entirely a "speculative possibility." *Lillbask ex rel. Mauclaire v. Conn. Dep't of Educ.*, 397 F.3d 77, 87 (2d Cir. 2005); *see also Conn. Citizens Def. League, Inc. v. Lamont*, 6 F.4th 439, 446 (2d Cir. 2021) (concluding that "[p]articularly in view of the mitigation measures that have become available to combat the spread of COVID-19, and the providential infrequency of pandemics," the risk of a future COVID-19 restriction on firearm retailers was "speculative").

**\*2** Accordingly, we conclude that the City has met its burden of demonstrating that the voluntary cessation of the COVID-19 restrictions at issue renders plaintiff's demands for injunctive and declaratory relief in this case moot. *See Weisshaus v. Hochul*, No. 21-64, 2022 WL 17256755, at \*1 (2d Cir. Nov. 29, 2022) (summary order) (holding, *inter alia*, "that the appeal [was] moot with respect to the district court's denial of the preliminary injunction" related to the New York State Governor's executive order mandating that certain travelers complete a health form for COVID-19 tracing where "[t]he record [was] devoid of support for the proposition that the Governor can reasonably be expected to reinstitute the traveler's health form"); *Dark Storm Indus. LLC v. Hochul*, No. 20-2725, 2021 WL 4538640, at \*1 (2d Cir. Oct. 5, 2021) (summary order) (holding that challenges to March 2020 COVID-19 executive orders were moot because the restrictions were lifted and New York State had demonstrated that the possibility of recurrence was speculative).

## II. Standing

Plaintiff's demands for money damages are not mooted by the repeal of the policies at issue, but we find that plaintiff lacked standing to bring these claims. The district court failed to address the question of standing in its order on the motion to dismiss, but "[b]ecause the standing issue goes to this Court's subject matter jurisdiction, it can be raised *sua sponte*." *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 433 F.3d 181, 198 (2d Cir. 2005).

In order to have standing, a plaintiff must show that (1) he has suffered an "injury in fact[;]" (2) there is "a causal connection between the injury and the conduct complained of[;]" and (3) it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v.*

*Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (internal quotation marks and citation omitted). "To establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (internal quotation marks and citation omitted).

Abadi lacks standing to challenge the Key to NYC policy because he has not pled an "injury in fact" suffered as a result of the policy. The Amended Complaint merely alleges, in a conclusory fashion, that plaintiff was "banned from ... tens of thousands of public places throughout the city." There is no allegation that Abadi ever attempted to enter an establishment and was turned away, or that he was denied any service because of the policy; his alleged injury is entirely "conjectural or hypothetical." *Spokeo*, 578 U.S. at 339; *see also Carlone v. Lamont*, No. 21-871, 2021 WL 5049455, at \*3 (2d Cir. Nov. 1, 2021) (summary order) (Plaintiff lacked standing to challenge a mask mandate because "the complaint does not state that [plaintiff] has ever actually been required to wear a mask or has been subject to enforcement of the mask mandate").

Abadi also lacks standing to challenge the City's employment vaccination requirement. The Amended Complaint does not allege that plaintiff was a City employee, or that he applied for employment with the City, or was denied employment with the City. Abadi asserts that he has standing simply because he was interested in applying for employment with the City but decided against it because of the vaccination requirement. Abadi was not prevented from applying for the job because he was unvaccinated; he simply chose not to apply. Further, had Abadi been qualified for a position, applied for the position, been offered the position, and accepted the position, he could have applied for an accommodation waiving the vaccination requirement. [2] Abadi's alleged injury is purely hypothetical and does not confer standing. *See Spokeo*, 578 U.S. at 339.

## CONCLUSION

**\*3** For the foregoing reasons, we **DISMISS** the appeal as moot, **VACATE** the judgment entered by the district court, and **REMAND** the case to the district court with instructions to enter a judgment of dismissal without prejudice. [3]

**Abadi v. City of New York, Not Reported in Fed. Rptr. (2023)**

Case 5:23-cv-01266-DNH-ML    Document 7    Filed 03/20/24    Page 56 of 56

**All Citations**

Not Reported in Fed. Rptr., 2023 WL 3295949

## Footnotes

1    City of New York, *Coronavirus (COVID-19) Vaccine Mandates*, https://portal.311.nyc.gov/article/?
     kanumber=KA-03448 (last visited May 3, 2023).

2    *See* City of New York, *FAQ regarding New York City Employees and the COVID-19 Vaccine,* https://
     www.nyc.gov/assets/dcas/downloads/pdf/guidelines/faq-vaccine-mandate.pdf at 4-5 (discussing reasonable
     accommodations for City employees under vaccination policy) (last visited May 3, 2023).

3    Because the Court lacks subject matter jurisdiction on mootness and standing grounds, the amended
     complaint should be dismissed *without* prejudice. *See* 🚩 *Katz v. Donna Karan Co.*, 872 F.3d 114, 116 (2d
     Cir. 2017) ("[A] complaint must be dismissed without prejudice where the dismissal is due to the court's lack
     of subject matter jurisdiction.").

---

**End of Document**                    © 2024 Thomson Reuters. No claim to original U.S. Government Works.